*1146
After Remand from Alabama Supreme Court

MAIN, Judge.
Shonda Nicole Johnson was convicted of capital murder, in violation of § 13A-5-40(14), Ala.Code 1975, for intentionally murdering Randy McCullar, who had testified or was to testify in a criminal proceeding, specifically a bigamy case, against Johnson, where the murder stemmed from his role as a witness in the bigamy case. Johnson was sentenced to death by the trial court following an advisory verdict by the jury of death by a vote of 11 in favor of death to 1 in favor of life without parole.[1] This Court reversed and remanded Johnson’s conviction because, although her pri- or bad acts and conviction were admissible as exceptions to the exclusionary rule, this Court held that the trial court should have given limiting instructions as to the jury’s consideration of this evidence. Johnson v. State, 120 So.3d 1100 (Ala.Crim.App.2005). The Alabama Supreme Court reversed and remanded this Court’s decision, finding that limiting instructions by the trial court were not necessary because the prior bad acts and conviction were admissible as substantive evidence and therefore no limiting instructions were warranted. Johnson v. State, 120 So.3d 1119 (Ala.2006).
Because these two referenced issues, concerning the admissibility of the prior bad acts and conviction of Johnson, as well as the necessity of limiting instructions therefor, have now been decided on appeal, they will not be revisited.
We also note that a full rendition of the facts established at trial was set forth in the original decision on appeal. See Johnson v. State, 120 So.3d at 1123-26, and will not be repeated.
I.
Johnson argues that the trial court erred by failing to allow her to impeach Timothy Richards with evidence of his pri- or convictions, and further failing to allow her to admit evidence of these convictions during the penalty phase of her trial, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Alabama law. Johnson refers to two prior convictions for distributing harmful material to minors.
Timothy Richards, Johnson’s codefen-dant in the present case, testified as to Johnson’s and his roles in the shooting and murder of McCullar. During the cross-examination of Richards, defense counsel questioned him as follows:
“Q. Did you have any arrests in the City of Hueytown?
“A: Yes, sir, I do.
“Q: And what was that for?
“A: Distributing to delinquency of a minor.
“Q: Distributing to the delinquency of a minor? And tell what type of distributing to the delinquency of a minor did you partake in?
“A: I didn’t partake in anything, but I was found—
“Q: Did a woman make you do something then?
“A: No.
“Q: What were you — what was the basis of that charge?
“A: What do you mean?
*1147 “Q: Did that — why were you charged with that?
“A: Because of my sister.
“[Prosecutor]: Your Honor, can we approach the bench?
“THE COURT: Uh-huh.
“BENCH CONFERENCE:
“[Prosecutor]: We want to interpose an objection at this point. The defense has not supplied us with any information like this. He’s asked a purely illegal question and he knows it’s illegal to ask and we’d object and we ask for curative instructions at this point.
“[Defense Counsel]: Judge, this is, I believe, going to be a crime of moral turpitude, this is contributing to the delinquency of a minor.
“THE COURT: It seems to me.
“[Prosecutor]: And under the rules, he knew that and we want curative instructions.
“[Defense Counsel]: It is a moral turpitude, therefore, it isn’t necessary. Contributing to the delinquency of a minor—
“[Another Prosecutor]: Was there a conviction?
“[Another Defense Counsel]: I don’t know.
“THE COURT: Contributing to the delinquency of a minor can be as asking a kid to run a stop sign.
“[Prosecutor]: Judge, co-counsel here said they didn’t even know if there was a conviction on it and they haven’t supplied anything. He knew — we ask for instructions, he was intentionally doing that—
“THE COURT: That’s okay, it’s close to 4:00 and everybody is irritable.
“[Defense Counsel]: Judge in my defense, I just found out about it myself. She’s just revealed it to me.
“THE COURT: Okay. That’s fine. That’s fine.
“(END OF BENCH CONFERENCE)
“THE COURT: Ladies and gentlemen of the jury I’m instructing you to disregard any statements or testimony or answers with regard to a charge of, I think they said distributing, but it’s contributing to the delinquency of a minor. That has nothing to do with anything of this case, all right, so just do away with that.”
(R. 576-578.)
Thereafter, the next day, the following transpired:
“[Prosecutor]: Judge, we have filed and gave them a copy of a Motion in Limine.
“THE COURT: Uh-huh, What does it say?
“[Another Prosecutor]: Basically it says anymore questions concerning bad acts of Timothy Richards prior to his meeting the defendant, in front of the jury without being screened, we just thought the way they’ve asked those things, the basically unsubstantiated allegations they’ve asked him about—
“THE COURT: Oh—
“[Prosecutor]: — and it’s just gotten to the point of recklessness—
“[Prosecutor]: Not only that, but they’re throwing out child molestation with no basis for asking the question, there’s no basis or fact for any of that, before they do that we’d ask that they at least approach the bench.
“THE COURT: Uh-huh.
“[Another Prosecutor]: Do you want Tim now or do you want to discuss this first? Richards, the witness.
“THE COURT: They don’t want to do that anymore.
*1148 “[Prosecutor]: Do you want to tell them or—
“THE COURT: I want to be put on notice for any bad acts that you may be wanting to bring out with regard to any witness, give me some notice beforehand so I can rule on it. Okay. Bring the jury in.
“[Another Prosecutor]: One minute. Your Honor.
“[Another Defense Counsel]: We probably need to go ahead and take it up now.
“THE COURT: What? What is it?
“[Defense Counsel]: Judge, this is what we were just discussing, those are the originals. Ed’s got to find something, just a moment. Your Honor.
“[Another Defense Counsel]: Do you want a few minutes to look at that? We just got that copy Friday afternoon.
“[Prosecutor]: Yes, it’s the first time we’ve seen—
“[Another Defense Counsel]: Well, we would have given it to you earlier if we had it earlier. We left here and went straight to the courthouse.
“[Defense Counsel]: There’s a narrative in there. Your Honor,
“THE COURT: A what?
“[Defense Counsel]: A narrative — a deposition, I mean, there’s two of them, one you can read and one you can’t.
“THE COURT: This is one?
“[Defense Counsel]: Yes, sir.
“THE COURT: Was he charged with something on this?
“[Defense Counsel]: Yes, sir.
“THE COURT: Was there a conviction on this?
“[Another Defense Counsel]: Yes, sir, there’s two convictions. These are— there were originally six cases, three were dismissed and three were pled to.
“THE COURT: Uh-huh.
“[Another Defense Counsel]: One was a violation of 13A-12—
“THE COURT: Don’t give me numbers, tell me what it is.
“[Another Defense Counsel]: It’s distribute material which is harmful to a minor, to wit:—
“THE COURT: Is that a felony?
“[Another Defense Counsel]: It’s not a felony, but it’s a crime of moral turpitude we would argue.
“[Another Prosecutor]: But it’s not moral turpitude—
“THE COURT: Give me a list.
“[Another Defense Counsel]: Sir?
“THE COURT: There’s a list somewhere of moral turpitude crimes — I assume you’ve seen it?
“[Another Defense Counsel]: I expect that’s a determination made by the trial court. There’s a—
“THE COURT: Oh, no, we don’t make these things up,—
“[Another Defense Counsel]: Judge, the Section 12-21-162 governs that issue.
“THE COURT: Uh-huh. What does it say?
“[Another Defense Counsel]: It says that in cross-examining a witness with regard to credibility, the witness can be examined, touching on a conviction for a crime involving moral turpitude.
“THE COURT: Uh-huh.
“[Another Defense Counsel]: And his answers may be — may be contradicted by other evidence if they don’t speak truthfully with regard to that. We would argue that distributing pornographic material to a minor—
“THE COURT: Is a felony.
“[Another Defense Counsel]: It is not a felony—
“[Defense Counsel]: No, sir, but it — it’s definitely a crime involving moral turpi *1149 tude when you’re giving young girls who seem like they’re nine or ten by the way they write—
“THE COURT: That sounds good, but that ain’t how the law works.
“[Another Prosecutor]: Your Honor, I think it’s been something that anyone might simply deny, talking about prior convictions and the standard now is no longer moral turpitude, but goes to the truthfulness or falsity of the statement, either more than a year imprisonment or any conviction, I think it’s on the top of the next page, any conviction concerning truthfulness.
“THE COURT: Can you show me where /alls case is in this?
“[Another Defense Counsel]: This is the statute.
“THE COURT: Oh, I know there’s a statute against it. I’m looking for why it would be admissible.
“[Another Defense Counsel]: It would be—
“[Defense Counsel]: Uh — go ahead.
“[Another Defense Counsel]: It’s a crime of moral turpitude. Your Honor.
“THE COURT: You’re just using that word.
“[Another Defense Counsel]: Yes, sir.
“THE COURT: You’re just using the word moral turpitude.
“[Another Defense Counsel]: Yes, sir.
“THE COURT: Does this involve impeachment?
“[Another Defense Counsel]: That involves impeachment, Judge. I believe the defendant in that — or the witness in that case had testified untruthfully with regard to prior convictions—
“THE COURT: Yeah. Untruthfully with regard — the untruthful part is the main part.
“[Another Defense Counsel]: Well—
“[Defense Counsel]: Yes, sir, he—
“[Another Defense Counsel]: Well, in this particular instance. Your Honor, the witness denied—
“[Prosecutor]: No he didn’t.
“[Another Defense Counsel]: He did. We can get her to read that back, Your Honor.
“[Prosecutor]: We need to because he didn’t.
“[Another Defense Counsel]: He said that he didn’t do that—
“[RICHARDS[2]]: That was my sister’s doing, I didn’t do that, that was dismissed.
“[Another Defense Counsel]: And that simply [is] not true.
“[Another Prosecutor]: First off I’m asking—
“THE COURT: Was it dismissed?
“[Defense Counsel]: No, sir, he pled guilty to the crime—
“[Another Prosecutor]: — what gets you to ask—
“(SPEAKING SIMULTANEOUSLY)
“[Defense Counsel]: — on all three charges—
“[Another Prosecutor]: He admitted to pleading guilty to—
“[Prosecutor]: To contributing.
“[Another Prosecutor]: — contributing.
“[Prosecutor]: He admitted to pleading guilty.
“[Another Defense Counsel]: He didn’t admit to pleading guilty to distribution.
*1150 “[Another Prosecutor]: Well you didn’t ask him that—
“[Another Defense Counsel]: Well, we did—
“[Another Prosecutor]: — you asked him about child molestation is what you asked him about.
“[Prosecutor]: Yeah, you asked him about child molestation.
“THE COURT: Okay. Let’s get the jury in here. Get them in here. I’m not going to let — that is not a crime involving moral turpitude as per any lists that I’ve got.
“[Prosecutor]: And going into the specifics wouldn’t be anyway.
“THE COURT: Nuh-uh.-
“[Defense Counsel]: Judge, the point is he did deny it and we feel that it does involve moral turpitude because he’s distributing—
“THE COURT: Well, you asked contributing to the delinquency of a minor.
“[Defense Counsel]: Yes, sir.
“THE COURT: That’s not—
“[Another Prosecutor]: Even the question was—
“THE COURT: Yeah, that question is bad. And the jury was instructed to disregard it.
“[Another Defense Counsel]: With regard to denying what was — what the conviction itself—
“THE COURT: You find me where this is — I mean, John Q. Everyday Citizen says, ‘Of course, that involves morals and, of course, that is a bad thing.’ That’s not how the law works. Writing a bad check used to be involving moral turpitude. It’s not anymore, it’s not today. And that’s because the Courts have changed it.
“[Another Defense Counsel]: Well, the case that I’ve brought the Court is with regard to—
“THE COURT; He was lying about?
“[Another Defense Counsel]: Lying about prior convictions
“THE COURT; Is that what—
“[Another Defense Counsel]: And the witness in this case was cross examined with regard to prior convictions. He denied the prior conviction and we have proof of that prior conviction.
“THE COURT: That certainly, absolutely should be denied — I mean, that should be allowed if he denies pertinent convictions.
“[Another Defense Counsel]: If the conviction itself is relevant to the case.
“THE COURT: Yeah.
“[Another Prosecutor]: If the conviction involved moral turpitude.
“[Another Defense Counsel]: Well, that particular case involves the defendant opening the door.
“THE COURT: Right.
“[Another Defense Counsel]: And we would argue that the witness has opened—
“THE COURT: No.
“[Another Prosecutor]: No, you can’t ask the question, ‘Have you been convicted?’ and say that’s opening the door.
“THE COURT: Nuh-uh, you cannot— you cannot ask a question that can’t be admitted into evidence and then rebut it by something else. Overruled.”
(R. 582-91).
Rule 609, Ala.R.Evid., addresses the impeachment of witnesses by evidence of convictions of crimes, as follows:
“a) General Rule. For the purpose of attacking the credibility of a witness,
“(1)(A) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by *1151 death or imprisonment in excess of one year under the law under which the witness was convicted, and
“(1)(B) evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
“(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.”
The Advisory Committee Notes to this section state that § 12-21-162(b), Ala. Code 1975, which had authorized impeachment by evidence of crimes involving moral turpitude was superceded by Rule 609.[3] These notes further state that an alternate test for determining the propriety of the prior conviction for impeachment purposes was established: one as to seriousness, specifying the crime carry a sentence of at least one year or death; and the other requiring that the crime involved dishonesty or false statement. As to the latter, the Notes explain:
“Crimes involving ‘dishonesty or false statement,’ as indicated in the report of the Senate Committee on the Judiciary during the process of adopting the corresponding Federal Rule 609, include crimes ‘such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of crimen falsi the commission of which involves some element of untruthfulness, deceit, or falsification bearing on the accused’s propensity to testify truthfully.’ Senate Comm. on Judiciary, Fed. Rules of Evidence, S.Rep. No. 1277, 93d Cong., 2d Sess., 14 (1974).”
In Adams v. State, 955 So.2d 1037, 1081-83 (Ala.Crim.App.2003), writ. granted in part, reversed in part on other grounds, Ex parte Adams, 955 So.2d 1106 (Ala.2005), Adams argued that his cross-examination of a State’s witness was improperly restricted because he was not allowed to question the witness concerning his prior convictions for encouraging the delinquency of a minor and for indecent exposure. Adams argued that, pursuant to Rule 609, Ala.R.Evid., he should have been allowed to impeach the witness with evidence of these prior convictions. Noting that Rule 609 “significantly narrowed the definition of crimes that were admissible to impeach a witness,” 955 So.2d at 1082, this Court held:
“Alabama has never held that the crimes of indecent exposure and contributing to the delinquency of a minor are crimes that fit within the definition of Rule 609, Ala.R.Evid. Indeed, neither crime involves dishonesty or false statements and have no bearing on a person’s ability to testify truthfully. Compare Alfa Mutual General Insurance Company v. Oglesby, 711 So.2d 938 (Ala.1997) (‘[t]he courts of this state have not determined whether indecent exposure is a crime involving moral turpitude’), with Duckett v. State, 61 Md.App. 151, 157, 485 A.2d 691, 694 (1985), aff'd, 306 Md. 503, 510 A.2d 253 (1986) (‘We hold, therefore, that, for purposes of impeachment, indecent exposure is not an infamous crime, a crime of moral turpitude, a felony, nor a crime involving dishonesty or deceit’).”
955 So.2d at 1083.
Because the crime of distribution of harmful material to a minor is a misde *1152 meanor, see § 18A-12-200.5(1), Ala.Code 1975, and is not an offense which would bear on the witness’s propensity to testify truthfully, it is not admissible under Rule 609 for impeachment purposes. Therefore the trial court properly prevented Johnson from introducing evidence of these convictions and her constitutional rights were not violated because of this restriction of cross-examination.[4]
Moreover, the trial court properly prevented the admission of this evidence during the penalty phase of Johnson’s trial before the jury. Richards’s prior convictions for distributing harmful material to a minor did not constitute a statutory mitigating circumstance and this evidence was properly held to not constitute a nonstatu-tory mitigating circumstance.
“The United States Supreme Court had declared that a defendant convicted of capital murder must be allowed to present at the sentencing hearing a broad range of proposed mitigating evidence. The Court held:
“ ‘[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.’
“Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (footnotes omitted).
“By statute, Alabama law allows a broad spectrum of evidence to be offered as mitigation:
“ ‘In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.’
“§ 13A-5-52, Ala.Code 1975.
“Our Supreme Court has previously stated:
“ ‘To determine the appropriate sentence, the sentencer must engage in a “broad inquiry into all relevant mitigating evidence to allow an individualized determination.” Buchanan v. Anqelone, 522 U.S. 269, 276 (1998). Alabama’s sentencing scheme broadly allows the accused to present evidence in mitigation. Jacobs v. State, 361 So.2d 640, 652-53 (Ala.1978). See 13A-5-45(g), Ala.Code 1975 (“The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52.”). “[Ejvidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.” California v. Brown, 479 U.S. 538 (1987) (O’Connor, J., concurring specially).’
*1153 “Ex parte Smith, [Ms. 1010267, March 14, 2003] - So.3d [-] at -[(Ala.2003)].
“Evidence proffered in mitigation by the defendant must be relevant, however, and the determination of relevance is a decision for the trial court to make in the sound exercise of its discretion. Knotts v. State, 686 So.2d 431, 444 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996). We stated in Knotts:
“ ‘The determination of the relevancy of evidence lies within the sound discretion of the trial court. Borden v. State, 522 So.2d 333 (Ala.Cr.App.1988); C. Gamble, McElroy’s Alabama Evidence, § 21.01(6) (4th ed.1991). Here, the trial court was required to admit all relevant mitigating evidence of the appellant’s character or record and any circumstances pertaining to the offenses.’ ”
Beckworth v. State, 946 So.2d 490, 504-05 (Ala.Crim.App.2005).
“Although a defendant’s right to present proposed mitigating evidence is quite broad, evidence that is irrelevant and unrelated to a defendant’s character or record or to the circumstances of the crime is properly excluded. See Beckworth v. State, 946 So.2d at 507 (evidence that Beckworth’s father was currently charged with sexually abusing Beckworth’s daughter was properly excluded because it was irrelevant).” Woods v. State, 13 So.3d 1, 33 (Ala.Crim.App.2007) (finding “no error, plain or otherwise, as to this claim”).
“ ‘ “While Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.” Bankhead v. State, 585 So.2d 97, 108 (Ala.Cr.App.1989).’ Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996). Finally, although the trial court must consider all mitigating circumstances, it has discretion in determining whether a particular mitigating circumstance is proven and the weight it will give that circumstance. See Williams v. State, 710 So.2d 1276 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997).”
Sharp v. State, [Ms. CR-05-2371, December 19, 2008] - So.3d -, - (Ala.Crim.App.2008) (opinion on return to remand).
Here, Richards’s prior convictions do not constitute one of the statutorily enumerated mitigating circumstances in § 13A-5-51, Ala.Code 1975, as these all address the circumstances and conduct of the capital defendant. Moreover, the trial court did not abuse its discretion in determining that Richards’s prior convictions did not constitute a nonstatutory mitigating circumstance.
II.
Johnson argues that the trial court inaccurately and improperly instructed the jury on the aggravating circumstance of “hindering government functions,” § 13A-5-49(7), Ala.Code 1975, so that the jury was “virtually ensured” to find its existence. (Johnson’s Brief on Appeal at 24.) Specifically, Johnson contends that the trial court’s written instructions to the jury concerning the aggravating circumstance of hindering government functions improperly equated it with the aggravating portion of the capital offense for which she was charged. § 13A-5-40(14), Ala.Code 1975. These written instructions were taken from the State’s Motion for Consideration of Aggravating Circumstances.
Section 13A-5-40(14), Ala.Code 1975, sets out the capital offense of murder “when the victim is subpoenaed, or has been subpoenaed, to testify, or the victim *1154 had testified, in any preliminary hearing, grand jury proceeding, criminal trial or criminal proceeding of whatever nature, or civil trial or civil proceeding of whatever nature, in any municipal, state, or federal court, when the murder stems from, is caused by, or is related to the capacity or role of the victim as a witness.”
The record indicates that after the jury had begun deliberations on the sentencing part of the trial, a question was submitted to the judge requesting a list of examples of mitigating and aggravating circumstances, because the jury stated that the trial court had read the instructions too quickly. (R. 1314.) The trial judge again orally instructed them as to the two aggravating circumstances that they were to consider and stated, “The two that you are to address, and in that I’m giving them to you does not mean that they exist, you make the determination of whether they exist or not.” (R. 1314.) He then tore off the bottom portion of a State’s motion, which contained the two aggravating circumstances. The prosecutor stated to the judge that defense counsel had previously mentioned that “there’s general rules regarding written materials and instructions.” (R. 1315.) The trial court responded, “No.” (R. 1315.)
After the trial court completed his instructions to the jury but before the jury retired, the trial court conducted a bench conference. The prosecutor noted that under § 13A-5-45(e), Ala.Code 1975, the underlying part of a capital offense which was proven by the jury’s verdict as having been found beyond a reasonable doubt is considered proven as to that aggravating circumstance at sentencing. (R. 1320.) The trial court responded that he felt certain that the jury was aware of that, and defense counsel stated that “I [Defense Counsel] pointed that out.” (R. 1320.) A review of the arguments made to the jury by defense counsel and the prosecutor indicate that they felt that the jury’s verdict showed a finding of the existence of the same evidence which would establish the aggravating circumstance of interference with a government function. (R. 1309-10, 1313.) The prosecutor also argued concerning the importance of protecting witnesses to the justice system. (R. 1312-13.)
Johnson raised no objections to the trial court’s instruction and defense counsel stated that he had informed the jury that by finding Johnson guilty beyond a reasonable doubt of the capital offense, they would be finding the existence of the aggravating circumstance. Therefore we review this issue for plain error pursuant to Rule 45A, Ala.R.App.P.
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
Rule 45A, Ala.R.App.P. “ ‘Plain error is defined as error that has “adversely affected the substantial right of the appellant.” ’ ” Ex parte Brown, 11 So.3d 933, 936 (Ala.2008), quoting Hall v. State, 820 So.2d 113, 121 (Ala.Crim.App.1999).
“ ‘The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the United States Supreme Court stated in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is “particularly egregious” and if it “seriously affectfs] the fairness, integrity *1155 or public reputation of judicial proceedings.” See Ex parte Price, 725 So.2d 1068 (Ala.1998), cert. denied, 526 U.S. 1138, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Burgess v. State, 723 So.2d 742 (Ala.Crim.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999); Johnson v. State, 620 So.2d 679, 701 (Ala.Crim.App.1992), rev’d on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Crim.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).’
“Hall v. State, 820 So.2d 113, 121-22 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001). Although the failure to object will not preclude our review, it will weigh against any claim of prejudice. See Dill v. State, 600 So.2d 343 (Ala.Crim.App.1991), aff'd, 600 So.2d 372 (Ala.1992).”
Sale v. State, 8 So.3d 330, 345 (Ala.Crim.App.2008).
The State’s Motion for Consideration of Aggravating Circumstances sets out the pertinent aggravating circumstance as follows:
“2. That the murder by the Defendant was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws; to wit: that the murder stemmed from, was caused by, or was related to Randy McCullar’s role as a witness.”
This sets out the statutory language establishing the aggravating circumstance followed by the evidence which the State argued would prove its existence, in similar form to an indictment. The jury was aware of the State’s argument and was instructed that it was its duty to determine whether the necessary facts existed to establish the existence of the aggravating circumstance.
The jury’s verdict finding that Johnson murdered McCullar where the murder stemmed from his role as a witness did not automatically require a finding of the existence at sentencing of the aggravating circumstance that the murder was committed to disrupt or hinder governmental functions. However, the same evidence may be used to establish both the underlying aggravation in the offense as the aggravating circumstance, depending on the case.
In Whitehead v. State, 777 So.2d 781 (Ala.Crim.App.1999), Whitehead was convicted of two capital offenses for murdering a witness in a theft proceeding against him. In finding that these verdicts did not constitute aggravating circumstances at sentencing, this Court stated:
“The record reveals that the jury was properly instructed on the aggravating circumstances it could consider and the process to be used in weighing the aggravating and mitigating circumstances found to exist in the case. The fact that the murder victim was a witness, both a witness who had testified in a criminal proceeding and a witness who had been subpoenaed to testify in a criminal proceeding, is not an aggravating circumstance for the jury’s consideration in determining the proper sentence under § 13A-5-49, Ala.Code 1975. The jury was instructed accordingly, and jurors are presumed to follow the instructions of the trial court. See Taylor v. State, 666 So.2d 36 (Ala.Cr.App.), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). We note that in its sentencing order, the trial court stated that it was fully aware that the murder of a witness was not an aggravating circumstance provided for in § 13A-5-49, and that it had considered only the aggravating circumstances provided for by stat *1156 ute in reaching its sentencing determination.”
777 So.2d at 819.
Thus, a verdict of guilt under § 13A-5-49(7), Ala.Code 1975, does not automatically result in the finding of an aggravating circumstance, as in the situations described in § 13A-5^45(e).[5] See McNabb v. State, 887 So.2d 929, 994-95 (Ala.Crim.App.2003) (finding that the capital murder of a police officer does not necessarily include conduct that corresponds with the aggravating circumstance of disrupting or hindering the lawful exercise of any governmental function or the enforcement of the laws).
Here, the evidence that Johnson murdered McCullar because he was going to testify in the bigamy proceedings against her both supported the jury’s verdict and proved the aggravating circumstance. See State v. Bethel, 110 Ohio St.3d 416, 448, 854 N.E.2d 150, 186 (2006) (Be-thel was properly found guilty of capital murder with the aggravating portion that the victim was a witness to another offense and that he was killed to prevent his testimony; and one of the aggravating circumstances was properly found to be that Bethel committed the murder to “escape detection, apprehension, trial, or punishment for another offense.... ”). See also Ex parte Baker, 906 So.2d 277, 288 (Ala.2004) (the trial court’s reliance on the hindering the lawful exercise of governmental function aggravating circumstance based on Baker’s wife’s charge of assault III against him was contradicted by the trial court’s finding that Baker planned to kill his wife due to jealousy). The jury was correctly orally charged by the trial court as to its duty and, although the written instruction given to the jury also included the evidence which the State sought the jury to find to support the aggravating circumstance, it did not unduly coerce such a finding. Moreover, Rule 21.1, Ala.R.Crim. P., designates that the ordinary procedure shall be that written instructions to the jury will not be taken back for deliberations; however, the rule recognizes that in a complex case, the jury may be aided in understanding the issues by having a copy of the charges with them. Rule 21.2 states in pertinent part that “[n]either a copy of the charges against the defendant nor the ‘given’ written instructions shall go to the jury room; provided, however, that the court may, in its discretion, submit the written charges to the jury in a complex case.” Thus, in a case such as the present, that involves capital murder and where the jury clearly indicated by its question that it was having difficulty understanding the aggravating and mitigating circumstances, the trial judge did not abuse his discretion in deciding to send the written instructions back with the jury.
We find no plain error as to the trial court’s written instructions on the aggravating circumstance of hindering or disrupting governmental functions.
III.
Johnson argues that the trial court improperly refused to accept the jury’s initial decision to recommend a sentence of life without parole and effectively coerced the jury into returning an advisory verdict of death. She further argues that *1157 the trial court should have declared a mistrial if it did not accept the jury’s verdict.
The record reveals that the jury initially returned two advisory verdict forms, one stated that the jury was recommending a sentence of life without parole but indicated a vote of nine in favor of the death penalty and three in favor of life without parole and the other stated that the jury was recommending a sentence of death and indicated a vote of nine in favor of the death penalty and three in favor of life without parole. (R. 1324-25.) The trial court received the verdict and stated, “We need to redo it, don’t we?” (R. 1322.) The prosecutor stated that “[a]s I understand it, that would be a non-recommendation.” (1322.) Defense counsel agreed. The trial court instructed the jury as to the requisite votes for each sentencing verdict (R. 1322-33), and the jury again deliberated.
The jury returned with a verdict form and, before receiving it, the trial court ensured that the jury understood the voting requirements. (R. 1323-24.) The jury recommended a sentence of death by a vote of 11 in favor of the death penalty and 1 in favor of life without parole. The jury was polled to verify the vote.
During a conference held in the judge’s chambers, both defense counsels argued that because the jurors had originally handed the judge the form that stated that they were recommending a sentence of life without parole, they had made their decision. They argued that the jury had been deadlocked and asked for a mistrial. The prosecutors argued that the jurors had clearly been confused by the verdict forms, but that their vote had been consistent; therefore, the prosecutor argued, the trial court had properly instructed them on the numbers required for each sentencing verdict. Moreover, they noted that there was no indication that the jury had been deadlocked.
“The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors. The verdict of the jury must be in writing and must specify the vote.”
§ 13A-5-46(f), Ala.Code 1975.
Thus, the jury’s advisory verdict in the present case did not originally follow proper sentencing mandates and it was clear that the jurors were confused when they used both of the verdict forms sent back to reflect their vote. See Johnston v. Bowersox, 119 F.Supp.2d 971, 990-91 (E.D.Mo.2000) (where jury returned an improper verdict form advising a sentence of death, the court properly refused the first verdict form, instructed the jury to re-read the instructions and sent the jury back with the instructions and the verdict form). See also Perkins v. State, 808 So.2d 1041, 1135-36 (Ala.Crim.App.1999), affirmed, Ex parte Perkins, 808 So.2d 1143 (Ala.2001), cert. granted and judgment vacated on other grounds, Perkins v. Alabama, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002) (where the jury indicated a vote of 11 jurors in favor of death when polled rather than 10 jurors in favor of death as reflected on the verdict form, it was clear that 1 of the jurors was affirming the jury’s vote rather his or her own and no error occurred).
In Hart v. State, 612 So.2d 520, 532-33 (Ala.Crim.App.1992), affirmed, Ex parte Hart, 612 So.2d 536 (Ala.1992), cert. denied, Hart v. Alabama, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993), Hart argued that the trial court erred when it sent the jury back to deliberate after it had returned a verdict of nine in favor of *1158 the death penalty and three in favor of life without parole. Thereafter, the jury returned a verdict of 11 in favor of the death penalty and 1 in favor of life without parole. This Court found no error by the trial court in that the verdict did not comport with the statute and there was no evidence of coercion by the trial court. Quoting Kuenzel v. State, 577 So.2d 474, 524 (Ala.Crim.App.1990), affirmed, Ex parte Kuenzel, 577 So.2d 531 (Ala.1991), cert. denied, Kuenzel v. Alabama, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), this Court stated:
“ ‘[I]t does appear that the first verdict of the jury was not proper under § 13A-5-46(f), which provides:
“ ‘ “The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least ten jurors. The verdict of the jury must be in writing and must specify the vote.”
“ ‘The jury’s first verdict was not responsive to the instructions of the trial judge or to the requirements of law.
“ ‘ “Nothing seems better settled than that it is the duty of the court to look after the form and substance of the verdict of the jury, so as to prevent an unintelligible or insufficient verdict from passing into the records of the court.” Martin v. State, 29 Ala.App. 395, 396, 196 So. 753, 753-54 (1940). Accord, Bentley v. State, 20 Ala.App. 635, 104 So. 679 (1925). The instructions of the trial judge sending the jury back for further deliberations did not constitute a directed verdict or deprive the defendant of the “leniency of the jury.” United States v. Walker, 456 F.2d 1037, 1039 (5th Cir.1972). Where the verdict of the jury is not responsive to the instructions of the trial judge and the requirements of the law, the trial judge has a duty to reject that improper verdict and require the jury to resume its deliberations. Doughty v. State, 228 Ala. 568, 570, 154 So. 778, 779-80 (1934).’ ”
612 So.2d at 532-33.
Here, the trial court also properly recognized that the jury’s verdict was not proper under § 13A-5-46(f), Ala.Code 1975, and sent the jury back to reconsider its recommended sentence. There was no indication of coercion by the trial court as to what decision that the jury should make. In fact, the trial court advised the jury that it “should not be influenced in any way by what [it] may imagine to be the views of the Court on any such subject.” (R. 1244-54.) The trial court further instructed the jury that “no statement, question, ruling, remark or other expression that has been made by the Court at anytime during the course of this trial either during the guilt phase or during the sentencing hearing is intended to indicate any opinion of what the facts are or what the punishment should be.” (R. 1244.) There was no error, plain or otherwise, as to this matter.
IV.
Johnson argues that the trial court erred by requesting that the jury have certain members to write down the instructions given to them at the close of the guilt and penalty phases of her trial to use as reference during deliberations. She contends that this led to an unreliable verdict and sentence.
The record indicates that as the judge instructed the jury concerning the purpose and use of charges prior to the jury’s retiring to deliberate at the guilt phase, he stated the following:
*1159 “Now the law is a very specific thing. And I would suggest to all the juries that they nominate a couple of folks to write down the law. And I will read it slowly enough for you to get it down exactly, so that you will have the exact law with you when you retire. And I think that’s important.”
(R. 1208.) No objection was raised by Johnson as to this instruction or when the trial court supplied the jury with pens and pads before they were charged as to the sentencing phase. (R. 1283.) Therefore, we review this issue for plain error. Rule 45A, Ala.R.App.P.
As set out in Issue II, supra, Rule 21.1, Ala.R.App.P. states in pertinent part that “[njeither a copy of the charges against the defendant nor the ‘given’ written instructions shall go to the jury room; provided, however, that the court may, in its discretion, submit the written charges to the jury in a complex ease.” Moreover, the determination of whether the jury would be aided by having a copy of the instructions or notes thereon is a matter better suited to the trial court’s discretion.
“A trial court’s determination on whether to submit written charges to the jury in a complex case will not be overturned absent a showing of an abuse of discretion. See Wright v. State, 740 So.2d 1147 (Ala.Cr.App.1999) (sending written charges to the jury during deliberations was not an abuse of discretion). See also Gaddy v. State, 698 So.2d 1100, 1147 (Ala.Cr.App.1995), aff'd, 698 So.2d 1150 (Ala.), cert. denied, 522 U.S. 1032, 118 S.Ct. 634, 139 L.Ed.2d 613 (1997) (denying a request to send written charges back with the jury during its deliberations during the guilt phase in a capital murder trial was not error).”
Apicella v. State, 809 So.2d 841, 862 (Ala.Crim.App.2000), affirmed, Ex parte Apicella, 809 So.2d 865 (Ala.2001), cert. denied, Apicella v. Alabama, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 706 (2002).
Here, where the case involved capital murder and a number of complexities, there is no indication that the trial court abused its discretion by suggesting that the jury take notes of its instructions. Moreover, there is no indication that this suggestion adversely affected Johnson’s substantial rights.
V.
Johnson argues that numerous instances of prosecutorial misconduct denied her of a fair trial and accurate sentence determination.
A.
Johnson contends that the State convicted her based on irrelevant and overly prejudicial evidence concerning her promiscuity. Specifically, she argues that the State obscured the real issues and inflamed the jury by “sparing] no detail in presenting to the jury a picture of a promiscuous woman who was in several romantic relationships at once over a period of years and who had children by different men.” (Johnson’s brief at 38.)
However, as this Court has previously held, evidence of Johnson’s bigamy was relevant in the present case as a necessary element of the capital offense with which Johnson was charged, murder when the victim had testified as a witness in a criminal proceeding and the murder is related to the victim’s role as a witness. See Johnson v. State, 120 So.3d 1100, 1103-04 (Ala.Crim.App.2005). The bigamy charge was also relevant as it established motive. 120 So.3d at 1105-08. Additionally, her adulterous relationships were held to have been part of an unbroken chain of events that precipitated the murder, and that evidence was relevant to shed light on these *1160 events, which culminated in the murder. 120 So.3d at 1106-07.
Furthermore, as this Court has also previously resolved, the relevance of this evidence was not outweighed by its prejudicial impact. Johnson v. State, 120 So.3d at 1114. The State did not use this evidence to confuse the jury, or “ ‘to imply the inference of facts which do not exist,’ ” or “ ‘to bolster a weak case against the defendant.’” Blackmon v. State, 7 So.3d 397, 430 (Ala.Crim.App.2005). “Moreover, the evidence concerning Johnson’s adulterous affairs was not unduly or unfairly prejudicial, because it related to Johnson’s conviction for bigamy, Johnson’s motive, and the conspiracy theory.” 120 So.3d at 1113.
Because the evidence was relevant and not unduly prejudicial, the prosecutor’s conduct in presenting this evidence was not improper.
B.
Johnson alleges that the State repeatedly and unconstitutionally substituted emotions for facts to the jury. She cites to a comment made by the prosecutor during his closing argument to the jury, equating Johnson’s conduct with that of a Nazi commander; victim-impact testimony by the victim’s mother; and various questions posed by the prosecutor alluding to the fact that the victim was no longer present for the trial or for his family.
As to the prosecutor’s comment during his closing argument to the jury at the guilt phase, Johnson failed to object to the Nazi reference; thus, this issue must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
The record indicates that the trial court cautioned the jury prior to closing arguments that the attorneys’ comments do not constitute evidence. Following the closing arguments, the judge instructed the jury that “if they (sic) attorneys have said anything, they, of course, definitely have feelings about the case, but you understand that their simple statements are not evidence, that what they said in closing and opening arguments are not evidence.” (R. 1214.) Thus, the jury was charged as to the way to evaluate such comments.
In Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998), overruled on other grounds, Ex parte Taylor, 10 So.3d 1075 (Ala.2005), the prosecutor commented that the murder “ ‘was more like some kind of Nazi war crime.’ ” This Court held that Thomas’s counsel was not ineffective for failing to object to this comment, and stated:
“ ‘ “In a proper case, the prosecuting attorney may characterize the accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence of the case.’” Johnson v. State, 620 So.2d 679, 703 (Ala.Cr.App.1992) (the prosecutor’s reference to the ‘animalistic nature of the human mind’ and his comment that the offense was ‘absolutely filthy, horrendously dirty and despicable’ were ‘either proper statements of the evidence, proper inferences from the evidence, or conclusions that were properly drawn from the evidence,’ 620 So.2d at 702; also the prosecutor’s comment in penalty phase that the appellant was not a civilized human being was in accord with the evidence that the two victims had been brutally beaten and then their home set on fire), rev’d on other ground, 620 So.2d 709 (Ala.1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993) (quoting Nicks v. State, 521 So.2d 1018, 1023 (Ala.Cr.App.1987), aff'd, 521 So.2d 1035 (Ala.1988), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988)). See also Taylor v. State, 666 So.2d 36, 65 (Ala.Cr. *1161 App.1994) (characterizations of the crime as a ‘massacre’ and of the crime scene as a ‘slaughterhouse’ were proper inferences from the evidence), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); McMillian v. State, 594 So.2d 1253, 1262 (Ala.CrApp.1991) (comments characterizing the killing as ‘uncivilized’ and ‘befitting animals’ were reasonable inferences drawn from the evidence and legitimate comments on the evidence); Hurst v. State, 356 So.2d 1224, 1236 (Ala.Cr.App.1978) (prosecutor’s closing remark that ‘[t]his man slaughtered him’ did not overstep the bounds of fairness and impartiality). See also Wright v. State, 279 Ala. 543, 550-51, 188 So.2d 272, 279 (1966) (‘[a]r-gument of counsel should not be so restricted as to prevent reference, by way of illustration, to historical facts’).”
766 So.2d at 954-55.
In the present case, evaluating this comment by the prosecutor in the context of his argument and the evidence presented, this comment did not rise to the level of plain error.
Moreover, the victim-impact evidence to which Johnson alludes is testimony by the victim’s mother concerning the loss of her son. Johnson does not specify which statements by the witness during her testimony to which she is referring. No objection appears in the record during the witness’s guilt-phase testimony on this ground; therefore, we review this issue for plain error.
A review of the witness’s testimony reveals that there was no impropriety and that she made no statement amounting to victim-impact evidence during the guilt phase. Although she became upset once when she responded that the next time that she saw the victim following a phone call on the night of the offense was in his casket, this was not improper victim-impact testimony. Grayson v. State, 824 So.2d 804, 812 (Ala.Crim.App.1999), affirmed, Ex Parte Grayson, 824 So.2d 844 (Ala.2001), cert. denied, Grayson v. Alabama, 537 U.S. 842, 123 S.Ct. 172, 154 L.Ed.2d 66 (2002) (wherein testimony by the victim’s mother identifying her and stating that she had planned to return home was not victim-impact testimony and was relevant as to the timing of the victim’s death as well as to explain the location of the death). Here, the mother’s reference to the coffin was made in explaining the timing of his death.
“As the Alabama Supreme Court stated in Ex parte Rieber, 663 So.2d 999 (Ala.1995):
“ ‘It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that [the appellant] did not receive a fair trial simply because the jurors were told what they probably had already suspected — that [the victim] was not a “human island,” but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents (paraphrasing a portion of Justice Souter’s opinion concurring in the judgment in Payne v. Tennessee, 501 U.S. 808, 838, 111 S.Ct. 2597, 2615, 115 L.Ed.2d 720 (1991)).’
“663 So.2d at 1006.”
Calhoun v. State, 932 So.2d 923, 969 (Ala.Crim.App.2005), cert. denied, Calhoun v. Alabama, 548 U.S. 926, 126 S.Ct. 2984, 165 L.Ed.2d 990 (2006). Moreover, there was no plain error to Johnson due to the witness crying. See Frazier v. State, 758 So.2d 577, 596 (Ala.Crim.App.1999), and the cases cited therein.
*1162 “In McNair v. State, 653 So.2d 320 (Ala.Cr.App.1992), this Court held:
“ ‘ “[A]s a general rule, a demonstration by, or the misconduct of, a bystander or spectator during a criminal trial — including even a disturbance having a tendency to influence or disturb the jury — is not deemed to be sufficient reason for the granting of a new trial unless it appears that the rights of the accused were prejudiced thereby, and, generally, in the absence of a showing to the contrary, it will be assumed that the jury was not prejudiced; similarly, manifestations of grief by spectators related to the victim of a crime, as a general matter, will not alone furnish good ground for a new trial, a showing being required that the case of the accused was prejudiced by such conduct.”
“‘Annot., 31 A.L.R.4th 229, 234-35 (1984). This same general rule also applies to emotional manifestations made while testifying. 31 A.L.R.4th at 235-36. See Hall v. State, 500 So.2d 1282, 1290-91 (Ala.Cr.App.1986) (rape victim cried during her testimony); Smith v. State, 37 Ala.App. 116, 118, 64 So.2d 620, 621, cert. denied, 258 Ala. 647, 64 So.2d 622 (1953) (assault victim “cried aloud” during testimony); James v. State, 44 Ala.App. 593, 595, 217 So.2d 545, 547 (1969) (assault with intent to rape victim cried twice during testimony); Lee v. State, 265 Ala. 623, 627, 93 So.2d 757, 761 (1957) (wife of deceased murder victim “sobbing” while testifying); Duff v. State, 40 Ala.App. 80, 83, 111 So.2d 621, 624 (1958), cert. denied, 269 Ala. 696, 111 So.2d 627 (1959) (mother of deceased murder victim “crying out loud” during prosecutor’s opening statement). This rule applies in capital cases. See Henderson v. State, 583 So.2d 276, 287 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
“ ‘The emotional manifestations present rise nowhere near the level presented in Collum v. State, 21 Ala.App. 220, 221, 107 So. 35, 35-36 (1926) (new trial required where in a prosecution for seduction, the prosecutrix fainted in the witness chair, and mother came to her aid weeping and crying, “Nobody knows how much we have suffered over this trouble. Lord have mercy on us.”) and White v. State, 25 Ala.App. 323, 324, 146 So. 85 (1933) (new trial required where widow of murder victim contradicted defense counsel during his closing argument).
“ ‘Here, as in Smith, 37 Ala.App. at 118, 64 So.2d at 621: “The trial judge witnessed the incidents]. To him must of necessity be committed a wide discretion in determining whether or not the occurrence^] affected the rights of the accused to a fair, impartial trial.” We find no merit to the appellant’s argument that the prosecution should have been required to call witnesses who were not members of the victim’s family.’ ”
DeBruce v. State, 651 So.2d 599, 608-09 (Ala.Crim.App.1993), affirmed, Ex parte DeBruce, 651 So.2d 624 (Ala.1994).
There was no plain error in the victim’s mother’s testimony amounting to improper ■victim-impact testimony.
Finally, as to statements by witnesses that alluded to the victim’s inability to be present for the trial due to his death, these comments did not prejudicially impact Johnson’s trial. See Ex parte Walker, 972 So.2d 737, 747 (Ala.2007) (wherein although portions of the testimony by the capital-murder victim’s daughter and a friend may have been inappropriate, they did not prejudicially impact Walker’s trial). *1163 Thus, the State did not repeatedly or unconstitutionally substitute emotions for facts to the jury.
C.
Johnson alleges that the State improperly argued facts not in evidence; specifically, Johnson points to a portion of the prosecutor’s closing argument during the guilt phase wherein he addressed Richards’s testimony and the testimony by Richards’s sister. She argues that these witnesses did not give the testimony which the prosecutor argued to the jury. She argues that, by manufacturing testimony, the State deprived her of a fair trial.
Johnson cites the prosecutor’s argument during his closing at the guilt phase, concerning Richards’s testimony when he commented:
“Do you remember and Tim Richards tells us a story from October, mid October to late November, one thing after another she’s bringing up, the defendant is bringing up, saying, ‘We’ve got to get rid of Randy, we’ve got to get rid of Randy.’ What’s the first one? ‘Oh, the bigamy, I’m gonna go to jail, who’s gonna take care of the kids? You’ve got to — if you love me, you’re gonna take care of this for me.’ The second thing is the money. ‘Oh, Randy came into a lot of money, a couple hundred thousand dollars. If something happens to him, that money goes to Chad, the boy we have custody of and then we get it.’”
(R. 1173.)
Johnson argues that, although Richards testified that she had talked about losing custody of her child and the settlement money, she had never addressed the bigamy case. However, Richards clearly testified that one of Johnson’s reasons for wanting McCullar killed was due to the impending bigamy charges. In fact, the following dialogue occurred during the direct examination of Richards:
“Q: Did the defendant, Shonda Johnson, ever tell you why she wanted Randy McCullar killed?
“A: One was because he was filing bigamy charges on her. Another one was because he was trying to take a child away from her and there was a big money settlement in between this.”
(R. 468-69.)
Thus, the prosecutor accurately summarized this testimony by Richards.
As to the testimony by Richards’s sister, the prosecutor argued:
“Two days, before the killing and I think it’s crucially important, crucially important in this case, Audrey Gray [Richards’s sister] on Thanksgiving. You saw her take that witness stand. She gave information in this case, early before anybody’s charged. She said, ‘My brother did this. My brother’s involved.’ She didn’t have to tell us that. She implicated her brother in the killing of Randy McCullar.”
(R. 1204.)
During Richards’s trial testimony he stated that when he told his sister that Johnson had been questioned concerning McCullar’s death, his sister looked at him and said, “ Y’all did it, didn’t you?’ ” (R. 555.) He further quoted her as having said, “ Y’all had something to do with this, didn’t you?’ ” (R. 556.) Moreover, during Richards’s sister’s testimony at trial, she stated that two days prior to McCullar’s death, Johnson told her that she and Richards were going “head hunting.” (R. 733.) When Richards’s sister asked what that meant, Johnson responded that they had a gun in the trunk of their car. (R. 733.) She testified that “I looked at my brother and told him not to do anything stupid.” (R. 735.) She further testified that she *1164 was aware of the trouble that Richards and Johnson were having with MeCullar. (R. 734.) She stated that after the murder, her brother brought her a note and attempted to get her to establish an alibi for Johnson and him for the time of the murder. (R. 739.) Johnson told her that MeCullar had been shot and, when she asked what had happened to the gun in the back of the car, Johnson responded, “ ‘Don’t worry about it, it’s been taken care of.’ ” (R. 740^41.) Richards’s sister also testified that she eventually spoke to two police officers and gave them this same information. (R. 743.) She testified that by doing so she knew that her brother and Johnson were being implicated and would be prosecuted. (R. 743.)
Thus, the prosecutor’s argument as to what Richards’s sister had testified to was a reasonable inference from the evidence.
“ ‘ “ ‘During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.’ ” Reeves v. State, 807 So.2d 18, 45 (Ala.Crim.App.2000), quoting Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Crim.App.1987) (citation omitted), rev’d on other grounds, 523 So.2d 1118 (Ala.1988).
“ ‘ “ ‘The test of a prosecutor’s legitimate argument is that whatever is based on facts and evidence is within the scope of proper comment and argument. Kirkland v. State, 340 So.2d 1139 (Ala.Crim.App.), cert. denied, 340 So.2d 1140 (Ala.1976 [1977]). Statements based on facts admissible in evidence are proper. Henley v. State, 361 So.2d 1148 (Ala.Crim.App.), cert. denied, 361 So.2d 1152 (Ala.1978). A prosecutor as well as defense counsel has a right to present his impressions from the evidence. He may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way. Williams v. State, 377 So.2d 634 (Ala.Crim.App.1979); McQueen v. State, 355 So.2d 407 (Ala.Crim.App.1978).’ ”
“‘Ballard v. State, 767 So.2d 1123, 1135 (Ala.Crim.App.1999), writ quashed, 767 So.2d 1142 (Ala.2000), quoting Watson v. State, 398 So.2d 320, 328 (Ala.Crim.App.1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).’
“Johnson v. State, 823 So.2d 1, 47 (Ala.Crim.App.2001).”
Minor v. State, 914 So.2d 372, 426 (Ala.Crim.App.2004), cert. denied, Minor v. Alabama, 548 U.S. 925, 126 S.Ct. 2977, 165 L.Ed.2d 987 (2006). See Harris v. State, 2 So.3d 880, 921 (Ala.Crim.App.2007).
Here, the “prosecutor’s comments were based on evidence that had been introduced or were a legitimate inference that could have been drawn from the evidence. See Ballard [v. State, 767 So.2d 1123, 1135 (Ala.Crim.App.1999) ].” Smith v. State, [Ms. CR-97-1258, January 16, 2009] - So.3d -, - (Ala.Crim.App.2007) (opinion on return to fourth remand). Thus, there was no error in the prosecutor’s comments.
D.
Johnson argues that the prosecutor improperly expressed his opinions about the evidence and Johnson’s guilt by referring to her as a “liar” and vouching for the credibility of the State’s witnesses. However, Johnson cites no instance in which the prosecutor directly referred to her as a liar, nor does she cite any instance of vouching for a State’s witness. These objections were also not raised at trial.
*1165 However, any characterization of Johnson as a liar by the prosecutor would have been supported by the evidence in the present case because of the varying statements given by her to the police. She initially stated that she was in Tuscaloosa, Alabama, at the time of the murder, but eventually admitted that the first statement was untrue and cast the blame on Richards; she eventually admitted having been involved in the murder. Similarly, in Smith v. State, 795 So.2d 788 (Ala.Crim.App.2000), Smith argued that the prosecutor improperly referred to him as a liar. This Court stated:
“Clearly, this characterization of the appellant is supported by the record. Smith, in his first statement, totally denied any involvement in the robbery-murder. In the second statement he admitted his participation in the robber-murder. ‘[T]he prosecutor, in the appropriate case, may use opprobrious terms to characterize the accused or his conduct, provided that the remarks are in accord with the evidence.’ Bankhead [v. State, 585 So.2d 97, 105 (Ala.Crim.App.1989)].”
795 So.2d at 826.
Further, there is no indication in the record that the prosecutor improperly vouched for the credibility of the State’s witnesses.
“ ‘A distinction must be made between an argument by the prosecutor personally vouching for a witness, thereby bolstering the credibility of the witness, and an argument concerning the credibility of a witness based upon the testimony presented at trial. “[Pjrosecutors must avoid making personal guarantees as to the credibility of the state’s witnesses.” Ex parte Parker, 610 So.2d 1181 (Ala.1992). See Ex parte Waldrop, 459 So.2d 959, 961 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).
“ ‘ “ ‘Attempts to bolster a witness by vouching for his credibility are normally improper and error.’ ... The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness’ credibility.... This test may be satisfied in two ways. First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness’ veracity.... Secondly, a prosecutor may implicitly vouch for the witness’ veracity by indicating that information not presented to the jury supports the testimony.”
“ ‘United States v. Sims, 719 F.2d 375, 377 (11th Cir.1983), cert. denied, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).’
“DeBruce v. State, 651 So.2d 599, 610-11 (Ala.Crim.App.1993), aff'd, 651 So.2d 624 (Ala.1994).”
Brown v. State, 11 So.3d 866, 910-11 (Ala.Crim.App.2007), affirmed, Ex parte Brown, 11 So.3d 933 (Ala.2008), cert. denied, Brown v. Alabama, 557 U.S. 938, 129 S.Ct. 2864, 174 L.Ed.2d 582 (2009).
Here, there is no indication in the record that the prosecutor impermissibly vouched for any witness’s credibility as he never suggested that there was evidence undisclosed to the jury that would support a witness’s testimony nor did he ever make personal assurances of a witness’s veracity. Thus, there is no error on this ground.
E.
Johnson argues that the State mischar-acterized the law as to the jury’s responsibility for assessing the hindering governmental functions aggravating circumstance of § 13A-5-49(7), Ala.Code 1975. Johnson *1166 argues that the State improperly argued that the same evidence that supported a finding of guilt as to the aggravating element of the capital offense, concerning his role as a witness, also supported a finding of the hindering governmental functions aggravating circumstance at sentencing.
This matter has been discussed, supra, in Issue II. The same evidence that established that Johnson was hindering governmental functions by disabling a prosecution for bigamy by killing the complaining witness also established that she committed the murder by killing a witness who was to testify in the bigamy case. Thus, in the present case, the same evidence did establish both the underlying aggravating element of the capital offense and the aggravating circumstance at sentencing. See State v. Bethel, supra. Cf. Centobie v. State, 861 So.2d 1111 (Ala.Crim.App.2001) (evidence proved that Centobie was preventing a lawful arrest by an on duty police officer so as to satisfy both the aggravating circumstance of avoiding a lawful arrest and the underlying aggravating portion of the capital offense that the murder was of an on-duty police officer). McNabb v. State, 741 So.2d 488 (Ala.Crim.App.1998)(table), affirmed, Ex parte McNabb, 887 So.2d 998 (Ala.2004), cert. denied, McNabb v. Alabama, 543 U.S. 1005, 125 S.Ct. 606, 160 L.Ed.2d 466 (2004) (evidence proved that MeNabb murdered an on duty police officer who had witnessed his commission of another offense proved both the aggravating element of the capital offense, that the officer was on duty, and the aggravating circumstances that the crime was committed to hinder the lawful exercise of governmental functions and to avoid lawful arrest).
F.
Johnson contends that the prosecutor improperly led witnesses on direct examination and testified on their behalf. She cites to 43 instances of alleged leading by reference to page number, 21 instances of alleged repeating of improper questions for emphasis by reference to page number, and 17 instances of allegedly failing to lay a proper predicate by reference to page number. She further cites to three alleged instances of bolstering the witness, two where the prosecutor asked whether one witness attended church and one witness had served in Vietnam. She also cites to two instances wherein she alleges that the prosecutor attempted to lead two witnesses concerning the make of an automobile by suggesting that they were mistaken. She also includes two colloquies during which she alleges that the prosecutor badgered two defense witnesses on cross-examination by attempting to undermine their testimony by questioning them on highly prejudicial facts not in evidence. Finally, she cites to a comment by the prosecutor during the testimony of a police officer where he commented that Johnson had “let one slip,” eluding to a mistake by Johnson which had drawn the officer’s attention. (R. 1065.) Thus, she argues the prosecutor improperly commented on the evidence.
“‘In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App.1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the *1167 jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App.1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982).
“Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App.1989), aff'd. in relevant part, remanded on other grounds, 585 So.2d 112, 127 (Ala.1991), aff'd. on return to remand, 625 So.2d 1141 (Ala.Cr.App.1992).”
Hutcherson v. State, 727 So.2d 846, 854-55 (Ala.Crim.App.1997), affirmed, Ex parte Hutcherson, 727 So.2d 861 (Ala.1998), cert. denied, Hutcherson v. Alabama, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). A review of the alleged instances of improper leading reveals no error, plain or otherwise.[6]
As to her argument that the prosecutor badgered the defense witnesses on cross-examination,
“ ‘A party is given wide latitude on cross-examination to test a witness’s partiality, bias, intent, credibility, or prejudice, or to impeach, illustrate, or test the accuracy of the witness’s testimony or recollection as well as the extent of his knowledge. Wells v. State, 292 Ala. 256, 292 So.2d 471 (1973); Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594 (1953); Hooper v. State, 585 So.2d 142 (Ala.Cr.App.1991), cert. denied, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992); C. Gamble, [McElroy’s Alabama Evidence, § 136.01 (4th ed.1991)]. The range of cross-examination rests largely in the discretion of the trial court, and that court’s ruling will not be disturbed unless it clearly appears that the defendant was prejudiced by the ruling. Hooper v. State. However, “where the witness’ testimony is important to the determination of the issues being tried, there is little, if any, discretion in the trial court to disallow cross-examination.” Wells v. State, 292 Ala. at 258, 292 So.2d at 473.’
“Williams v. State, 710 So.2d 1276, 1327-28 (Ala.Cr.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998).”
Ballard v. State, 767 So.2d 1123, 1140-41 (Ala.Crim.App.1999). The prosecutor did not step outside the range of propriety or badger any defense witness in the present case.
In Calhoun v. State, 932 So.2d 923 (Ala.Crim.App.2005), a capital case, Calhoun argued that the prosecutor led witnesses on direct examination and restated questions to bolster their testimony. He cited to 325 instances in which the prosecutor led witnesses. This Court noted that Calhoun did not object to most of these instances and found no instance where illegal evidence was admitted or any reversible error resulting from these questions. This Court stated:
“Rule 611(c), Ala.R.Evid., which addresses leading questions, states:
“‘Leading questions should not be used on the direct examination of a witness, except when justice requires that they be allowed. Leading questions are permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.’
*1168 “Alabama has never enforced an across-the-board ban on leading questions by a prosecutor during direct examination. ‘Every question may be said in some sense to be leading....’ Donnell v. Jones, 13 Ala. 490, 507 (1848). As we stated in Williams v. State, 568 So.2d 354, 356-57 (Ala.Crim.App.1990):
“1 “Any question expressly or impliedly assuming a material fact not theretofore testified to, so that the answer may affirm such fact, is leading. Smith v. S.H. Kress & Co., 210 Ala. 436, 98 So. 378 [ (1923) ].” Ray v. State, 32 Ala.App. 556, 559, 28 So.2d 116, 118 (1946). “‘[T]he trial judge has discretion to allow some leading questions, especially since prior testimony is simply being repeated.’ Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 944 (Ala.1983). ‘Whether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error.’ Bradford v. Stanley, 355 So.2d 328, 331 (Ala.1978).” Lynn v. State, 543 So.2d 704, 707 (Ala.Cr.App.1987), affirmed, 543 So.2d 709 (Ala.1988), cert. denied, [493] U.S. [945], 110 S.Ct. 351, 107 L.Ed.2d 338 (1989). Thus, leading questions may be allowed on direct examination, depending on the circumstances of the particular case. Certain subjects are especially conducive to a leading form, “‘else the counsel and witness cannot be made to understand each other,’ ” among them “ ‘[p]roof of ... personal identity.’ ” C. Gamble, McElroy’s Alabama Evidence § 121.05(2) (3d ed.1977).’
“See also Evans v. State, 794 So.2d 415 (Ala.Crim.App.2000), and James v. State, 788 So.2d 185 (Ala.Crim.App.2000). We have refused to find error when a circuit court has allowed leading questions on preliminary matters that are not disputed, see Womble v. State, 44 Ala.App. 416, 211 So.2d 881 (1968); when a witness is hostile, see Dennis v. State, 584 So.2d 548 (Ala.Crim.App.1991); when a witness is immature, see McCurley v. State, 455 So.2d 1014 (Ala.Crim.App.1984); when a witness’s memory has failed, see Garth v. State, 536 So.2d 173 (Ala.Crim.App.1988); and to establish the predicate for admission of a confession, see Jones v. State, 292 Ala. 126, 290 So.2d 165 (1974).”
932 So.2d at 963.
Moreover, there is no indication that the prosecutor failed to lay a proper predicate for the admission of evidence by leading State’s witnesses.
“As we stated in George v. State, 717 So.2d 827 (Ala.Crim.App.1996):
“ ‘None of the questions led to the admission of illegal evidence and none prejudiced the appellant. The questions were merely attempts to speed up the direct examination. The trial court is vested with wide discretion in this area “because it has been said that there is no form of question which may not be leading and that the trial court should look beyond the form to the substance and effect of the inquiry in the particular circumstances of the case.” C. Gamble, McElroy’s Alabama Evidence, § 121.05(3) (4th ed.1991).’
“George v. State, 717 So.2d at 838, rev’d on other grounds, 717 So.2d 844 (Ala.1996).”
Hodges v. State, 856 So.2d 875, 922-23 (Ala.Crim.App.2001), affirmed, Ex parte Hodges, 856 So.2d 936 (Ala.2003), cert. denied, Hodges v. Alabama, 540 U.S. 986, 124 S.Ct. 465, 157 L.Ed.2d 379 (2003).
“ ‘Whether to allow or disallow leading questions is discretionary with the *1169 trial court and except for a flagrant violation will there be reversible error.’ Ruffin v. State, 582 So.2d 1159, 1162 (Ala.Crim.App.1991), quoting Jones v. State, 292 Ala. 126, 128, 290 So.2d 165, 166 (1974). See also, C. Gamble, McElroy’s Alabama Evidence § 121.05 (4th ed.1991).” Smith v. State, - So.3d -, - (Ala.Crim.App.2000), affirmed in part, reversed in part on other grounds, Ex parte Smith, - So.3d - (Ala.2003).
As to Johnson’s categorizing of error and supporting it by mere reference to page numbers, in Jackson v. State, 791 So.2d 979 (Ala.Crim.App.2000), a capital case, Jackson alleged that the prosecutor used leading questions to elicit testimony from State’s witnesses, citing a series of page numbers without identifying the specific questions or explaining how he was prejudiced by them. This Court stated:
“ “We in no way condone a party’s reliance on the mere citing of page numbers from the record, without a discussion of the pertinent facts from those pages and application of the pertinent law to those facts. We consider such reliance an indication of a lack of merit of the contention the party asserts.’
“Hardy v. State, 804 So.2d 247, 289 (Ala.Cr.App.1999).
“Despite Jackson’s meager argument, we have nevertheless reviewed the entire record in this cause, including the page numbers cited by Jackson — which reveal no objection by Jackson to any of the prosecutor’s questions — and find no error, plain or otherwise, in the State’s questioning of its witnesses.”
791 So.2d at 1015.
Similarly, in this case a review of the instances cited by Johnson reveals no error adversely affecting Johnson’s rights or that would require a reversal in the outcome of this ease.
G.
Johnson argues that the prosecutor impermissibly vouched for Richards’s credibility when he commented during his closing argument at the guilt phase:
“I don’t want y’all to think we’re vouching for Tim Richards as a person. Tim Richards is a murderer, he’s a despicable person. But I think he told you the truth up there. I don’t have to think that, I think the evidence showed he did. Everything he said up there we are able to verify through a secondary source. So let’s go that, take a look at that. What did he testify to?”
(R. 1172.) Johnson did not object to this comment. Thus, we review this claim for plain error. See Rule 45A, Ala.R.App.P.
This comment by the prosecutor was intended to draw inferences and sort and collate the evidence. Henderson v. State, 584 So.2d 841, 856-57 (Ala.Crim.App.1988), remanded on other grounds, 585 So.2d 862 (Ala.1991). Long v. State, 446 So.2d 658, 662-63 (Ala.Crim.App.1983). It was not so inappropriate as to undermine the fairness of Johnson’s trial.
“The prosecutor was arguing the effect of the witness’s testimony. Moreover, there is no implication in his comments that he had reasons not known by the jury, i.e., reasons other than those arising from the evidence before the jury, for knowing that what the witness said was true. In addition, the prosecutor gave neither his personal assurance nor guarantee of Dr. Hardin’s veracity. See DeBruce v. State, 651 So.2d 599, 610-11 (Ala.Cr.App.1993) (in holding that it was not improper vouching for prosecutor to comment, ‘I’ll submit to you, [the state’s main witness] is telling you the truth,’ the court observed that the credibility of a witness is a legiti *1170 mate subject of discussion, and the prosecutor’s remark was grounded on some testimony given by the witness himself), aff'd, 651 So.2d 624 (Ala.1994).”
Thomas v. State, 766 So.2d 860, 940 (Ala.Crim.App.1998), affirmed, Ex parte Thomas, 766 So.2d 860, 881 (Ala.Crim.App.1998), overruled on other grounds by Ex parte Taylor, 10 So.3d 1075 (Ala.2005).
Moreover, this Court further acknowledged that although it is improper for a prosecutor to vouch for the credibility of a witness, certain qualifying statements, such as “I think” as used in the present case, may result in a comment falling outside the prohibition against personally vouching for the witness. Thus, this Court stated:
“However, those comments that constitute personal vouching are not necessarily easily distinguished from proper comments, as illustrated by the following findings in Ex parte Rieber, 663 So.2d 999, 1014 (Ala.1995), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995):
“‘[W]e view those comments that the prosecutor prefaced with “I think,” “I believe,” “I feel,” “I am satisfied,” and “I have no doubt,” as expressing his reasonable impressions from the evidence. The prosecutor was allowed to argue every legitimate inference from the evidence, and the trial court was afforded wide discretion in regulating his comments. We note, however, that even if these comments were to be viewed as expressions of the prosecutor’s personal opinions and, thus, as “crossing the line” of permissible argument, they, nonetheless, would not constitute reversible error. There is no fixed standard for determining whether a prosecutor’s comments so prejudiced the factfinding process as to require a new trial. Each case must be judged on its own merits. Hooks v. State, [534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) ]; Racine v. State, [290 Ala. 225, 275 So.2d 655 (1973) ]. These remarks by the prosecutor were not as potentially prejudicial as those of the prosecutors in Ex parte Parker, supra, wherein we held that the prosecutors’ remarks did not undermine the fundamental fairness of the trial. We further note that the prosecutor, referring to State’s witness Tommy Erskine, stated: “He was extremely believable to me.” This isolated comment, although improperly expressing the prosecutor’s personal opinion as to Erskine’s credibility, likewise did not constitute reversible error. Ex parte Parker.’
“Compare remarks reviewed in Arthur v. State, 575 So.2d 1165, 1180-84 (Ala.Cr.App.1990), cert. denied, 575 So.2d 1191 (Ala.1991); and King v. State, 518 So.2d 191 (Ala.Cr.App.1987).”
766 So.2d at 939-40.
This comment by the prosecutor was an argument to the jury concerning the strength of the State’s case, McWhorter v. State, 781 So.2d 257, 321 (Ala.Crim.App.1999), affirmed, Ex parte McWhorter, 781 So.2d 330 (Ala.2000), cert. denied, McWhorter v. Alabama, 532 U.S. 976, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001), and reasonable inferences and conclusions that could be drawn therefrom. As such, this comment did not adversely affect Johnson’s substantial rights.
H.
Johnson argues that the prosecutor appealed to hysteria by telling the jury that Johnson must be executed to protect witnesses in courts and to protect society. Johnson refers to the following argument *1171 made by the prosecutor during his closing argument at the sentencing phase of the trial:
“The question you have to add or have to ask is that, are we as a society willing to put up with the activity this defendant has been found guilty of or do we as a society need to protect ourselves against these type of people? I think that we need to protect ourselves against these type of people. And I think that if we are not willing to enforce the laws that we have in place, then we’re in a lot of trouble.”
(R. 1309.) Johnson failed to object to this argument at trial and, therefore, this issue must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
Here, the prosecutor’s comments “ ‘properly argued the necessity of law enforcement as a deterrent to crime and as a protection of society.’ ” Sneed v. State, 1 So.3d 104, 141 (Ala.Crim.App.2007), cert. denied, Sneed v. Alabama, 555 U.S. 1155, 129 S.Ct. 1039, 173 L.Ed.2d 472 (2009), quoting Kuenzel v. State, 577 So.2d 474, 503-04 (Ala.Crim.App.1990), affirmed, Ex parte Kuenzel, 577 So.2d 531 (Ala.1991).
“ ‘In Alabama, the rule is that a district attorney in closing argument may make a general appeal for law enforcement. Embrey v. State, 283 Ala. 110, 118, 214 So.2d 567 (1968).
“ ‘This line of argument is “within the latitude allowed prosecutors in their exhortations to the jury to discharge their duties in such a manner as, not only to punish crime, but protect the public from like offenses and as an example to deter others from committing like offenses.” Varner v. State, 418 So.2d 961 (Ala.Crim.App.1982); Cook v. State, 369 So.2d 1243 (Ala.Crim.App.1977), affirmed in part, reversed in part on other grounds, 369 So.2d 1251 (Ala.1978).’
“Ex parte Waldrop, 459 So.2d 959, 962 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). See also Sockwell v. State, 675 So.2d 4 (Ala.Cr.App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996).”
Ingram v. State, 779 So.2d 1225, 1262-63 (Ala.Crim.App.1999), affirmed, Ex parte Ingram, 779 So.2d 1283 (Ala.2000), cert. denied, Ingram v. Alabama, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001). There was no plain error due to this comment by the prosecutor.
I.
Johnson contends that the prosecutor improperly told the jury that, as representatives of the community, they had a duty under the law to sentence her to death. She refers to the prosecutor’s comments during the penalty phase.
The record indicates the prosecutor argued as follows:
“Today, I’m going to ask you to enforce the law. Capital murder means death penalty is one of two potential sentences. I’m going to ask you to recommend to the Judge who will make the ultimate decision which of those two sentences that you as representatives of the community think this particular crime should be sentenced with.”
(R. 1249-50.)
“I’m confident that if you follow the law and if you speak for the community, what do we as a community feel the law should be and how it should be executed, I feel confident that you will recommend to the judge that we as a community recommend the actions of this defendant will not be tolerated, not be accepted, it’s not only in a front (sic) to the MeCullars but as a front (sic) to every *1172 Citizen here, we recommend that she receive the death penalty.”
(R. 1255.)
Johnson failed to object to these comments and, therefore, they must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
However, when these comments are viewed in the context of the entire argument, the prosecutor was clearly making an appeal for justice and law enforcement. He urged the jury to consider the evidence of the aggravating and mitigating circumstances and make their decision thereon. The prosecutor has a right to argue the strength of the State’s evidence.
In Freeman v. State, 776 So.2d 160 (Ala.Crim.App.1999), affirmed, Ex parte Freeman, 776 So.2d 203 (Ala.2000), cert. denied, Freeman v. Alabama, 531 U.S. 966, 121 S.Ct. 400, 148 L.Ed.2d 308 (2000), the prosecutor made a similar argument, and this Court held:
“Freeman claims that the prosecutor improperly suggested to the jurors that they should act as ‘the conscience of the community’ and impose the death penalty; that they should speak for the people in the community and do what was ‘right and just’; and that they could make a difference by punishing Freeman for his crimes -by recommending the death penalty. (R. 1292-93; 1296-97; 1299-1300.) We have reviewed the prosecutor’s comments in the context of the entire closing argument and find that all of the remarks, like the similar remarks made by the prosecutor at the guilt phase, were general appeals for law enforcement and justice, and appeals to the jury to discharge its duties in such a manner as to punish Freeman for the commission of his crimes and to deter others from committing similar offenses. See Price, supra; Kuenzel, supra. Throughout his closing argument, the prosecutor urged the jury to make its sentence recommendation based on the law and the evidence, not on prejudice, sympathy, or bias for or against Freeman, Sylvia Gordon, Mary Gordon, or Debbie Gordon Hosford. (R. 1292,1296, 1297, 1300, 1303.) The comments were clearly a call for justice, not sympathy.”
776 So.2d at 187. See also McGriff v. State, 908 So.2d 961, 1000 (Ala.Crim.App.2000), reversed on other grounds, Ex parte McGriff, 908 So.2d 1024 (Ala.2004) (prosecutor’s argument to the jury to “ ‘Speak loudly, speak truthfully, speak justice in this case and run the sword of justice right through the Defendant’s guilty little heart because he committed capital murder in this community in a rural small place called Ashford’ ” did not constitute plain error but was “more akin to an appeal for law enforcement.”).
Here, the prosecutor’s comments fell within the range of permissible arguments to the jury. Johnson’s substantial rights were not adversely affected by this argument.
J.
Johnson argues that the cumulative effect of the prosecutorial misconduct denied her of a fair trial. “ ‘ “Because we find no error in the specific instances alleged by the appellant, we find no cumulative error.” Lane v. State, 673 So.2d 825 (Ala.Crim.App.1995). See also McGriff v. State, 908 So.2d 961 (Ala.Crim.App.2000).’ Calhoun v. State, 932 So.2d 923, 974 (Ala.Crim.App.2005). We likewise find no cumulative error in this case.” Harris v. State, 2 So.3d 880, 928 (Ala.Crim.App.2007).
VI.
Johnson argues that the trial court gave several guilt phase instructions to the jury *1173 that are contrary to the law and thereby violated her rights under the United States and Alabama Constitutions and Alabama law.
A.
Johnson contends that the trial court improperly failed to charge the jury as to the necessity for corroboration of accomplice testimony. She argues that the failure to do so constitutes reversible error. Johnson announced that she had no exceptions to the trial court’s charge to the jury at the guilt phase. (R. 1222.) Thus, we review this claim for plain error. Rule 45A, Ala.R.App.P.
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
§ 12-21-222, Ala.Code 1975.
“This section merely creates a statutory rule, and not a constitutional right.” Alexander v. State, 281 Ala. 457, 458 204 So.2d 488, 489 (1967). See also Woodberry v. State, 497 So.2d 587, 589 (Ala.Crim.App.1986). Moreover, the failure to give such an instruction can be harmless.
‘““The court should have instructed the jury concerning the need for corroborative evidence of McCants’s testimony. However, the failure to do so does not mean that this cause must automatically be reversed. Automatic reversal exists only when the error ‘necessarily renders a trial fundamentally unfair.’ Rose v. Clark, 478 U.S. 570, [577], 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Alabama has applied the harmless error analysis in a case involving the death penalty to the failure of the court to instruct the jury on the principle of accomplice corroboration. Gurley v. State, 639 So.2d 557 (Ala.Cr.App.1993); Frazier v. State, 562 So.2d 543, 558 (Ala.Cr.App.), rev’d on other grounds, 562 So.2d 560 (Ala.1989).” ’ ”
Jackson v. State, 836 So.2d 915, 946 (Ala.Crim.App.1999) (finding that because there was sufficient evidence to corroborate the accomplice’s testimony, the trial court’s failure to instruct the jury on the necessity of corroborating accomplice testimony “did not rise to the level of plain error and was, at most, harmless error. See Rule 45, Ala.R.App.P.”).
“ ‘[T]he error of failing to instruct the jury on the need for corroborative evidence is harmless when the testimony of an accomplice has in fact been corroborated. Frazier v. State, 562 So.2d 543, 558 (Ala.Cr.App.), reversed on other grounds, 562 So.2d 560 (Ala.1989). Accord People v. Brunner, 797 P.2d 788, 790 (Colo.App.1990); State v. Brown [187 Conn. 602], 447 A.2d 734, 740 (Conn.1982); Ali v. United States, 581 A.2d 368, 377-78 (D.C.App.1990), cert. denied, 502 U.S. 893, 112 S.Ct. 259 [116 L.Ed.2d 213] (1991); Strong v. State [261 Md. 371], 275 A.2d 491, 495 (Md.1971), vacated on other grounds, 408 U.S. 939 [92 S.Ct. 2872, 33 L.Ed.2d 760] (1972); State v. England, 409 N.W.2d 262, 265 (Minn.App.1987).’ ”
Burton v. State, 651 So.2d 641, 654 (Ala.Crim.App.1993), quoting, Gurley v. State, 639 So.2d 557, 561 (Ala.Crim.App.1993). See also Ex parte Bankhead, 585 So.2d 112, 119 (Ala.1991), affirmed on return to remand, Bankhead v. State, 625 So.2d 1141 (Ala.Crim.App.1992), reversed on other grounds, Ex parte Bankhead, 625 So.2d 1146 (Ala.1993) (holding that because there was sufficient evidence to corroborate the accomplice’s testimony, the trial court did not commit reversible error in not in *1174 structing the jury on corroboration of accomplice testimony). Hutcherson v. State, 677 So.2d 1174, 1200 (Ala.Crim.App.1994), reversed on other grounds, 677 So.2d 1205 (Ala.1996) (holding that even if witness was an accomplice and testified for the State, “there was more than sufficient evidence to corroborate his testimony; therefore, no reversible error would have occurred. Burton v. State, 651 So.2d 641 (Ala.Cr.App.1993); Gurley v. State, 639 So.2d 557 (Ala.Cr.App.1993); Frazier v. State, 562 So.2d 543 (Ala.Cr.App.), rev’d on other grounds, 562 So.2d 560 (Ala.1989)”).
Here, there was ample evidence to corroborate Richards’s testimony.[7] Corroborating evidence in the present case included Johnson’s statement to the police, the testimony of two State’s witnesses that she wanted McCullar dead, the testimony of a State’s witness that she had solicited him to murder McCullar, her statements to Richards’s sister both before and following the murder, and her ability to take the police to the location where the murder weapon was dumped. Therefore, the trial court’s failure to instruct the jury as to the necessity of corroborating accomplice testimony did not adversely affect Johnson’s substantial rights. See Hyde v. State, 778 So.2d 199, 221 (Ala.Crim.App.1998), affirmed, Ex parte Hyde, 778 So.2d 237 (Ala.2000), cert. denied, Hyde v. Alabama, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001) (holding that because there was corroborating evidence, there was no plain error due to the trial court’s not charging the jury regarding accomplice testimony).
B.
Johnson argues that the trial court erred by failing to instruct the jury that it could consider Richards’s plea agreement in evaluating his testimony. Johnson did not object to this omission at trial and raises it for the first time on appeal; therefore, this matter is due to be evaluated pursuant to the plain error standard. Rule 45A, Ala.R.App.P.
The trial court instructed the jury as to it’s duty in weighing and evaluating the credibility to be accorded to the testimony of witnesses as follows:
“If you believe that any material part of the evidence of any witness is willfully false, you may disregard all the testimony of such witness. If you believe that any witness has perjured themselves, has testified falsely to an important element in the case, you may disregard all the testimony given by that witness.”
(R. 1213-14.)
This instruction by the trial court adequately apprised the jury of its duty in weighing the testimony of witnesses where his or her credibility is at issue. Moreover, the jury was informed of Richards’s plea bargain agreement during the guilt phase of the trial, as well as his involvement in the offense and his relationship with Johnson which would be considerations in determining the weight to accord his testimony.
In Owens v. State, 291 Ala. 107, 278 So.2d 693 (1973), Owens argued that the trial court erred in failing to give his requested instruction that the fact that a witness is a law enforcement officer does not require that his testimony be given greater credibility. Because there is no authority requiring that the specific requested charge must be given, and because the trial court gave the jury instructions as to its duty in evaluating witness credibility, the court found no reversible error on this ground.' The court stated, “We are unable to find convincing authority that such *1175 charge must be given, especially where the record reveals that the trial court in its oral charge instructed the jury with respect to their duty to consider the interest or bias in determining what weight they would give the testimony of such witness.” 291 Ala. at 111, 278 So.2d at 695.
Similarly, in the present case, there is no authority mandating that the trial court instruct the jury that a plea bargain must be weighed in determining the credibility of a witness’s testimony. Furthermore, the jury was aware of the plea bargain through testimony at the guilt phase; and the jury was thoroughly instructed concerning its duty in evaluating a witness’s credibility in its determinations. Cf. Felder v. State, 697 So.2d 490 (Ala.Crim.App.1996) (trial court did not err in failing to give instructions that the jury could consider that witness had drug problems in evaluating his credibility where the trial court’s instructions on witness credibility were more than adequate and the jury had been apprised that the witness had a drug addiction).
The trial court’s failure to charge the jury to consider Richards’s plea bargain in evaluating his credibility did not adversely affect Johnson’s substantial rights.
C.
Johnson argues that the trial court erred in instructing the jury that it had to consider evidence as credible if it was conveyed by more than one witness. Johnson failed to object to this instruction at trial and therefore this matter must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
Taken in context, the portion of the trial court’s instruction to which Johnson objects stated as follows:
“Impeachment: If any witness has been impeached or their testimony has been discredited, that’s what impeach means, then the jury may disregard his or her testimony unless that testimony is corroborated by other testimony not so impeached. In other words, if a person has — testimony has been discredited, you may disregard it, but you may not disregard it if someone else testifies to the same thing. All right. Got that.”
(R. 1218.)
This charge is not improper. In Leatherwood v. State, 17 Ala.App. 498, 85 So. 875 (1920), the court found that the trial court erred by failing to give the requested charge that if the jury determines that a witness has been impeached, “ ‘his entire testimony may be disregarded, unless corroborated by the testimony not so impeached.’ ” Id. The court stated:
“[The requested charge] simply asserts that if the jury believe from the evidence that the witness named has been successfully impeached, and if they believe from the evidence said witness is shown to be a man of bad character and unworthy of belief, they are authorized to disregard his evidence altogether; the charge does not require them to do so, and hence was not invasive of the province of the jury. Prater v. State [107 Ala. 26, 18 So. 238 (1895) ], supra. The credibility of witnesses is a matter for the consideration of the jury, guided by such instructions from the court as the nature and character of the evidence and the particular case may require.”
Id. See also Baynes v. State, 423 So.2d 307, 311 (Ala.Crim.App.1982) (holding that the trial court’s charge fairly covered the subject of impeachment by stating, in pertinent part, “ ‘If any witness testifying has been impeached, then the jury may disregard his or her testimony unless his or her testimony be corroborated by other testimony not so impeached.’ ”).
*1176 The jury here was properly instructed immediately following the above-quoted charge, that:
“If you believe that any material part of the evidence of any witness is willfully false, you may disregard all the testimony of such witness. If you believe that any witness has perjured themselves, has testified falsely to an important element in the case, you may disregard all the testimony given by that witness.
“My job throughout this trial is to see that the trial is carried on in an orderly fashion to make rulings and decide the law in the case. The attorneys’, for both the State and the defense, job is to present the case and your job is to determine the facts in the case.”
(R. 1213-14.)
Thus, the jury was clearly instructed that the credibility of witnesses was a matter for its consideration and determination in light of the evidence presented. “It is well-settled law that, provided the instructions accurately state the law, a trial court has broad discretion in formulating its instructions to the jury. Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000).” Snyder v. State, 893 So.2d 482, 486 (Ala.2001). The trial court’s instructions covered the subject matter of witness credibility and bias correctly. The trial judge was informing the jury that if a witness has been impeached, his testimony may be disregarded but the testimony of witnesses who have not been impeached should be considered and weighed. Moreover, if a witness has been impeached his testimony may be rehabilitated by a corroborating source. See C. Gamble, McElroy’s Alabama Evidence (5th ed.1996), §§ 149.01(14), 155.02(8). These instructions did not adversely affect Johnson’s substantial rights.
D.
Johnson argues that the trial court failed to instruct the jury concerning the necessary standard for a conviction based on circumstantial evidence. Johnson did not object on this ground at trial and, therefore, this matter is due to be analyzed pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
Johnson’s conviction was not based solely on circumstantial evidence. Her final statement to the police concerning her involvement, as well as the evidence from Richards concerning Johnson’s role in the murder, constituted direct evidence of her involvement. See Yancey v. State, 65 So.3d 452, 458 (Ala.Crim.App.2009) (“Direct evidence has been defined as evidence that ‘demonstrates the existence or non-existence of a precise fact and issue without the need to draw inferences or apply presumptions.’ J. Colquitt, Alabama Law of Evidence § 1.0 at 2 (1990). As such, credible eye-witness testimony is strong evidence of the stated facts concerning an offense.”). See also Young v. State, 892 So.2d 988, 990 (Ala.Crim.App.2004) (“direct evidence has been defined as ‘ “the assertions of human beings used as the basis of inference to the propositions asserted by them. This may be called ‘testimonial evidence.’ ” ’ (Quoting 1A Wig-more, Evidence § 25 (Tillers rev. ed.1983).) Moreover, it is well settled that ‘[t]he testimony of the victim alone [is] sufficient to establish a prima facie case of robbery.’ Watkins v. State, 565 So.2d 1227, 1231 (Ala.Crim.App.1990).”).
The Alabama Supreme Court held in Ex parte Carter, 889 So.2d 528 (Ala.2004), that an instruction on circumstantial evidence is not required by the trial court, even where the case is based wholly on such evidence, stating:
“In Thomas v. State, 824 So.2d 1 (Ala.Crim.App.1999), Thomas was convicted *1177 of the capital offense of murder committed during a rape and was sentenced to death. In conducting a plain-error review of Thomas’s trial and sentencing, the Court of Criminal Appeals held that although all of the evidence was likely circumstantial,[2] it was not plain error for the trial court not to have given a circumstantial-evidence instruction; Thomas had not asked for such an instruction and after the trial court’s oral charge to the jury Thomas’s attorney announced that he was satisfied with the jury instructions. 824 So.2d at 38-39.
[[Image here]]
“... As the Court of Criminal Appeals recognized in Thomas:
“ ‘ “[Although a] few courts have held that general instructions, such as those dealing with the burden of proof, are sufficient, a larger number of jurisdictions have adopted the rule that an instruction on the law of circumstantial evidence is not required where the jury is properly and adequately charged concerning the reasonable doubt standard.” ’
“Thomas, 824 So.2d at 36, citing Caroll J. Miller, Annotation, Modem Status of Rule Regarding Necessity of Instruction on Circumstantial Evidence in Criminal Trial-State Cases, 36 A.L.R.4th 1046, 1052 (1985). Although a trial court may give a circumstantial-evidence instruction if it finds the instruction appropriate or helpful in a particular case, a trial court is not required to give the jury such an instruction merely because all of the State’s evidence in a criminal case is circumstantial. To the extent that this ruling is inconsistent with Thomas v. State, 824 So.2d 1 (Ala.Crim.App.1999), Davenport v. City of Birmingham, 570 So.2d 1298 (Ala.Crim.App.1990), Ex parte Williams, 468 So.2d 99 (Ala.1985), and Howard v. State, 108 Ala. 571, 18 So. 813 (1895), those cases are overruled.
889 So.2d at 531-33.
Here, the trial court instructed the jury on the reasonable doubt standard in evaluating the evidence. The evidence supporting Johnson’s conviction, moreover, was not entirely circumstantial. Johnson’s substantial rights were not adversely affected by the trial court’s failure to instruct the jury as to circumstantial evidence.
E.
Johnson argues that the trial court’s definition of reasonable doubt was unconstitutional, in violation of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Because Johnson raised no objection on this ground at trial, we review this issue for plain error. Rule 45A, Ala.R.App.P.
In the present case, the trial court instructed the jury concerning the reasonable doubt standard as follows:
“Reasonable doubt; The term reasonable doubt means a doubt which has a good reason for arising out of the evidence in the case. It means a doubt growing out of the unsatisfactory nature of the evidence in the case. It does not mean a doubt which arises from a mere whim or from a groundless surmise or guess. While the law requires you to be satisfied of the defendant’s guilt beyond a reasonable doubt, it at the same time prohibits you from going outside the evidence to search for doubts upon which to acquit the defendant.
*1178 “In arriving at your verdict, it is your duty to carefully consider the entire evidence in the case and in doing so you should entertain only those doubts, as they arise from the evidence or any part of the evidence, which are reasonable. Unless the doubt is a reasonable one, and does so arise, it will not be sufficient in law to authorize a verdict of not guilty. Upon careful review of all the evidence you ask your inner conscience, ‘Is she guilty,’ and the answer comes back, ‘I doubt if she is,’ then you must acquit the defendant in the case. If you answer your inner conscience, ‘Is she guilty,’ and the answer comes back, ‘I have no reasonable doubt that she is guilty,’ then you must convict.
“There is no such thing as absolute certainty in human affairs, for justice is, after all, an approximate science and its ends are not to be defeated by failure of mathematical proof.”
(R. 1212-13.)
Johnson argues that because the jury was charged on reasonable doubt by including language which referred to “mathematical” proof, and reminded of these instructions when being charged as to reasonable doubt at sentencing, her rights to due process were violated. She further complains that the trial court twice equated reasonable doubt with “moral certainty.”
“ ‘ “ ‘In Cage v. Louisiana, [498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) ] the United States Supreme Court found that if the instruction equated “reasonable doubt” to “grave uncertainty,” and “actual substantial doubt” and stated that what was required was “moral certainty” a reasonable jury could interpret the instruction to allow a lesser degree of proof to convict than that required by the due process clause. It was the use of all three phrases in conjunction with each other that the Supreme Court determined was unconstitutional in Cage. Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991).’
“ ‘ “Sockwell v. State, 675 So.2d 4, 23 (Ala.Cr.App.1993).” ’
“Price v. State, 725 at 1021.
“ ‘ “Use of some but not all of the terminology found offensive in Cage does not automatically constitute reversible error.” Taylor v. State, 666 So.2d 36, 56 (Ala.Cr.App.), opinion after remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996) (citations omitted). The instruction given in this case does not equate “reasonable doubt” with “moral certainty” “grave uncertainty” or “actual substantial doubt,” which the United States Supreme Court found to be improper in Cage. Taken as a whole, the instruction was not improper; it was not confusing and it did not lessen the State’s burden of proof. Taylor, supra. See also, Ex parte Williams, 640 So.2d 1015, 1023-24 (Ala.1993).’
“Hyde v. State, 778 So.2d 199, 222 (Ala.Cr.App.1998).”
McWhorter v. State, 781 So.2d 257, 303 (Ala.Crim.App.1999), affirmed, Ex parte McWhorter, 781 So.2d 330 (Ala.2000), cert. denied, McWhorter v. Alabama, 532 U.S. 976, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001).
However, the charge given by the trial judge in the present case did not imper-missibly lower the State’s burden of proof, as in Cage. The use of such language in describing the reasonable doubt standard as “ ‘it’s rarely possible to prove anything to an absolute or mathematical certainty,’ ” *1179 has been held to be proper and not viola-tive of Cage. McWhorter v. State, 781 So.2d at 302. Moreover, this Court has held that the use of the term “moral certainty” is also permissible in defining the reasonable doubt standard.
“While the trial court used the terms ‘actual substantial doubt’ and ‘moral certainty1 in its instructions, it did not also use the term ‘grave uncertainty1 in defining reasonable doubt. It was the use of all three terms that the Supreme Court found unconstitutional in Cage. See Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991); Coral v. State, 628 So.2d 954 (Ala.Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). This court has held that use of some, but not all, of the terms examined in Cage does not necessarily constitute reversible error. Haney v. State, 603 So.2d 368 (Ala.Cr.App.1991), affd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993).”
Lawhorn v. State, 756 So.2d 971, 985 (Ala.Crim.App.1999), cert. denied, Lawhorn v. Alabama, 531 U.S. 835, 121 S.Ct. 93, 148 L.Ed.2d 53 (2000).
“ “When reviewing a trial court’s instructions, “ ‘the court’s charge must be taken as a whole, and the portions challenged are not to be isolated from or taken out of context, but rather considered together.’ ” Self v. State, 620 So.2d 110, 113 (Ala.Cr.App.1992) (quoting Porter v. State, 520 So.2d 235, 237 (Ala.Cr.App.1987)); see also, Beard v. State, 612 So.2d 1335 (Ala.Cr.App.1992); Alexander v. State, 601 So.2d 1130 (Ala.Cr.App.1992).’ Maples v. State, 758 So.2d 1, 65 (Ala.Cr.App.1999).” McWhorter v. State, 781 So.2d at 302.
Here, the jury was properly charged as to the reasonable doubt standard and this charge would not have lessened the State’s burden or shifted the burden of proof. Johnson’s substantial rights were not adversely affected by these instructions.
F.
Johnson argues that the trial court’s guilt phase instructions improperly indicated that the appropriate verdict was that of guilt. Johnson did not object on this ground until appeal and therefore this issue must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
Johnson’s argument is based on a single word by the trial court during his charge, wherein he stated, “The defendant is presumed to be innocent until she is proven guilty beyond a reasonable doubt by the evidence in the case.” (R. 1211.) She argues that the trial court’s use of the word “until” rather than “unless” required the jury to return a verdict of guilt. “The incorrect instruction could have been a mere slip of the tongue on the part of the trial court or, perhaps, is the result of an error made by the court reporter in transcribing the court’s oral charge.” Woods v. State, 13 So.3d 1, 41 n. 1 (Ala.Crim.App.2007) (finding no plain error in trial court’s misstatement that the prosecutor’s burden in disproving a mitigating circumstance by a preponderance of the evidence means that the jury should consider that the circumstance does not exist unless the evidence as a whole makes it more likely that it does exist). See Dorsey v. State, 881 So.2d 460, 517 (Ala.Crim.App.2001), affirmed in part, reversed in part on other grounds, Ex parte Dorsey, 881 So.2d 533 (Ala.2003), overruled on other ground, Heard v. State, 999 So.2d 992 (Ala.2007) (comment by the trial court in charging the jury as to a finding of guilt on a lesser included offense was a clear inadvertent slip of the tongue and did not constitute plain error in light of the entire charge).
*1180 This same issue has been previously presented to this Court and decided adversely to Johnson’s position. In Snyder v. State, 893 So.2d 488, 548 (Ala.Crim.App.2003), Snyder contended that the trial court lessened the State’s burden of proof by using the word “until” rather than “unless” in its charge on the presumption of innocence. He argued that the use of this word “ ‘informed the jury that a guilty verdict was expected.’ ” 893 So.2d at 548. This Court found no error due to this charge, stating:
“The Alabama Supreme Court has used the word ‘until’ to characterize the State’s burden of proof. In Ex parte Scroggins, 727 So.2d 131, 134 (Ala.1998), the court stated, ‘The burden of proof in all criminal prosecutions rests upon the State, with the presumption of innocence attending the defendant until the burden of proof has been met.’ Also, we approved a similar instruction in Thomas v. State, 824 So.2d 1 (Ala.Crim.App.1999).
“The trial court’s jury instructions, when viewed as a whole, correctly informed the jury that if the State did not meet its burden, the jury had a duty to acquit the defendant. No reasonable juror would have concluded that the instructions implied that the State would always meet that burden. There was no error, much less plain error, in the trial court instruction on the presumption of innocence.”
893 So.2d at 549.
A review of the trial court’s entire charge, rather than this statement in isolation, shows that the jury was properly informed of the law concerning the presumption of innocence. Therefore, Johnson’s substantial rights were not adversely affected by this charge.
VII.
Johnson argues that the trial court erroneously allowed the aggravating circumstance that the murder was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws to be applied to her case because: the facts did not establish that the purpose of the killing was to hinder law enforcement; the trial court treated the aggravating element of the capital offense and this aggravating circumstance as the same;[8] and this circumstance would be overly broad if it is allowed to apply in this context. Specifically, she argues that the aggravating circumstance should not be applied here because it did not involve the murder of a police officer. She further argues that, if allowed to apply to this case, this circumstance will be unconstitutionally vague and overbroad because “[i]t would not be difficult to find an angle to almost every murder case that involved the hindrance of a governmental function or the enforcement of the laws.” (Johnson’s brief p. 74.) Johnson is raising these arguments for the first time on appeal and therefore they are due to be analyzed pursuant to the plain error standard. Rule 45A, Ala.R.App.P.
A.
Johnson alleges that this aggravating circumstance should not apply to this case because it has not been applied in Alabama other than for the murder of a police officer. However, Alabama cases have applied this circumstance to the murders of individuals other than officers where the murder hindered or disrupted the enforcement of the laws or governmental functions. In Davis v. State, 804 So.2d 1153 (Ala.Crim.App.2000), this aggravating cir- *1181 eumstance was applied to the murder of an informant in a drug case against Davis. Moreover, in Baker v. State, 906 So.2d 210 (Ala.Crim.App.2001), reversed on other grounds, Ex parte Baker, 906 So.2d 277 (Ala.2004), on remand to, Baker v. State, 906 So.2d 292 (Ala.Crim.App.2005), the trial court found that this aggravating circumstance applied to the murder “because a misdemeanor charge of assault III was pending against the appellant based on a warrant filed by the victim.” 906 So.2d at 276. The assault charge had been reinstated by the victim, Baker’s wife, after having been dismissed due to the victim’s failure to appear; the evidence indicated that Baker had physically prevented her from appearing. Id. Although the Alabama Supreme Court reversed this case on other grounds, it noted that in applying this aggravating circumstance, the trial court seemed to contradict itself as it earlier stated that the murder was committed “ ‘solely1 ” due to jealousy. See 64 A.L.R.4th 755 (1988). Cf. State v. Hall, 976 S.W.2d 121, 134 (Tenn.1998) (finding that aggravating circumstance that murder was committed during escape from lawful custody was not “ ‘unconstitutionally vague as applied to this case’ ” because “ ‘it was intended to protect law enforcement officers’ ” where victims were killed while defendants were attempting to escape to Mexico).
In the present case, Johnson’s primary motive in killing MeCullar was to prevent him from testifying in the bigamy case against her. MeCullar was clearly the State’s main witness. Thus, the murder was committed to prevent this prosecution and the enforcement of the law.
B.
Johnson argues that this aggravating circumstance is overly broad and vague when applied to this case because the trial court did not define for the jury the terms “governmental functions” or “enforcement of laws.” She further argues that this circumstance could be argued to apply to almost every murder and is therefore overly broad if held to apply to this situation.
The record indicates that, after the jury had retired for deliberations as to the sentencing recommendation, it returned with a question concerning the mitigating and aggravating circumstances. (R. 1314.) The trial court again informed them of the aggravating circumstances that they could consider, including that “the capital offense was committed to disrupt or hinder the unlawful exercise of any governmental function or enforcement of laws.” (R. 1315.) The trial court then sent a written statement of the two aggravating circumstances that the jury could consider back with them for their continued deliberations. This statement of the pertinent aggravating circumstance continued with the language “to-wit: the murder stemmed from, was caused by, or was related to Randy McCullar’s role as a witness.” This language clearly informed the jury of the evidence in this case that had to be found to support a finding of this aggravating circumstance.
It was not necessary for the trial court to define “governmental functions” and “enforcement of the laws” as these terms were intended to be construed pursuant to their ordinary meaning. As this Court stated in Wilson v. State, 777 So.2d 856, 922 (Ala.Crim.App.1999), where Wilson contended that the trial court erred by failing to define “ ‘ “knowingly creates a great risk of death to many persons” ’ ” as it applies to the aggravating circumstance in § 13A-5-49(3):
“ ‘The phrase at issue has not been defined by statute or by case law. “When a term is included in a statute *1182 relevant to a case, and that term is not defined by statute, whether it is necessary for the trial court to define the term for the jury hinges on the facts of the case. See Thornton v. State, 570 So.2d 762 (Ala.Cr.App.1990).” Ivery v. State, 686 So.2d 495 (Ala.Cr.App.1996). This principle “has added meaning when the challenged terms can be understood by the average juror in their common usage.” Thornton, 570 So.2d at 772. In this case, the intended meaning of the phrase at issue is clear on its face. This phrase is written in plain English and contains no terms of art or legal jargon. We fail to see any way in which a labored definition of this phrase would have clarified its meaning. Our conclusion is buttressed by the fact that, unlike the appellants in Ivery and Thornton, the appellant here has failed to present any conceivable confusion, based on the facts of this case, that may have resulted from the use of this phrase alone without definition. Moreover, the trial court’s jury charge regarding this aggravating circumstance followed the pertinent pattern jury instruction in Proposed Pattern Jury Instructions for use in the Sentence Phase of Capital Cases Tried under Act No. 81-178. That pattern jury instruction provides no definition for the phrase at issue. “ ‘ “[W]e do not think we should hold that the trial judge plainly erred when he instructed the jury pursuant to a pattern jury instruction ‘recommended’ by this Court, especially in the absence of an objection or request from the defendant.” ’ Kuenzel [v. State], 577 So.2d [474], 520, [ (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991) ], quoting Ex parte Harrell, 470 So.2d 1309, 1315 [ (Ala.1985) ].” Williams v. State, 601 So.2d 1062 (Ala.Cr.App.1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992) (emphasis in original). We find no plain error here.’
“Therefore, we conclude that the term ‘many’ and the remainder of § 13A-5-49(3), Ala.Code 1975, ‘define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.’ Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Consequently, the appellant’s vagueness argument is without merit.”
777 So.2d at 922. See People v. Young, 34 Cal.4th 1149, 1170, 24 Cal.Rptr.3d 112, 105 P.3d 487, 536 (Cal.2005) (finding that the trial court has no duty to instruct the jury on the term “ ‘life without parole’ ” and citing People v. Hawthorne, 4 Cal.4th 43, 75-76, 14 Cal.Rptr.2d 133, 841 P.2d 118, 139 (Cal.1992) (finding that trial court did not have to define “death” as such was not a legal term of art)).
The Proposed Pattern Jury Instructions for use in the Sentence Phase of Capital Cases Tried under Act No. 81-178 sets out the instructions to be given by the trial court as to the aggravating circumstances by stating the statutory designation or description of those that are relevant and supported by sufficient evidence. Proposed Pattern Jury Instructions, at 83-85. The trial court followed these instructions as to the pertinent aggravating circumstance. “It is the preferred practice to use the pattern jury instructions in a capital case.” Ex parte Hagood, 777 So.2d 214, 219 (Ala.1999).
*1183 A statute should not be declared void for vagueness if it can be given a reasonable construction so as to be enforceable. Hawkins v. City of Birmingham, 248 Ala. 692, 695, 29 So.2d 281, 282 (1947). Here, the State’s evidence showing that the main reason for this murder was Johnson’s plan to avoid prosecution in the bigamy case provides the evidence necessary to fulfill the clear language of this aggravating circumstance. See Smith v. State, - So.3d - (Ala.Crim.App.2007) (jury charge on aggravating circumstance that Smith created a great risk of death to many people was not broad or vague where evidence showed that three people were murdered and six additional people were placed in great risk of death).
Therefore, there was no error, plain or otherwise, in the application of the aggravating circumstance for the murder having been committed to disrupt or hinder the lawful exercise of any government function or the enforcement of laws.
VIII.
Johnson argues that several of the trial court’s penalty phase instructions were contrary to the law and violated her constitutional rights. She failed to raise any of these claims concerning the instructions to the trial court, and therefore they must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
A.
Johnson alleges that the trial court improperly implied to the jury that it could not consider any mitigating evidence until it found the existence of two aggravating circumstances beyond a reasonable doubt. However, a review of the trial court’s instruction to the jury, which is cited by Johnson, taken in context, states:
“If you find that no aggravating circumstance has been proven beyond a reasonable doubt to exist in this case, then you must return a verdict recommending that the defendant’s punishment be life imprisonment without parole. In that, event, you need not concern yourself with the mitigating circumstances in this case.
“If you find beyond a reasonable doubt that the two aggravating circumstances on which I have instructed you does exist in this case, then you must proceed to consider and determine the mitigating circumstances.”
(R. 1239.)
This charge is almost identical to the charge stated in The Proposed, Pattern Jury Instructions for use in the Sentence Phase of Capital Cases Tried under Act No. 81-178 at p. 87.[9] Snyder v. State, 893 So.2d 488, 553 (Ala.Crim.App.2003), cert. denied, In re Snyder, 893 So.2d 563 (Ala.2004), cert. denied, Snyder v. Alabama, 544 U.S. 1062, 125 S.Ct. 2512, 161 L.Ed.2d 1113 (2005) (“ ‘this Court has held that no reversible error will be found when the trial court follows the pattern jury instructions adopted by this Court. Kuenzel v. State, [577 So.2d 474 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.1991) ]’ ”).
The trial court also instructed the jury that if it found the existence of “at least one aggravating circumstance” beyond a reasonable doubt and the aggravating circumstance outweighs the mitigating circumstance or circumstances, then the recommendation should be for death. (R. 1247-48.) The trial court further instruct *1184 ed that if the jury found that the mitigating circumstance or circumstances outweighed any aggravating circumstance, or if the jury was not convinced beyond a reasonable doubt of the existence of at least one aggravating circumstance, then the recommendation must be for life imprisonment without parole. (R. 1248.) Thus, the jury was clearly instructed as to its duty in weighing the aggravating and mitigating circumstances, and that it must recommend life without parole if it fails to find any aggravating circumstances.
There was no error, plain or otherwise, concerning these instructions by the trial court.
B.
Johnson contends that the trial court and the prosecutor denigrated the jury’s sense of responsibility by repeatedly referring to its sentencing verdict as merely advisory. Specifically, she cites to a number of instances in which the trial judge referred to the jury’s verdict as a “recommendation” during his penalty phase charge to the jury. She also cites to three comments by the prosecutor during his penalty phase arguments: “I’m going to ask you to recommend to the judge who will make the ultimate decision which of those two sentences that you as representatives of the community think this particular crime should have been sentenced with” (R. 1249-50); “it would be your duty to recommend to the Court and the Court, of course, can take your recommendation or not” (R. 1250); and “I am going to ask you, think about it, and return a verdict or a recommendation, and that’s what it is a recommendation, of death in this case.” (R. 1309.)
“ ‘ “[W]e reaffirm the principle that, in Alabama, the ‘judge, and not the jury, is the final sentencing authority in criminal proceedings.’ Ex parte Hays, 518 So.2d 768, 774 (Ala.1986); Beck v. State, 396 So.2d [645] at 659 [ (Ala.1980) ]; Jacobs v. State, 361 So.2d 640, 644 (Ala.1978), cert. denied, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979).” Ex parte Giles, 632 So.2d 577, 583 (Ala.1993), cert. denied, [512] U.S. [1213], 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). “The jury’s verdict whether to sentence a defendant to death or to life without parole is advisory only.” Bush v. State, 431 So.2d 555, 559 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). See also Sockwell v. State, [675] So.2d [4] (Ala.Cr.App.1993). “We have previously held that the trial court does not diminish the jury’s role or commit error when it states during the jury charge in the penalty phase of a death case that the jury’s verdict is a recommendation or an ‘advisory verdict.’ White v. State, 587 So.2d 1218 (Ala.Cr.App.1990), aff'd, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).” Burton v. State, 651 So.2d 641 (Ala.Cr.App.1993).’
“Taylor v. State, 666 So.2d 36, 50-51 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995).”
Snyder v. State, 893 So.2d at 555-556 (holding that the trial judge did not denigrate the jury’s responsibility by repeatedly instructing the jury that its sentencing verdict was a recommendation).
“It is constitutionally impermissible to rest a death sentence on a determination by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the accused’s death rests elsewhere. Caldwell [v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) ]. However, comments that accurately explain the respective functions of the judge and *1185 jury are permissible under Caldwell as long as the significance of the jury’s recommendation is adequately stressed. Harich v. Wainwright, 813 F.2d 1082, 1101 (11th Cir.1987); Martin v. State, 548 So.2d 488 (Ala.Crim.App.1988), aff'd, 548 So.2d 496 (Ala.1989). In the instant case, neither the prosecutor nor the trial court misrepresented the effect of the jury’s sentencing recommendation. Their remarks clearly defined the jury’s role, were not misleading or confusing, and were correct statements of the law.”
Smith v. State, [Ms. CR-97-1258, December 22, 2000] - So.3d -, - (Ala.Crim.App.2000), reversed in part on other grounds, Ex parte Smith, [Ms. 1010267, March 14, 2003] - So.3d - (Ala.2003).
Here, the trial court appropriately instructed the jury as to its responsibility in sentencing Johnson, by stating:
“While it’s your duty to follow the instructions which the Court has given you, no statement, question, ruling, remark or other expression that has been made by the Court at anytime during the course of this trial either during the guilt phase or during the sentencing hearing is intended to indicate any opinion of what the facts are or what the punishment should be. It’s your responsibility to determine the facts and recommend the punishment.”
(R. 1244.) The trial court further instructed the jury:
“The fact that the determination of whether ten or more of you can agree to recommend a sentence of death or seven or more of you can agree to recommend a sentence of life imprisonment without parole can be reached by single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. You should hear and consider the views of your fellow jurors. Before you vote, you should carefully weigh, sift and consider the evidence in all of it realizing that a human life is at stake and you should bring to bear your best judgment on the sole issue which is before you. That issue is whether the defendant should be sentenced to life imprisonment without parole or death.”
(R. 1247.)
Thus, because the jury was properly apprised of its role in sentencing Johnson and the comments by the prosecutor and the trial court did not improperly diminish its role as to sentencing, there is no error, plain or otherwise, on this ground.
C.
Johnson alleges that the trial court permitted the jury to consider non-statutory aggravating circumstances, in violation of her Eighth Amendment rights and the decision in Ex parte Stewart, 659 So.2d 122 (Ala.1993). She cites to an excerpt from the following instruction by the trial judge during the penalty phase of the trial:
“The list of aggravating circumstances provided by law, there are two circumstances which you may consider in this case if you’re convinced beyond a reasonable doubt based on the evidence that such circumstances exist. The fact that I instruct you on such aggravating circumstances or define them for you, does not mean that the circumstances or any other aggravating circumstance have been proven beyond a reasonable doubt in this case. Whether any aggravating circumstance which I instruct you on or define for you have been proven beyond a reasonable doubt based upon the evidence in this matter is for you, the jury alone, to determine.
“The aggravating circumstances which you may consider in this case if you find from the evidence that they may — that they may have been proven beyond a *1186 reasonable doubt are as follows; Number one, that the capital offense was committed for pecuniary gain and number two, that the capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.”
(R. 1236-37.)
Specifically, Johnson alleges that by using the phrase, “or any other circumstance,” the trial court implied to the jury that it could consider aggravating circumstances other than those that were put before them for their consideration.
However, viewed in its entirety, this charge properly instructs the jury members that it is their duty to determine whether the applicable aggravating circumstances have been proven beyond a reasonable doubt. The jury was also clearly charged that “[t]he aggravating circumstances which you may consider in this case if you find from the evidence that they ... may have been proven beyond a reasonable doubt are as follows: .... ” (R. 1237.) This sole comment would not have lead to any confusion by the jury as was the ease in Ex parte Stewart, 659 So.2d at 125-26, where the Alabama Supreme Court pointed out numerous comments by the trial court referencing other aggravating circumstances for the jury’s consideration. Cf. George v. State, 717 So.2d 849, 855-56 (Ala.Crim.App.1997), affirmed, Ex parte George, 717 So.2d 858 (Ala.1998), cert. denied, George v. Alabama, 525 U.S. 1024, 119 S.Ct. 556, 142 L.Ed.2d 462 (1998) (holding that by itself the instruction did not pose any potential confusion to the jury as was the case in Ex parte Stewart).
Here, the phrase by the trial court alone would not have lead to an implication that could have caused confusion by the jury such as would result in plain error. Moreover, the instruction was not directly erroneous. See Knight v. State, 907 So.2d 470, 487-88 (Ala.Crim.App.2004) (finding that the trial court’s instruction to jury that it could consider a particular aggravating circumstance that should not have been applied to the case was plain error). Therefore, Johnson’s substantial rights were not adversely affected by this charge.
IX.
Johnson argues that the trial court erred by allowing certain victim impact evidence, as well as certain conditions at trial that were designed to engender sympathy for the victim, which served to inflame the jury against her. In making this argument, she refers to certain examples, including an emotional outburst by the victim’s mother and her testimony that the last time that she had seen her son he was in a casket. These instances have previously been addressed in this opinion and decided adversely to Johnson. See Issue V.(B).
A.
Johnson alleges that the trial court improperly expressed his sympathy for the victim’s mother and thereby vitiated his impartiality and invited the jury to make its decision based on emotions rather than the evidence. Johnson failed to object to this comment by the trial judge; therefore the plain error standard of review must be applied. Rule 45A, Ala.R.App.P.
During the voir dire examination, the following transpired:
“THE COURT: .... Are any of you related to — now, let’s see, who’s going to be with — the family?
“[PROSECUTOR]: Mrs. Betty McCullar, the victim’s mother.
“THE COURT: Okay. This is Mrs. Betty McCullar. I’m sorry Mrs. McCul-lar.
*1187 “Are any of you related by blood or by marriage to Mrs. Betty McCullar who is the mother of the deceased?”
(R. 66.)
It is unclear from this passage whether the trial court was apologizing for not seeing the victim’s mother or not recognizing her or not knowing her or, as Johnson alleges, for her grief. However, there is no indication from this statement by the trial court that he was advocating or allowing the jury to make its determination based on emotion. Even if the trial court had been apologizing to the victim’s mother for her loss, there is no implication of an accusal of Johnson such as would rise to the level of plain error. Nor is there any indication of the sort of bias that would require recusal. “All judges are presumed to be impartial and unbiased. Ex parte Grayson, 665 So.2d 986 (Ala.Crim.App.1995).” Johnson v. State, [Ms. CR-05-1805, Sept. 28, 2007] - So.3d -, - (Ala.Crim.App.2007).
B.
Johnson argues that improper victim impact testimony was allowed during the guilt phase through the testimony of a friend of the victim and through an argument made by the prosecutor during his closing argument.
As to the testimony from the victim’s friend, Johnson argues as being overly prejudicial his testimony concerning what he and the victim had done together on the day of the murder, how the victim had spent his settlement money on a church donation and gift for his niece, and how he was able to recognize the victim’s voice during their last telephone conversation just prior to the offense and the funeral.
However, all of this testimony was relevant. McCullar’s friend’s testimony concerning the events prior to his death narrowed down the time of death, as did his testimony concerning the last time that he spoke to the victim. See Hodges v. State, [Ms. CR-04-1226, March 23, 2007] - So.3d -, - (Ala.Crim.App.2007) (holding that “[t]he testimony offered by the victim’s sister was not offered as victim-impact evidence, but was offered to show the victim’s activities on the day of the murder and when she was last in contact with the family, and it went toward establishing when the crime was commit ted. The testimony was relevant_”). The testimony concerning the victim’s use of his settlement money showed that he had a solid basis of knowledge concerning the settlement and corroborated evidence that McCullar had received the money.
“ ‘It is well settled that victim-impact statements “are admissible during the guilt phase of a criminal trial only if the statements are relevant to a material issue of the guilt phase. Testimony that has no probative value on any material question of fact or inquiry is inadmissible.” Ex parte Crymes, 630 So.2d 125, 126 (Ala.1993), citing Charles W. Gamble, McElroy’s Alabama Evidence, § 21.01 (4th ed.1991). However, “when, after considering the record as a whole, the reviewing court is convinced that the jury’s verdict was based on the overwhelming evidence of guilt and was not based on any prejudice that might have been engendered by the improper victim-impact testimony, the admission of such testimony is harmless error.” Crymes, 630 So.2d at 126.’
“Jackson v. State, 791 So.2d 979, 1011 (Ala.Crim.App.2000).”
Gissendanner v. State, 949 So.2d 956, 965 (Ala.Crim.App.2006), cert. denied, Gissendanner v. Alabama, 549 U.S. 1222, 127 S.Ct. 1283, 167 L.Ed.2d 103 (2007).
Moreover, any reference to the funeral was slight and not unduly prejudicial. The jury was clearly aware that McCullar had *1188 been given a funeral. Her argument that the testimony by this witness overly emphasized the victim’s character is not substantiated by the record.
Johnson’s argument concerning the prosecutor’s comment during his closing argument at the guilt phase is likewise without merit. Johnson refers to the following arguments made by the prosecutor:
“[PROSECUTOR]: ... I want to show you a pretty picture. I want to show you a pretty picture of a young man that had gone to college that was four hours away from being a pilot. And I want to show you—
“[DEFENSE COUNSEL]: Object to him testifying to evidence that is not in evidence.
“[PROSECUTOR]: I want to show you an ugly picture. I want to show you an ugly picture of what its like to hunt someone down, starting in 1996, she starts going out, she starts going out here trying to find somebody to kill this boy.”
(R. 1197.)
Johnson also points to the prosecutor’s subsequent argument referring to Johnson and Richards going “ ‘head hunting1 ” and that they “got them a head just like she wanted.” (R. 1204-05.)
As to these latter comments by the prosecutor concerning the “head hunting,” this was clearly a proper comment on the evidence. Richards’s sister testified at trial that as Johnson and Richards were standing to leave from Thanksgiving dinner, Johnson stated that “ ‘they were going head hunting.’ ” (R. 733.) She further testified that when she questioned Johnson concerning this remark, Johnson responded that they had a gun in the back of their car. (R. 733.)
“ ““ “During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.” ’ Reeves v. State, 807 So.2d 18, 45 (Ala.Crim.App.2000), quoting Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Crim.App.1987) (citation omitted), rev’d on other grounds, 523 So.2d 1118 (Ala.1988).
“ ““ “The test of a prosecutor’s legitimate argument is that whatever is based on facts and evidence is within the scope of proper comment and argument. Kirkland v. State, 340 So.2d 1139 (Ala.Crim.App.), cert. denied, 340 So.2d 1140 (Ala.1976 [1977]). Statements based on facts admissible in evidence are proper. Henley v. State, 361 So.2d 1148 (Ala.Crim.App.), cert. denied, 361 So.2d 1152 (Ala.1978). A prosecutor as well as defense counsel has a right to present his impressions from the evidence. He may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way. Williams v. State, 377 So.2d 634 (Ala.Crim.App.1979); McQueen v. State, 355 So.2d 407 (Ala.Crim.App.1978).” ’
“ ‘ “Ballard v. State, 767 So.2d 1123, 1135 (Ala.Crim.App.1999), writ quashed, 767 So.2d 1142 (Ala.2000), quoting Watson v. State, 398 So.2d 320, 328 (Ala.Crim.App.1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).”
“ ‘Johnson v. State, 823 So.2d 1, 47 (Ala.Crim.App.2001).’ ”
Harris v. State, 2 So.3d 880, 921 (Ala.Crim.App.2007), cert. denied, Harris v. Alabama, 555 U.S. 1155, 129 S.Ct. 1039, 173 L.Ed.2d 472 (2009). Thus, the prose *1189 cutor in the present case could properly comment on the evidence presented and draw inferences therefrom.
The prosecutor’s first quoted argument which raised facts not in evidence concerning McCullar’s intention of becoming a pilot, did not deprive Johnson of her due process rights. Wilson v. State, 874 So.2d 1155, 1163 (Ala.Crim.App.2003) (holding that despite Wilson’s claim that prosecutor’s comments were based on facts not in evidence, he was not deprived of his due process rights because ‘“[a] prosecutor’s statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.’ Roberts v. State, 735 So.2d 1244, 1253 (Ala.Crim.App.1997), aff'd, 735 So.2d 1270 (Ala.1999)”). Moreover, this comment did not deprive Johnson of a fair trial. See McGriff v. State, 908 So.2d 961, 1001 (Ala.Crim.App.2000), reversed on other grounds, Ex parte McGriff, 908 So.2d 1024 (2004) (holding that the prosecutor’s comments in closing argument based on facts not in evidence “were either inadvertent slips of the tongue that did not contribute to the verdict or were legitimate inferences that could be drawn from the evidence. In no instance did any prosecutorial argument so infect the trial with unfairness that McGriff was denied a fair and impartial trial. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)”).
“ ‘ “The prosecutor’s statements are not evidence. Henry v. State, 468 So.2d 896, 899 (Ala.Cr.App.1984), cert. denied, 468 So.2d 902 (Ala.1985). Further, prosecutors are to be allowed a wide latitude in their exhortations to the jury. Varner v. State, 418 So.2d 961 (Ala.Cr.App.1982). ‘Statements of counsel in argument must be viewed as in the heat of debate and must be valued at their true worth rather than as factors in the formation of the verdict.’ Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App.1984).”
“ ‘Armstrong v. State, 516 So.2d 806, 809 (Ala.Cr.App.1986).’ ”
Jackson v. State, 791 So.2d 979, 1030 (Ala.Crim.App.2000), cert. denied, Ex parte Jackson, 791 So.2d 1043 (Ala.2000), cert. denied, Jackson v. Alabama, 532 U.S. 934, 121 S.Ct. 1387, 149 L.Ed.2d 311 (2001).
Here, Johnson was not prejudiced by victim impact evidence during the guilt phase of her trial.
C.
Johnson argues that victim impact evidence inflamed the jury against her at the penalty phase as well. She refers to the victim’s mother becoming upset and crying in front of the jury. Although this argument has already been decided adversely to Johnson in this opinion, see Issue V.B., she also notes that McCullar’s mother was allowed to sit in the court room throughout the trial and thereby inflame the jury.
There is no error due to a trial court allowing a victim’s family representative to be present in the courtroom during the trial.
“Alabama law creates a right for a relative of a capital-murder victim to sit at the State’s table even though that relative would be a -witness for the State. See §§ 15-14-56(a) (‘Whenever a victim is unable to attend such trial ... by reason of death ... the victim’s family may select a representative who shall be entitled to exercise any right granted to the victim, pursuant to the provisions of [The Alabama Crime Victims’ Court Attendance Act].’); 15-14-53 (‘The victim of a criminal offense shall be entitled to be present in any court exercising any *1190 jurisdiction over such offense and therein to be seated at the counsel table of [the] prosecutor15-14-55 (‘A victim of a criminal offense shall be exempt from the operation of rule of court, regulation, or statute or other law requiring the separation or exclusion of witnesses from court in criminal trials or hearings.’); 15-14-51(b) (‘[T]he Legislature hereby finds and determines that it is essential to the fair and impartial administration of justice that a victim of a criminal offense not be excluded from any ... trial ... merely because the victim has been ... subpoenaed to testify at ... trial.’). See also Rule 615, Ala. R. Evid., which states:
“ ‘At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order of its own motion. This rule does not authorize exclusion of ... a victim of a criminal offense or the representative of a victim who is unable to attend.... ’
“See, e.g., Whitehead v. State, 777 So.2d 781, 803 (Ala.Crim.App.1999) (rejecting the argument that ‘the presence of [the victim’s] family members “gave them a special role in the proceedings and graced them with the state’s imprimatur” and, therefore, ... prevented the jury from “critically examin[ing] the weight of their testimony” ’) (footnote omitted), p. 56, aff'd, 777 So.2d 854 (Ala.2000); Burgess v. State, 827 So.2d 134 (Ala.Crim.App.1998) (the capital-murder victim’s husband was properly exempted from ‘the rule’ and allowed to sit at counsel table), aff'd, 827 So.2d 193 (Ala.2000); Johnson v. State, 648 So.2d 629, 634 (Ala.Crim.App.1994) (‘the deceased’s granddaughter was properly allowed to remain at counsel table, although she was also a witness, because she was representing the family and the victim’).”
McGowan v. State, 990 So.2d 931, 969-70 (Ala.Crim.App.2003), cert. denied, McGowan v. Alabama, 555 U.S. 861, 129 S.Ct. 136, 172 L.Ed.2d 104 (2008). Johnson is entitled to no relief on this claim.
D.
Johnson contends that the prosecutor improperly portrayed the victim’s family as clients of the State. Johnson did not raise this ground below and therefore the plain error rule applies. Rule 45A, Ala. R.App.P.
This Court has held that a prosecutor’s comments that he or she represented or spoke for the victim’s family is not erroneous. “We have held that it is not reversible error for a prosecutor to suggest that he is speaking on behalf of the victim’s family. See Slaton v. State, 680 So.2d 879, 906-07 (Ala.Cr.App.1995), aff'd, 680 So.2d 909 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).” Burgess v. State, 723 So.2d at 754. Thus, Johnson is entitled to no relief on this claim.
E.
Johnson argues that the trial court erred by failing to grant a mistrial when the victim’s mother testified, without personal knowledge, that Johnson had killed her son.
The record reveals that the following transpired at trial during the prosecutor’s examination of McCullar’s mother:
“Q: Okay. Do you recognize what that is?
“A: This is her wedding album that she kept after they got married.
“Q: Were you personally aware of her keeping that, that wedding album?
*1191 “A: No, I didn’t really realize that, she kept it until after they killed Randy and she had put all of this—
“[DEFENSE COUNSEL]: Objection, as to—
“THE COURT: Sustained. Ms. McCullar, please answer the questions as they put them to you, don’t volunteer anything,
“THE WITNESS: Okay.”
(R. 313-14.)
Because the trial court sustained the defense counsel’s objection, there is no adverse ruling on this matter. Furthermore, Johnson did not request a mistrial on this ground. Thus, we review this issue for plain error. Rule 45A, Ala.R.App.P.
“ ‘A mistrial is a drastic remedy to be used sparingly and only to prevent manifest injustice, and the decision whether to grant it rests within the sound discretion of the trial court.’ Talley v. State, 687 So.2d 1261, 1275 (Ala.Cr.App.1996), citing Inmin v. State, 654 So.2d 86 (Ala.Cr.App.1994).” Ballard v. State, 767 So.2d 1123, 1138 (Ala.Crim.App.1999), cert. quashed, Ex parte Ballard, 767 So.2d 1142 (Ala.2000) (holding that a mistrial was not warranted where trial court immediately sustained Ballard’s objection to comment by the witness concerning privileged communications). See Register v. State, 640 So.2d 3, 10-11 (Ala.Crim.App.1993) (holding that a witness’s volunteered statement that Register had begged her to have sex with him and another woman did not require a mistrial where the trial court took immediate curative action). See also McArthur v. State, 591 So.2d 135, 137-38 (Ala.Crim.App.1991), cert. denied, Ex parte McArthur, 601 So.2d 218 (Ala.1992) (holding that “[t]he witness’s nonresponsive comment indicating that the appellant had been charged with child abuse was not so prejudicial in the appellant’s trial for the rape and kidnapping of his wife that the trial court’s denial of the request for a mistrial constitutes a ‘clear showing of abuse of discretion.’ Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala.1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). See also Robinson v. State, 560 So.2d 1130, 1135 (Ala.Cr.App.1989)”).
Here, the statement by the witness was nonresponsive and inadvertent. Moreover, the trial court sustained the objection to this comment and instructed the witness to only answer the question. This remark did not warrant a mistrial, did not rise to the level of plain error, and did not adversely affect Johnson’s substantial rights.
X.
Johnson argues that the trial court’s sentencing order contains several errors: that the trial court based her sentence on the uncorroborated testimony of Richards; that the trial court failed to consider and find several mitigating circumstances; that the trial court improperly took into account a supplement to Johnson’s presen-tence report; and that the trial court improperly considered a recommendation for death from the parole officer.
A.
Johnson contends that the trial court’s order indicates that he based her sentence on the uncorroborated testimony of Richards, her accomplice. Specifically, she contends that the trial court’s findings of fact reflect Richards’s testimony alone.
Pursuant to § 13A-5-47(d), Ala.Code 1975, the trial court is required to “enter written findings of facts summarizing the crime and the defendant’s participation in it.” There is no requirement as to the number of witnesses’ testimonies that must be included or relied upon. A review of the evidence presented at trial reveals *1192 that the trial court’s findings accurately reflect the best authenticated rendition of the facts. Moreover, as discussed infra, in Issue XXI of this opinion, Richards’s testimony was properly corroborated.
Here, there was no error in the trial court’s findings of fact. See Kuenzel v. State, 577 So.2d 474, 519 (Ala.Crim.App.1990), affirmed, Ex parte Kuenzel, 577 So.2d 531 (Ala.1991), cert. denied, Kuenzel v. Alabama, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991) (judge’s findings of fact were “accurate and ... fairly supported by the evidence” in light of the entire trial proceedings despite Kuenzel’s argument that they were based on the uncorroborated testimony of an accomplice).
B.
Johnson alleges that the trial court failed to find and consider certain mitigating circumstances; specifically, that Richards received a lesser sentence, that Johnson was remorseful, that Johnson is a Christian, and that Johnson was a loving family member and friend.
The trial court’s sentencing order reflects that the judge found the existence of the statutory mitigating circumstance that Johnson had no significant history of prior criminal history. § 13A-5-51(l), Ala.Code 1975. As to nonstatutory mitigating circumstances, the trial court found and considered that Johnson “was a good mother to her children,” “was a good citizen growing up,” and “ha[d] been a good prisoner while at the Walker County Jail.” (C. 187.) The trial court then weighed the aggravating and mitigating circumstances, and stated:
“After considering all matters that were presented to this Court, the testimony heard at the trial, and the sentencing hearing before this Court, both in mitigation and aggravation, taking into consideration all other matters that were proffered before this Court, as hereinabove stated in this Order, and disregarding pleas or references to the Court to consider the sentence on the basis of passion or prejudice, the Court does now find, and is convinced beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating circumstances and is sufficient to uphold the jury’s recommendation that the punishment should be death.”
(C. 186-87.)
Johnson did not raise the trial court’s failure to consider and find these specific nonstatutory mitigating circumstances to the trial court and therefore this matter is due to be analyzed pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
In Ex parte Lewis, 24 So.3d 540 (Ala.2009), the Alabama Supreme Court quoted Clark v. State, 896 So.2d 584 (Ala.Crim.App.2000), concerning a trial court’s duty in considering whether proffered evidence constitutes a mitigating circumstance, stating:
“ ‘The sentencing order shows that the trial court considered all of the mitigating evidence offered by Clark. The trial court did not limit or restrict Clark in any way as to the evidence he presented or the arguments he made regarding mitigating circumstances. In its sentencing order, the trial court addressed each statutory mitigating circumstance listed in § 13A-5-51, Ala.Code 1975, and it determined that none of those circumstances existed under the evidence presented. Although the tnal couH did not list and make findings as to the existence or nonexistence of each nonstatutory mitigating circumstance offered by Clark, as noted above, such a listing is not required, and the trial court’s not making such findings indicates *1193 only that the trial court found the offered evidence not to be mitigating, not that the trial court did not consider this evidence. Clearly, the trial court considered Clark’s proffered evidence of mitigation but concluded that the evidence did not rise to the level of a mitigating circumstance. The trial court’s findings in this regard are supported by the record.
“ ‘Because it is clear from a review of the entire record that the trial court understood its duty to consider all the mitigating evidence presented by Clark, that the trial court did in fact consider all such evidence, and that the trial court’s findings are supported by the evidence, we find no error, plain or otherwise, in the trial court’s findings regarding the statutory and nonstatutory mitigating circumstances.’
“896 So.2d at 652-53 (emphasis added).” 24 So.3d at 545.
Here, it is clear that the trial court considered all of the evidence offered and made proper findings as to what evidence constituted nonstatutory mitigating circumstances. ‘“[T]he trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating.’ Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998).” Brown v. State, 11 So.3d 866, 932 (Ala.Crim.App.2007), affirmed, Ex parte Brown, 11 So.3d 933 (Ala.2008), cert. denied, Brown v. Alabama, 557 U.S. 938, 129 S.Ct. 2864, 174 L.Ed.2d 582 (2009). “We have often stated that ‘ “[a]l-though the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer.” ’ Boyd v. State, 715 So.2d 825, 840 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.1998), quoting Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998).” Hodges v. State, 856 So.2d 875, 932 (Ala.Crim.App.2001), affirmed, Ex parte Hodges, 856 So.2d 936 (Ala.2003), cert. denied, Hodges v. Alabama, 540 U.S. 986, 124 S.Ct. 465, 157 L.Ed.2d 379 (2003) (finding that “a trial court is not bound to find as a mitigating circumstance that a codefendant received a lesser sentence than death. See Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), aff'd, 820 So.2d 883 (Ala.2001)”).
We find no error, plain or otherwise, in the trial court’s failure to find these non-statutory mitigating circumstances.
C.
Johnson contends that the trial court erred in taking into account a supplement to Johnson’s presentence report that was submitted at the request of the district attorney’s office. This argument seems to assert as error the fact that the district attorney’s office requested the supplement and the fact that the information it contains is based on hearsay statements. Because this argument is being raised for the first time on appeal, it must be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
Section 13A-5^47(b), Ala.Code 1975, requires the trial court to order a presen-tence investigation report and states as follows:
“(b) Before making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report. The report shall contain the information prescribed by law or court rule for felony cases generally and *1194 any additional information specified by the trial court. No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute. The report and any evidence submitted in connection with it shall be made part of the record in the case.”
See McNair v. State, 653 So.2d 343, 346-47 (Ala.Crim.App.1993), affirmed, Ex parte McNair, 653 So.2d 353 (Ala.1994), cert. denied, McNair v. Alabama, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995) (granting the Attorney General’s request that the record on appeal be supplemented with the presentence report).
Thus, pursuant to this rule, both the district attorney’s office and Johnson had the right to respond to the original report and present evidence concerning any disputed part of the report. The supplement was therefore proper and Johnson could have disputed any part of the report or supplement and presented other evidence to support any dispute.
Moreover, there is no error in supplementing a presentence investigative report. See Guthrie v. State, 689 So.2d 935, 947 (Ala.Crim.App.1996) (wherein this court remanded the case for the report to be supplemented due to the perfunctory nature of the report).
Section 13A-5-47(d), Ala.Code 1975, requires a trial court to consider the presentence report, along with the evidence presented during the guilt and penalty phases of the trial in determining whether aggravating and mitigating circumstances exist and how much weight they should be accorded. The report should contain such information as statements or reports concerning a defendant’s family, educational and social backgrounds; psychological and pertinent medical history; reputation in the community; work history; and any other information that might aid a trial court in determining aggravating and mitigating circumstances and their weights. Hearsay evidence is properly included in a presentence report.
‘“Section 13A-5-45(d) addresses the evidence to be used at the sentencing hearing:
“ ‘ “Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is afforded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in -violation of the Constitution of the United States or the State of Alabama.”
“ ‘The appellant’s argument that the trial court improperly considered the presentence report is without merit. The sentencing order shows that the trial court independently considered and weighed the evidence concerning the aggravating circumstances and the mitigating circumstances; the order does not indicate that the trial court considered any improper evidence in reaching its decision.... In addition, the appellant’s argument that the report contained improper hearsay evidence is also without merit. The “report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under § 13A-5-47, Code of Alabama, being specifically called for consideration by the trial court.” Thompson v. State, 503 So.2d 871, 880 (Ala.Cr.App.1986), aff'd, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 *1195 L.Ed.2d 155 (1987). Finally, we presume that the trial court disregarded any improper evidence in sentencing the appellant. Sockwell, supra; Lightbourne [v. Dugger, 829 F.2d 1012 (C.A.11 1987) ], supra, Whisenhant [v. State, 555 So.2d 219 (Ala.Cr.App.1988) ], supra.’
“Hyde v. State, 778 So.2d 199 (Ala.Cr.App.1998) (Footnote omitted). See also Stewart v. State, 730 So.2d 1203, 1221-22 (Ala.Cr.App.1996), aff'd, 730 So.2d 1246 (Ala.1999).”
McWhorter v. State, 781 So.2d 257, 326-27 (Ala.Crim.App.1999).
Johnson’s substantial rights were not adversely affected by the presentence report or the supplement to this report.
D.
Johnson argues that the trial court improperly considered a recommendation of death from the parole officer. She contends that because the parole officer wrote in his report that he recommended the death penalty, and because the trial court stated that it had considered “all matters” that were presented to the court, the trial court must have considered his opinion. (C. 187.)
However, the trial court also stated that he had “disregard[ed] pleas or references to the Court to consider the sentence on the basis of passion or prejudice.” (C. 187.) The open-ended language by the trial court did not indicate that he improperly considered the parole officer’s recommendation. Moreover, it is not uncommon for the report of the probation officer to include his recommendation as to sentencing. See Harris v. State, 947 So.2d 1079, 1129-30 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005) (noting that “[t]he only mitigating evidence presented to the trial judge during the penalty phase was the testimony and presentence report of Probation Officer Edward G. Fawbush, who recommended Harris be sentenced to life imprisonment without parole.”).
In Lee v. State, 898 So.2d 790 (Ala.Crim.App.2001), Lee argued that the presen-tence investigative report improperly included the opinion of the parole officer about his mental state at the time of the offenses, as well as his recommendation that Lee receive “the maximum possible sentence.” 898 So.2d at 860. This Court held that there was no plain error on this ground, because a review of the sentencing orders revealed no indication that the trial court had relied on this opinion. Therefore, this Court held that any error in the inclusion of this recommendation by the parole officer was at most harmless, stating:
“ ‘The defendant contends that the trial judge should not have considered the presentence investigation report because it contains the parole officer’s recommendation of punishment.
“‘... Nowhere in the record does there appear any objection to this or any other portion of the presentence report. However, this court has neither found nor been cited to any authority for the parole officer’s recommendation. Although we do not approve or condone such a recommendation, we find that even if such recommendation constitutes error, we would find that error harmless in this case. Rule 45, A.R.A.P. “[T]he mere presence of information in the pre-sentence report which should not be considered for the purpose of enhancing punishment is not, per se, prejudicial.” Johnson v. State, 521 So.2d 1006, 1013 (Ala.Cr.App.1986), affirmed, 521 So.2d 1018 (Ala.), cert. denied, 488 U.S. 876, 109 S.Ct. 193, 102 L.Ed.2d 162 (1988).’ ”
*1196 898 So.2d at 860, quoting Kuenzel v. State, 577 So.2d 474, 527 (Ala.Crim.App.1990).
Here, there is no indication that the trial court considered this recommendation in sentencing Johnson. Thus, there is no error, plain or otherwise, on this ground.
XI.
Johnson argues that the trial court erred in allowing the submission of the pecuniary gain aggravating circumstance to the jury, because the trial court, during the second phase of the sentencing hearing, found that the State had not proven the existence of this aggravating circumstance beyond a reasonable doubt.
Johnson cites Williams v. State, 556 So.2d 744 (Ala.1987) in support of her argument. In Williams, the trial court instructed the jury at the penalty phase that they could consider as an aggravating circumstance that Williams was under sentence of imprisonment at the time that he committed the offense. However, it was later established during the sentencing hearing that Williams was not on parole or probation at the time that he committed the offense. The Alabama Supreme Court held that this impropriety required that the sentence of death be set aside, despite the fact that the trial court did not consider that factor as an aggravating circumstance.
This case is distinguishable from Williams. In Stephens v. State, 982 So.2d 1110 (Ala.Crim.App.2005), this court stated:
“ ‘Our supreme court held, in Ex parte Williams, 556 So.2d 744 (Ala.1987), that the trial court, upon its finding that an aggravating circumstance on which the jury was instructed was invalid, cannot cure such error by disregarding that circumstance and finding, upon reweighing, that the remaining aggravating circumstances outweigh the mitigating evidence. In Williams, the jury had been improperly instructed that it could consider the fact that the capital offense was committed by a person under sentence of imprisonment, § 18A-5-49(l); however, it was subsequently established that the appellant was not on probation or parole at the time the crime was committed. In holding that the sentence of death could not be affirmed, our supreme court reasoned as follows:
“ ‘ “The Court of Criminal Appeals reasoned that, because the trial court, as the ultimate sentencing authority, did not consider illegal evidence (‘the incorrect aggravating circumstance’) in the sentencing hearing, the trial court’s error in permitting the jury to consider such evidence in arriving at its recommendation of the death sentence was harmless. The basic flaw in this rationale is that it totally discounts the significance of the jury’s role in the sentencing process.
“ ‘ “The legislatively mandated role of the jury in returning an advisory verdict, based upon its consideration of aggravating and mitigating circumstances, can not be abrogated by the trial court’s errorless exercise of its equally mandated role as the ultimate sentencing authority. Each part of the sentencing process is equally mandated by the statute (§§ 13A-5-46, -47(e)); and the errorless application by the court of its part does not cure the erroneous application by the jury of its part. For a case consistent with our holding, see Johnson v. State, 502 So.2d 877 (Ala.Cr.App.1987). To hold otherwise is to hold that the sentencing role of the jury, as required by statute, counts for nothing so long as the court’s exercise of its role is without error.
*1197 “‘“We emphasize that our holding that the Court of Criminal Appeals erred in its application of the harmless error rule is based upon independent state law grounds and upon statutory construction. We reverse as to the judgment of sentence and remand to the Court of Criminal Appeals with instructions to remand this cause for a new sentencing hearing before a jury and before the court as required by law.”
“ ‘Id. at 745 (emphasis in original).
“ ‘In consideration of this rationale, we presume that this court, in reviewing the propriety of a death sentence after a jury recommendation based, in part, on an invalid aggravating circumstance, cannot resort to the first analysis recognized by the Maynard Court: a reweighing, by the appellate court, of the valid aggravating and the mitigating circumstances.’ ”
982 So.2d at 1141-42
Here, this Court need not reweigh the aggravating circumstances and mitigating circumstances due to jury consideration of an invalid aggravating circumstance, as was held erroneous in Williams. In this case, the aggravating circumstance, although considered and rejected by the trial court, was not invalid. In fact, there was evidence to support a finding of the existence of this aggravating circumstance. Richards testified about the judgment received by McCullar, and Johnson’s knowledge of, and interest in, the settlement money. Richards testified that Johnson had stated that “when Randy [McCullar] was dead that Chad [their son] would come into the money or she would, being married to him.”[10] (R. 502-03.) McCullar’s attorney who represented him in the settlement case testified that McCullar wanted to know if he could get the money to his son without giving Johnson access to it. (R. 851-52.) The witness testified that McCullar stated that he did not know what would happen if Johnson found out about the money. (R. 853.) Although there was testimony concerning other reasons that Johnson stated that she wanted McCullar dead, there was evidence that this was one of her motives.
There is no requirement that the trial court and jury agree on the aggravating and mitigating circumstances, and such a finding is not mandated by statute. Although aggravating circumstances must be proven beyond a reasonable doubt, and the trial court should so instruct the jury, they need not agree on determining whether the standard was met. Cf. Ex parte Martin, 931 So.2d 759, (Ala.2004) (there was no error in trial court’s additional consideration of the aggravating circumstance that the murder was especially heinous, atrocious, and cruel when it overrode the jury’s recommendation based on the finding of another aggravating circumstance).
Moreover, there is no indication in the record that the jurors found the existence of this aggravating circumstance and there is no requirement that they state which aggravating circumstance or circumstances they find to exist; only that they find the existence of at least one to sentence a capital defendant to death. § 13A-5-46(e), Ala.Code 1975.
Here, there was no error, plain or otherwise, in the trial court allowing the jury to determine whether the aggravating circumstance of murder for pecuniary gain had been proved to exist beyond a reasonable doubt, where the State had presented evidence to prove its existence.
*1198 XII.
Johnson contends that records from the Winston County grand jury hearing were improperly admitted into evidence because the State failed to lay a proper foundation for their admission.
A Deputy District Attorney testified that he had spoken with McCullar concerning the bigamy charges prior to the case having been initiated. (R. 428.) Based on his determination that a legal and factual basis existed to prosecute Johnson for the offense, he approved a warrant charging her with bigamy. (R. 481-32.) Thereafter, in questioning the witness concerning the case being placed on the Grand Jury docket, the following transpired:
“Q: That Grand Jury book doesn’t really go into the facts of the case, does it?
“A: No, sir. Our Grand Jury book the only thing it really shows is the case number, the person that’s charged, what they are charged with and whether the person was indicted or not.
“Q: Okay. All right. Let me show you what I’ve marked as State’s Exhibit 14. Do you recognize that document?
“A: Yes, sir, I do.
“Q: Okay. And what is that document?
“A: Okay, These are copies of records that we keep in the District Attorney’s Office in Winston County showing the cases that are docketed for a particular term of the Grand Jury. This particular exhibit has records from the April, 1997 term of the Grand Jury and the June, 1997 term of the Grand Jury. It also has part of a witness list for the April, 1997 term of the Grand Jury.
“Q: And you said these documents are maintained by the DA’s Office?
“A: Yes, sir.
“Q: Are they maintained as a normal and usual part of the operations of the District Attorney’s Office?
“A: Yes, sir.
“Q: And are you familiar with these operations?
“A: Yes, sir.
“Q: And are these records that we see here are they made at or around the time that the transactions indicated on the face of the records?
“A: The document itself is created pri- or to the Grand Jury actually meeting. There are some markings on here and those markings are made contemporaneous with the or at the same time as the events take place.
“Q: Okay. And you said that was for the April 1997 Grand Jury?
“A: April and June, 1997.
“Q: All right. When was the defendant’s bigamy ease brought before the Grand Jury?
“A: It was first presented during the April term, the Grand Jury of April, 1997 term.
“Q: Okay, And were there any witnesses called?
“A: Yes, sir. During that session of the Grand Jury, Randy McCullar was called to testify before that Grand Jury and there may have been other witnesses, but on this particular record because of the nature of the Grand Jury those other witnesses have been redacted or removed from this particular document.
“Q: And this is Exhibit 14 you’re saying — you’re showing where the name of Randy McCullar is on the witness list, but the original would have had other witnesses here but because it’s a secret proceeding that’s been whited out?
“A: Yes, sir. In doing that, creating this particular paper here, taking the other names off, I recall there was another name under Randy McCullar’s that was — that has been locked out.
*1199 “Q: Isn’t there a star by Randy McCul-lar’s name?
“A: Yes, sir.
“Q: Does that have any significance?
“A: Yes, sir, the person in our office at that time whose responsibility it was to keep up with-witnesses as they arrived and as they testified, what she would do is when a witness that was to testify before the Grand Jury arrived—
“[DEFENSE COUNSEL]: Objection, Your Honor, hearsay.
“THE COURT: Overruled.
“A: When they would arrive, she would take a — she would put a star next to their name so that she would know that that person was present. And that way as we were presenting cases, once we got through with a witness testifying then we could come out and she would let us know who was there and available to testify.
“Q: Was that the customary and normal practice at that time?
“A: Yes, sir. I mean, that’s—
“Q: And you’d witness this and that’s the way it was done?
“A: Yeah. That’s the way we always do it. Now whether — we have somebody different now, they may not use a star, they may use some other, a check mark or—
“Q: But there’s some mark by the name?
“A: That’s the procedure. They -will make some notation to show the person is there and then they will make some other notation to show whether the person actually testified or not.
“Q: Is there any notation on this that Randy McCullar actually testified before the April term of the 1997 Grand Jury? “A: Yes, sir. His name has been marked through, crossed out, lined out, indicating that he’s been marked off, that he has already testified.
“Q: That was the normal customary matter of indicating that somebody had testified used in April, 1997?
“A: Yes, sir.
“Q: Based on your firsthand knowledge?
“A: Right.
“Q: Do you have any — you said this is a somewhat unusual case for you, is that true?
“A: Well, it was unusual in that it was a bigamy case of which was the first one that I had ever been involved in and I was told it was the first one that the DA’s Office had ever prosecuted.
“Q: Do you remember from firsthand knowledge whether Randy Me — I’m sorry. Randy McCullar personally appeared before that Grand Jury and testified?
“A: Yes, sir, I recall him testifying.
“Q: Were you there?
“A: Yes, sir.
“Q: Okay. Well, in what capacity were you there?
“A: In the job I’m in now in the DA’s Office.
“Q: You were presenting that case to the Grand Jury?
“A: I can’t remember who — I was in there, I believe, that Mr. Tidwell, the DA was also present in the Grand Jury room during his testimony and specifically which one asking the questions, I don’t recall.
“Q: But you were present?
“A: Yes, sir.
“Q: And you recall him—
“A: Yes, sir, I remember him testifying.
“Q: A juror before the Grand Jury are they just like a juror here where they’re *1200 placed under oath and sworn to tell the truth?
“A: Do you mean a witness?
“Q: I’m sorry. Yes, a witness.
“A: Yes, sir. As each witness is brought into the Grand Jury room they are put under oath and they swear or affirm to tell the truth.
“Q: And you said this testimony took place in the April of 1997. Was there a determination made by the Grand Jury on this particular case at that time?
“A: No, sir. The case in April was continued and the first page of this exhibit 14 on Case Number 72, that Randy McCullar testified in, the case involving Shonda Nicole McIntyre, the Grand Jury continued that case.
“Q: Okay. Is that uncommon?
“A: For a case to be continued?
“Q: Right.
“A: No, sir.
“Q: Okay. And it’s continued to when in this case?
“A: Normally it’s continued till the next session of the Grand Jury and that’s what was done in this case.
“Q: Okay. Is that the same Grand Jury or a different Grand Jury?
“A: In this particular case it was the same Grand Jury in that it was the same eighteen members of the Grand Jury reconvened in June, the same ones that were there in April.
“Q: And that heard testimony in April. “A: Right.
“Q: And was there a determination made in June of 1997?
“A: Yes, sir.
“Q: And what was that?
“A: In June of '97 the Grand Jury indicted Shonda Nicole McIntyre on a charge of bigamy.
“Q: Okay.
“[PROSECUTOR]: I go ahead and move Exhibit Number 14 into evidence, that’s the Grand Jury—
“THE COURT: Any objection?
“[DEFENSE COUNSEL]: Judge, we’d object because he was not custodian of the record and the chain of custody was not determined.
“THE COURT: Are these certified copies?
“[PROSECUTOR]: That particular— that’s not, but I think we got it through under the business records. I asked them—
“THE COURT: Where is your cover—
“[PROSECUTOR]: They’re computer. Of the Grand Jury, that’s what they came under.
“THE COURT: Remind me — move to put this in later until we get that cleared up.
“[PROSECUTOR]: Yes, sir.
“THE COURT: And that’s 14? “[PROSECUTOR]: Yes, sir, 14.
“Q: Once a Grand Jury returns an indictment in a case, they call that true billing, don’t they?
“A: Yes, sir. And on the exhibit there are some initials that has TB on there, which stands for true bill, which means an indictment was returned.
“Q: Okay. And you said that happened in this case.”
(R. 442-49.) This exhibit was subsequently admitted into evidence. (R. 1087.)
Johnson argues that because the deputy district attorney had no personal knowledge of the meaning of the notations by the custodian, he was not qualified or competent to testify as to their meaning or present the document. Thus, these documents, she argues, provided improper reinforcement of the witness’s testimony.
*1201 According to Rule 901(a), Ala.R.Evid., the “requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” One of the methods of conforming with the rule is through the testimony of a witness with knowledge “that a matter is what it is claimed to be.” Rule 901(b)(1), Ala. R.Evid. The trial court must find that the evidence is sufficiently identified and authenticated to allow it to go to the jury. As is stated in the Advisory Committee’s Notes to this rule:
“The question of authenticity or proper identification is, in the first instance, for the trial judge as a preliminary matter. See Ala. R. Evid. 104(a). The required foundational showing must consist of evidence ‘sufficient to support a finding that the matter in question is what its proponent claims.’ The evidence of authentication or identification, as under prior Alabama practice, does not have to be conclusive or overwhelming; rather, it must be strong enough for the question to go to the jury. Any weaknesses in the foundational showing, insufficient to call for exclusion, go to the weight that the trier of fact is to give the evidence. See Tidwell v. State, 496 So.2d 109 (Ala.Crim.App.1986). Even if the offering party satisfies the requirement of this rule and the evidence is admitted, the ultimate question of authenticity or identification remains an issue for the jury.”
Here, the witness testified that he was directly involved with these Grand Jury proceedings and knew that MeCullar had been present and testified. Thus, the documents were cumulative to his testimony that MeCullar was a witness in the bigamy case. See, e.g., Gullatt v. State, 409 So.2d 466, 474 (Ala.Crim.App.1981) (holding that the records admissibility as a business record need not be determined because the evidence in the hospital records was cumulative of other evidence that the children were in good health and not underweight when taken to the foster home). See also Featherston v. State, 849 So.2d 217, 221-22 (Ala.2002) (even if documents were erroneously admitted under the business records exception, and even if they strengthened the State’s case, they were cumulative of other properly admitted evidence).
Moreover, the witness testified that these records were kept in the normal business of presenting cases to the Grand Jury. See James v. State, 723 So.2d 776, 779 (Ala.Crim.App.1998) (“The underlying rationale behind this exception is that business records have the ‘earmark of reliability’ or ‘probability of trustworthiness,’ because they reflect the day-to-day operations of the enterprise and are relied upon in the conduct of business. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).”); and Boyd v. State, 808 So.2d 70, 71 (Ala.Crim.App.2001) (parole officer testified that delinquency reports were kept in the ordinary course of business). See also Dowdell v. State, 790 So.2d 359 (Ala.Crim.App.2000) (record that showed the victim’s debit card transactions was admissible although the supervisor who printed the computer-generated record did not testify where assistant who testified had personal knowledge of the victim’s transaction history and knew of documents’ use and maintenance in the normal course of business).
“In addition to authenticating a document by certification, a business record may be authenticated by the following:
“ ‘ “Testimony by any witness, frequently the custodian of the record, that the document now exhibited to him is a record of the business; that he knows the method *1202 (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable, is a sufficient authentication of the record to require its admittance in evidence.”
‘“[C. Gamble,] McElroy’s [Alabama Evidence,] § 254.01(3) [ (3d ed.1977) ].
“ ‘ “The [business records] rule does not require that the person who made the entry be the witness who lays the foundation for the introduction of the record into evidence .... Any witness who knows the method used in the business of making records of the kind in question and knows that it was the regular practice of the business to make such records at the time of the event in question or within a specified reasonable time thereafter is competent to lay the foundation by testifying that the exhibit is such a record.”
“ ‘Ikner v. Miller, 477 So.2d 387, 390 (Ala.1985).
“Parker v. State, 587 So.2d 1072, 1091-92 (Ala.Cr.App.1991), aff'd, 610 So.2d 1181 (Ala.1992) (citations omitted).
“Once a business record has been authenticated, it cannot be admitted into evidence under the business records exception to the hearsay rule until a proper foundation has been laid.
“ ‘ “[A] properly authenticated business record is admissible in evidence when a foundation, as outlined in the Code, is laid by the proponent of the evidence. Section 12-21-43 requires that it be shown (1) that the record or writing was made as a memorandum or record of an act, transaction, occurrence, or event; (2) that the record was made in the regular course of business; and (3) that it was the regular course of business to make such a memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. See also C. Gamble, McElroy’s Alabama Evidence, § 254.01(3) (3d ed.1977).” ’
“McDonald v. State, 586 So.2d 259, 262 (Ala.Cr.App.1991) (quoting Ex parte Frith, 526 So.2d 880 (Ala.1987)).”
Mester v. State, 755 So.2d 66, 72-73 n. 3 (Ala.Crim.App.1999).
In the present case, the deputy district attorney identified and authenticated the documents and testified that these records were regularly made for the proceedings to use by marking them to record the witnesses’ presence and fact of testifying. Thus, they were admissible as business records.
He also testified that marking next to the witness’s name was the system routinely used to indicate that the witness had arrived to testify, and his or her name would be marked off after he or she had testified. Therefore, this exhibit was admissible to show that on this occasion McCullar’s name had been starred and crossed out pursuant to the custom of the district attorney’s office, as testified to by the witness. Rule 406, Ala.R.Evid. (“Evidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.”). Any claim that the witness may not have actually made the marks on the documents would affect the weight rather than the admissibility of this evidence. Arthur v. State, 711 So.2d 1031, *1203 1047 (Ala.Crim.App.1996) (although the shift supervisor may not have been present each time Arthur used the sign in sheet, they were kept in the ordinary course of business, and the question of whether he was present went to the weight rather than admissibility of the evidence). Therefore, there was no error in the admission of these documents.
XIII.
Johnson alleges that the State reversibly erred by failing to provide Johnson with impeachment information about Richards, in violation of the discovery order and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Johnson refers to Richards’s two prior misdemeanor offenses convictions, which we have previously addressed in this opinion, holding that the trial court properly prevented their use as impeachment evidence or as evidence during the penalty phase. See Issue I.
In Ex parte Belisle, 11 So.3d 323 (Ala.2008), Belisle argued that the State reversibly erred when it failed to disclose impeachment evidence concerning its “ ‘star’ ” witness, specifically a proffer pursuant to a plea agreement that became void when she withdrew her plea. The Alabama Supreme Court determined that in determining whether reversal is required under such a claim, three inquiries must be decided and “reversal is required when the State (1) suppresses (2) evidence favorable to a defendant and (3) that evidence is material.” 11 So.3d at 329 (footnote omitted). In Belisle, the Court found that the evidence was suppressed and that, regardless of its inadmissibility, as impeachment evidence, was favorable to Beli-sle. 11 So.3d at 330. However, the Court concluded that the evidence was not material and stated:
“ ‘The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A “reasonable probability” is a probability sufficient to undermine confidence in the outcome.’ United States v. Bagley, 473 U.S. at 682, 105 S.Ct. 3375, 87 L.Ed.2d 481. The same rule applies when the State discloses Brady material in an untimely manner. See Coral v. State, 628 So.2d 954, 979 (Ala.Crim.App.1992) (‘Tardy disclosure of Brady material is generally not reversible error unless the defendant can show that he was denied a fair trial.’ (citing United States v. Gordon, 844 F.2d 1397 (9th Cir.1988); United States v. Shelton, 588 F.2d 1242 (9th Cir.1978); Ex parte Raines, 429 So.2d 1111 (Ala.1982); and McClain v. State, 473 So.2d 612 (Ala.Crim.App.1985))).”
11 So.3d at 330-31 (footnote omitted).
In rejecting Belisle’s argument, which is also raised by Johnson in the present case, that the information would have enabled him to better prepare for trial, the Court stated:
“ ‘Appellant’s argument that the information would have enabled more effective preparation for trial was rejected in United States v. Agurs, supra, 427 U.S. [97,] at 112 n. 20, 96 S.Ct. [2392] at 2401 n. 20 [ (1976) ], on the grounds that an argument could always be made that knowledge of the prosecutor’s case, both incriminating and exculpatory, would help defense counsel in preparation of the case for the defense. Therefore, the proper focus is upon the materiality in the nondisclosure or delayed disclosure of exculpatory information in determining the denial vel non of defendant’s rights of due process and fair trial....’
*1204 “Ex parte Raines, 429 So.2d 1111, 1113-14 (Ala.1982). Thus, Belisle is not entitled to a new trial simply because having the proffer would have enabled him to more effectively prepare for trial.”
11 So.3d at 331-32 (footnote omitted).
The Court concluded that the evidence was not material as Belisle was able through other means to establish that the witness had an incentive to lie, was not credible and to cast suspicion on the State’s handling of the case.
Here, too, the evidence was also not material. Johnson was able to cast doubt on his credibility as a witness as there was evidence that he had previously lied to his sister and the police concerning his involvement in the offense. He also testified concerning a plea agreement with the State, whereby the State would recommend that he not be sentenced to death but rather life without parole. (R. 470-71.) Moreover, he admitted to shooting and killing the victim. There is no indication that if this evidence had been disclosed earlier to Johnson, the result of the trial would have been different.
XIV.
Johnson argues that an investigator with the Walker County Sheriffs Department was improperly allowed to testify as an expert to evidence about which he had no expertise. Specifically, Johnson alleges that the investigator was allowed to give testimony concerning “ ‘bullet evidence’ ” although there was no showing that he had any such expertise. (Johnson’s Brief at 107.) She also argues in a footnote that this investigator was also allowed to testify concerning bone fragments without any showing of expertise.
As to the investigator’s testimony which Johnson cites as constituting expert testimony, the record indicates that the witness was being questioned regarding the evidence that he gathered at the crime scene, specifically the ballistics evidence. The investigator testified that he was told by Richards about the kind of weapon, a Remington bolt action .270, and the kind of bullets that he had purchased at K-Mart, that were used in the offense; he verified that they were consistent. (R. 788-89.) The prosecutor questioned the witness as to the basic difference in shotgun shells and rifle shells, and the witness testified that he saw no evidence of a shotgun having been used.
This was not the type of evidence requiring an expert to give testimony. The investigator testified that he had been around guns most of his life, and had worked in law enforcement for 15 years, having spent 7 of those with the Walker County Sheriffs Department. See Smith v. State, 466 So.2d 1026, 1031 (Ala.Crim.App.1985) (although Smith argued that police officer was not an expert in the field of ballistics, there was no prejudice due to the witness’s testimony concerning a mark on the refrigerator which appeared to be where the bullet had struck which he followed to another hole and attached a string from one point to another). See also Thigpen v. State, 49 Ala.App. 233, 243, 270 So.2d 666, 675 (1972) (although only an expert is allowed to give an opinion as to the direction a bullet traveled prior to entering a body, there was no error where the record disclosed that the police officer “was possessed of knowledge beyond that of the ordinary man in this field” where he had been on the force for 12 years and had examined more than 150 gunshot wounds).
Here, the coroner testified about the stippling from the shot to the victim’s head and extensively about the factors in the wound used to determine whether the wound resulted from a rifle, shotgun or hand gun. (R. 932-33.) He concluded that the wound to the victim was consis *1205 tent with a shot from a rifle. (R. 933.) Moreover, there was other evidence of the rifle, including Richards’s statement concerning the murder weapon, Johnson’s statement that she was present when Richards purchased the rifle shells, and the testimony of another witness who stated that he saw Richards with a rifle. See Long v. State, 668 So.2d 56 (Ala.Crim.App.1995) (testimony was cumulative of other testimony).
As to the bone fragment testimony, the record indicates that the investigator was asked about evidence that was gathered at the crime scene, including fragments that were found next to the victim’s head. At trial, the fragment evidence was presented to him for identification and he testified that two of the fragments were bone and two were metal. (R. 781-83.) The witness was subsequently asked if the bone fragments might correspond with any injuries that he saw on the victim and if they were found on the vehicle or the ground. He responded that they were found on the ground and answered affirmatively as to whether they might correspond to any of the victim’s injuries. Clearly, this was not introduced as expert testimony concerning bone fragments, but rather as to why the evidence was gathered and that it was believed to be evidence germane to this offense.
There was no error due to this testimony by the investigator.
XV.
Johnson alleges that the trial court abused its discretion by refusing to grant her a continuance to hire a mitigation and social background expert, interview witnesses and review newly presented discovery evidence from the State.
“ ‘ “ ‘A motion for a continuance is addressed to the discretion of the court and the court’s ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).’ ”
“ ‘Fortenberry v. State, 545 So.2d 129, 138 (Ala.Crim.App.1988).’
“Ex parte Clark, 728 So.2d 1126, 1134 (Ala.1998) (quoting Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986)). See also Scott v. State, 937 So.2d 1065, 1076 (Ala.Crim.App.2005).
“ ‘ “There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.” Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964).’ Glass v. State, 557 So.2d 845, 848 (Ala.Crim.App.1990).
“ ‘ “The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires ‘a positive demonstration of abuse of judicial discretion.’ Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969).” Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala.1979).’
*1206 “McGlown v. State, 598 So.2d 1027, 1029 (Ala.Crim.App.1992).
“ ‘ “[N]ormally, a reviewing court determines the correctness of a trial court’s ruling ‘as of the time when it was made and according to what the record shows was before the lower court at that time.’ ” Henry v. State, 468 So.2d 896, 899 (Ala.Cr.App.1984), cert. denied, 468 So.2d 902 (Ala.1985).’
“Dozier v. State, 630 So.2d 137, 140 (Ala.Crim.App.1993).”
Eatmon v. State, 992 So.2d 64, 68 (Ala.Crim.App.2007) (wherein Eatmon argued that he should have been granted his motion for continuance to get the evaluation of a mitigation expert). See also Smith v. State, 698 So.2d 189, 204-05 (Ala.Crim.App.1996) (finding no error in the denial of Smith’s motion for continuance alleging that he had not had time to review the information furnished him by the State pursuant to his discovery motion).
In the present case, a hearing on Johnson’s motion for continuance was held on September 29, 1999 and the defense counsel argued that he had learned in the middle of August that Richards would be testifying for the State and he indicated that he had received a large amount of discovery from the State “a couple of weeks ... prior to the 13th of September.” (R. 28.) He acknowledged that Johnson had gotten a second attorney and a private investigator, but he argued that more time was necessary to prepare an adequate defense.
The prosecutor responded as follows:
“[PROSECUTOR]: ... We strenuously object to any kind of continuance. We’re ready to go, we’ve been ready to go for the past several months. All the way back and my documents indicate all the way back to 1998 we have been giving discovery materials to [defense counsel]. I’ve had numerous letters that I can show His Honor and put into evidence where we’ve written letters requesting him to come over and get copies of tapes, numerous tapes and he’s failed or refused to do so.
“THE COURT: Okay.
“[PROSECUTOR]: The items that he mentions right here being given since September 13th, I’ve got documented memos one right after another where we have literally begged both [defense counsels] to come pick these things up. They have not. I just think that at this point that this severely prejudices the State. And then we’ve sent subpoenas out I don’t know how many times at this point being ready to try this case. We’re ready to go and they’ve had plenty of time. This case has been indicted since January of 1999 capitally and it’s been indicted since the first part of '98 in some form of murder.
“THE COURT: I deny the motion for a continuance.”
(R. 29-30.)
Defense counsel then asked about his Motion to Provide for a Non-attorney Mitigating Service and the trial court responded that he would provide $1500 and “if it looks like it’s a worthwhile project, we’ll pay for more.” (R. 31.) Defense counsel informed the trial court that the service would need 60 days, to which the trial court stated, “Well, then they’re out of the loop then.” (R. 32.)
Based on the circumstances of the present case, including the reasons given by the defense counsel, the trial court did not abuse his discretion in denying Johnson’s motion for a continuance. Moreover, although Johnson seems to imply that the trial court acted improperly by making comments during trial to keep the procedures moving expeditiously, this is not erroneous. See Hampton v. State, 621 So.2d *1207 376, 878 (Ala.Crim.App.1993) (noting that “the trial judge has the duty to move the testimony expeditiously along. Shelton v. State, 384 So.2d 869 (Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala.1980).”). Thus, we find no error, plain or otherwise, with regard to this claim.
XVI.
Johnson argues that the trial court allowed hearsay testimony and conclusory statements by a police investigator to be admitted at trial.
A.
Johnson alleges that the trial court improperly allowed hearsay testimony by Richards as to statements that his sister made to him; specifically he testified that she looked at him and stated, “ Y’all did it, didn’t you?’ ” (R. 555.) She also cites as improperly admitted hearsay testimony from an investigator concerning Richards’s statements made to law enforcement.
Richards’s testimony concerning his sister’s statement was given during Richards’s testimony concerning what he had done to establish an alibi. The prosecutor had asked, “Did y’all do anything to cover the gap? You knew the police would ask, I mean, sooner or later, didn’t you?” (R. 554.) Richards then described locating his sister at work and telling her that he had tried to leave her a note that McCullar was dead and that Johnson had been questioned about it. He testified that she responded by stating, “‘Y’all did it, didn’t you?’ ” (R. 555.) He testified that he then told her that he and Johnson were not involved, but that they needed an alibi because they had been home alone. (R. 556.)
The note and testimony by Richards of his actions and statements in establishing an alibi were admissible. See Deardorff v. State, 6 So.3d 1205, 1218 (Ala.Crim.App.2004), affirmed, Ex parte Deardorff, 6 So.3d 1235 (Ala.2008), cert. denied, Deardorff v. Alabama, 556 U.S. 1186, 129 S.Ct. 1987, 173 L.Ed.2d 1091 (2009) (wherein note from co-conspirator written prior to offense to establish an alibi was admissible as part of the res gestae of the offense). Moreover, Richards’s testimony concerning his sister’s question indicates that she asked him if they committed the offense because they were seeking an alibi. This question does not go to the truth of the matter asserted as nothing is asserted. Richards’s answer to the question indicated that they did not commit the offense.
Rule 801(c), Ala.R.Evid., states:
“ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”
Richards’s sister did not make a statement and her question was therefore not hearsay. As explained in C. Gamble, McElroy’s Alabama Evidence (5th ed.1996):
“Only statements fall within the ban on hearsay. Such statements may be either (1) oral or written assertions or (2) nonverbal conduct intended as an assertion. Oral or written declarations fall within the hearsay definition only if they constitute assertions_Indeed, the drafters of the Alabama Rules of Evidence recognize that ‘[i]t is the assertive nature of the statement that gives rise to the hearsay concern posed by admission of a statement by an out-of-court declarant. Suppose, for example, that an arresting officer returns a call left on the defendant drug dealer’s pager and the person contacted asks: ‘Did you get the stuff?’ At least one court has concluded that this is not definition-ally hearsay because the question did *1208 not and was not intended to assert anything.”
(Footnotes omitted.)
Thus, Richards’s testimony as to the question asked by his sister in response to his eliciting an alibi was not inadmissible hearsay.
Furthermore, the investigator’s testimony concerning Richards’s statements was not inadmissable hearsay. Johnson fails to specify as to which part of the witness’s testimony she is referring. However, a review of the investigator’s testimony reveals that most of his references to Richards’s statements were only made to explain the reasons for the investigator’s actions.
“As we stated in Wilson v. State, 571 So.2d 1237, 1240-41 (Ala.Crim.App.1989), rev’d on other grounds, 571 So.2d 1251 (Ala.1990):
“ ‘ “[M]any statements have been admitted as exceptions to the hearsay rule upon the rationale that such statements were admitted for some purpose other than to prove the truth of the statements.” [C. Gamble, McElroy’s Alabama Evidence § 242.01(1), (3d ed.1977) ]. See also Clontz v. State, 531 So.2d 60, 61 (Ala.Cr.App.1988) (wherein a probation officer was allowed to testify that he first became aware the defendant was not at his address through a telephone call from the appellant’s mother, because “the testimony was not introduced as proof of the matter asserted, but rather as the motive behind the probation officer’s beginning his investigation”); Molina v. State, 533 So.2d 701, 714 (Ala.Cr.App.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989) (wherein a police officer was allowed to testify to information concerning a vehicle suspected to be involved in drug activity, received through a radio dispatch, because it was not offered to prove the truth of the contents of the dispatch, but “to explain the reason he pursued and subsequently stopped the defendant”); Petite v. State, 520 So.2d 207, 211 (Ala.Cr.App.1987) (a radio broadcast, stating that a burglary was in progress, was not hearsay as it was not introduced to prove the truth of the matter asserted, “but rather for the purpose of explaining why Officer Stafford went to the property”); Thomas v. State, 520 So.2d 223, 226 (Ala.Cr.App.1987) (wherein an officer was allowed to identify people he spoke with and places he went before finding the defendant, because “[t]he fact of the conversations ... was offered to explain the officer’s actions and presence at the scene — not for the truth of the matter asserted”).’
“More recently in Deardorff v. State, 6 So.3d 1205, 1217 (Ala.Crim.App.2004), we stated:
“ ‘A review of the record demonstrates that Agent Montgomery’s testimony and Karen and Greg’s testimony about Turner’s will, and particularly the addendum to the will, was given in context of the investigation of the case and the reasons for the actions the police took. It was by definition not hearsay and it was properly admitted into evidence. We have considered cases presenting similar circumstances and have found no error in the admission of the testimony. For example, in Smith v. State, 795 So.2d 788 (Ala.Crim.App.2000), a police officer testified that, during a search of the house belonging to the defendant’s mother, she told him that the defendant hqq put some clothes in the washing machine; Smith argued that the testi *1209 mony was prejudicial hearsay. We held:
“ ‘ “[T]his statement was elicited to establish the reasons for the officer’s action and the reasons the officers searched certain areas of the trailer. It was not offered for the truth of the matter asserted and was not hearsay. ‘The fact of the conversations in this case was offered to explain the officer’s actions and presence at the scene — not for the truth of the matter asserted. Accordingly, it was not hearsay. Clark v. City of Montgomery, 497 So.2d 1140, 1142 (Ala.Cr.App.1986).’ Thomas v. State, 520 So.2d 223 (Ala.Cr.App.1987).”
“ ‘795 So.2d at 814.
“ ‘In D.R.H. v. State, 615 So.2d 1327 (Ala.Crim.App.1993), the appellant argued that hearsay had erroneously been admitted when the officers were permitted to testify about what the confidential informant had told them. We disagreed, found that the evidence was not hearsay, and stated, “[The officers’] testimony was received to show the reasons for the officers’ actions and how their investigation focused on a suspect. Sawyer v. State, 598 So.2d 1035 (Ala.Cr.App.1992).” 615 So.2d at 1330. In accord, Miller v. State, 687 So.2d 1281, 1285 (Ala.Crim.App.1996).’
“The challenged testimony was by definition not hearsay and was properly admitted into evidence.”
Robitaille v. State, 971 So.2d 43, 58-59 (Ala.Crim.App.2005), cert. denied, Robitaille v. Alabama, 552 U.S. 990, 128 S.Ct. 490, 169 L.Ed.2d 339 (2007). See Calhoun v. State, 932 So.2d 923, 958 (Ala.Crim.App.2005) (Cody’s mother’s statement, “ ‘Cody, I done heard they said you done killed a man,’ ” was not inadmissable hearsay as it was not offered to prove the truth of the matter asserted but to show Calhoun’s response).
Moreover, Richards’s statements were admitted into evidence at the close of Richards’s testimony (R. 639), after he had testified on direct examination, cross-examination, redirect examination and recross-examination concerning the contents of his statements and his involvement in the offense. Thus, any mention that the investigator subsequently made concerning any contents of Richards’s statements would have been cumulative and harmless error. Rule 45, Ala.R.App.P. “ ‘[Tjestimo-ny that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred.’ White v. State, 650 So.2d 538, 541 (Ala.Crim.App.1994), overruled on other grounds, Ex parte Rivers, 669 So.2d 239 (Ala.Crim.App.1995).” Perkins v. State, 27 So.3d 611, 613 (Ala.Crim.App.2009).
We note that Johnson also cites to 21 pages in the record for other occasions of inadmissable hearsay; however, these pages do not contain inadmissable hearsay. The testimony by the officers, and several of the witnesses referred to statements which prompted or explained their actions and the testimony was not inadmissable. Robitaille v. State, supra. The citing of other pages does not reveal the testimony about which Johnson complains, and therefore, we find no error on this ground.
B.
Johnson argues that an investigator was improperly asked and gave testimony concerning his judgments and conclusions about the evidence. She specifically contends that he should not have testified about his thought processes and whether or not he believed Johnson. The particular instances that she cites to in making this argument all concern the *1210 investigator’s testimony as to whether he found individuals’ statements credible and consistent. It should be noted that both Richards and Johnson gave a number of varying statements to the authorities.
The testimony given by the investigator was made in response to questions concerning the investigator’s decisions concerning his course of investigation. See Mills v. State, 62 So.3d 553 (Ala.Crim.App.2008) (wherein officer believed that he had a better rapport with Mills’s wife so he had Mills picked up and gained consent to search from Mills’s wife). An officer clearly may testify to his evaluation of individuals involved in an investigation, including furtive gestures or suspicious circumstances or other matters of perceived credibility based on the officer’s expertise. See generally W.D.H. v. State, 16 So.3d 121 (Ala.Crim.App.2008).
“In Sawyer v. State, 598 So.2d 1035 (Ala.Cr.App.1992) cert. denied, 506 U.S. 943, 113 S.Ct. 386, 121 L.Ed.2d 295 (1992), this court stated:
“ ‘ “A statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, ‘but rather to establish the reason for action or conduct by the witness.’ ” Edwards v. State, 502 So.2d 846, 849 (Ala.Cr.App.1986) (quoting Tucker v. State, 474 So.2d 131, 132 (Ala.Cr.App.1984), rev’d on other grounds, 474 So.2d 134 (1985)). The officers related information obtained from other sources to explain why they proceeded as they did. This was not hearsay. See, e.g., Brannon, 549 So.2d at 539; McCray v. State, 548 So.2d 573, 576 (Ala.Cr.App.1988). See, also, Molina v. State, 533 So.2d 701, 714 (Ala.Cr. App.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989); Tillis v. State, 469 So.2d 1367, 1370 (Ala.Cr.App.1985).’
“598 So.2d at 1038.”
Miller v. State, 687 So.2d 1281, 1285 (Ala.Crim.App.1996).
Here, there was no error in the investigator’s testimony concerning his reasons for determining the path of this investigation.
XVII.
Johnson alleges that the trial court committed reversible error by fading to remove two prospective jurors for cause based on their bias in favor of the death penalty. Johnson filed a pretrial motion for the disqualification of any potential juror who would automatically vote for the death penalty. The trial court denied the motion and stated that he would follow the holding in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), when it became appropriate. (R. 25-26.) Johnson did not object to either of these two potential jurors on this ground during voir dire or to the trial court. Therefore, this issue is due to be evaluated pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
The following transpired during the voir dire examination of the first complained-of potential juror by the defense counsel:
“Q: [POTENTIAL JUROR], you’ve indicated on the questionnaire in regard to the death penalty that you would— that if someone took another person’s life you’d vote for the death penalty. Does that mean in all circumstances?
“A: No. Not in all — like I believe like if it’s self defense or like if someone was harming somebody in my family and I did it and I killed a person because they were going to take someone in my family’s life I believe that, don’t believe — I believe I was doing it to protect them. But now just — just killing somebody just to be killing them or you don’t agree *1211 with something like that, I do believe in it.
“Q: Well, let me ask you this way: If you were on the jury and you found the defendant guilty and you had a choice whether to give that person a life sentence in prison, no possibility of parole or the death penalty—
“[PROSECUTOR]: We object. Judge, he has misstated it.
“THE COURT: He hasn’t finished—
“[PROSECUTOR]: It’s a recommendation from the jury.
“THE COURT: He’s not through stating, so—
“Q: A recommendation. Would you in every instance that you can conceive recommend to the Judge the death penalty?
“A: If it was intentionally done, yes.
“Q: So, in every fact situation you could think of where a person was found guilty you would always recommend to the Judge the death penalty?
“A: I don’t believe in just taking someone’s life just — I mean, I believe in punishing a person the way you punish them, is what I — I mean, just like if you take somebody else’s life, I believe your life should be taken. I mean, that’s just me and my opinion.
“Q: Yes, ma’am. Okay. Thank you. “BY [PROSECUTOR]:
“Q: [POTENTIAL JUROR], you understand that when you become a juror that you have an oath to follow the law.
“A: Uh-huh.
“Q: And the Judge tells you what the law is. And based on that oath you have to follow it. If the Judge told you that there are a lot of things that you can consider, that you could consider all sorts of factors in making your decision and that you could weigh them out and make a decision, could you follow the law as he puts it to you in making that decision?
“A: Yes, sir.
“Q: And if the law and the facts after you weigh them suggested to you if somebody had murdered somebody that they should maybe spend life in prison without parole, could you follow the law and give them that kind of sentence where they couldn’t get out? If that’s what the law said and what the facts warranted? Is that a yes?
“A: Yes.
“Q: Okay. So you would weigh the circumstances, is that what you’re saying and weigh the law as the Judge put it to you?
“A: The way the Judge put it, yes.
“Q: Okay, Thank you.
“BY [DEFENSE COUNSEL]:
“Q: If you found a person guilty and you’re sitting on the jury and in the sentencing phase of this case, if you believe that the person had killed them intentionally, would you always recommend the death penalty or can you conceive of a circumstance where you wouldn’t?
“THE COURT: If you have the option—
“Q: If you have the option.
“THE COURT: — of life without parole or the death penalty, those would be your two options at that point in time.
“A: It would be under — I’d have to think about all the circumstances and why it happened and how it was done and weigh it that way.
“Q: Okay, Thank you, ma’am.
“THE COURT: Okay. Thank you.”
(R. 248-51.)
This potential juror clearly indicated that she would decide the sentencing based on the circumstances of the case, *1212 according the evidence the appropriate weight under the instructions from the trial court.
“ ‘A trial judge is in a decidedly better position than an appellate court to assess the credibility of the jurors during voir dire questioning. See Ford v. State, 628 So.2d 1068 (Ala.Crim.App.1993). For that reason, we give great deference to a trial judge’s ruling on challenges for cause. Baker v. State, 906 So.2d 210 (Ala.Crim.App.2001).’
“Turner v. State, 924 So.2d 737, 754 (Ala.Crim.App.2002).
“ ‘The “original constitutional yardstick” on this issue was described in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Under Witherspoon, before a juror could be removed for cause based on the juror’s views on the death penalty, the juror had to make it unmistakably clear that he or she would automatically vote against the death penalty and that his or her feelings on that issue would therefore prevent the juror from making an impartial decision on guilt. However, this is no longer the test. In Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court held that the proper standard for determining whether a venire-member should be excluded for cause because of opposition to the death penalty is whether the venire-member’s views would “ ‘prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.’” [Quoting Adams v. Texas, 448 U.S. 38, 45 (1980).] The Supreme Court has expressly stated that juror bias does not have to be proven with “unmistakable clarity.” Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).’
“Pressley v. State, 770 So.2d 115, 127 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.2000). See also Uttecht v. Brown, 551 U.S. 1, 9, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007) (‘[A] juror who is substantially impaired in his or her ability to impose the death penalty under the state-law framework can be excused for cause; but if the juror is not substantially impaired, removal for cause is impermissible.’).”
Saunders v. State, 10 So.3d 53, 75-76 (Ala.Crim.App.2007), cert. denied, Saunders v. Alabama, 556 U.S. 1258, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009).
There is no indication from the responses of this potential juror that she would be impaired in performing her duties as a juror because of her beliefs concerning the death penalty. She indicated that she would weigh the evidence and follow the trial court’s instructions.
The other potential juror cited by Johnson as having indicated that he would automatically vote for the death penalty was not questioned at trial as having been one of the potential jurors who had so stated. There is no indication in the record that this potential juror had any bias in this regard. Although Johnson states in her brief on appeal that the potential juror indicated in his pretrial questionnaire that he would automatically vote for the death penalty, these questionnaires are not included in the record and therefore we are unable to evaluate any statements by this potential juror that may have been contained therein. See Thomas v. State, 49 Ala.App. 537, 539, 274 So.2d 93, 95 (1973) (“The record is silent as to the court’s qualifying questions to the juror and her answers thereto. We are bound by the record and cannot consider statements in brief not supported by the record. MacM *1213 ahon v. City of Mobile, 253 Ala. 436, 44 So.2d 570.”).
The trial court did not err in failing to remove these potential jurors due to their feelings about the death penalty.
XVIII.
Johnson argues that the trial court reversibly erred by failing to enforce the rule excluding witnesses from the courtroom during her trial. She specifically refers to the victim’s mother and the chief investigator who remained in the courtroom during the course of the trial.
Rule 9.3, Ala.R.Crim.P., states:
“(a) Witnesses. Prior to or during any proceeding, the court, on its own motion or at the request of any party, may exclude witnesses from the courtroom and direct them not to communicate with each other, or with anyone other than the attorneys in the case, concerning any testimony until all witnesses have been released by the court.”
The Committee Comments to this rule establish that “The power to exclude and separate witnesses is entirely a matter of discretion with the trial court. Teague v. State, 245 Ala. 339, 16 So.2d 877 (1944); Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), cert. denied, 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958). By invoking the rule, the court is not compelled to exclude all witnesses but may be selective as appropriate.”
Further, Rule 615, Ala.R.Evid., states:
“At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party’s cause, or (4) a victim of a criminal offense or the representative of a victim who is unable to attend, when the representative has been selected by the victim, the victim’s guardian, or the victim’s family.”
The Comments to this rule explain that two of the categories which do not authorize exclusion are “a party that is not a natural person is entitled to have a representative present. This person is to be an officer or employee of the party and is to be designated by the party’s attorney. Allowing such a witness to be present is consistent with historic Alabama practice. An example of this would be when a police officer, who has been in charge of the state’s investigation, is allowed to remain in the courtroom despite the fact that the officer will be a witness. See, e.g., Portomene v. United States, 221 F.2d 582 (5th Cir.1955).” Also, “as provided under a preexisting statute, in a criminal case, the victim of the crime is exempted from the general rule of witness exclusion. See Ala. Code 1975, § 15-14-55. If the victim is unable to attend the trial, then the victim, the victim’s guardian, or the victim’s family can select a representative, and that representative would be exempted from the rule. See Ala.Code 1975, § 15-14-56 (grounds for permitting a victim’s representative to attend are: death of the victim; disability; hardship; incapacity; physical, mental, or emotional condition; age; or other inability).”
Moreover, pursuant to The Alabama Crime Victims’ Court Attendance Act, § 15-14-50, Ala.Code 1975, “the victim of a criminal offense or representative of the victim’s family has a right to be present in the courtroom and to be seated alongside the prosecutor during the trial of the indi *1214 vidual charged with that offense, and this act is applicable to both capital and non-capital cases. Coral v. State, 628 So.2d 954 (Ala.Crim.App.1992), affirmed 628 So.2d 1004, certiorari denied 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61.”
Under the above-cited authority, the victim’s mother and the chief investigator in this case were properly allowed to remain in the courtroom. See Centobie v. State, 861 So.2d 1111, 1130 (Ala.Crim.App.2001) (finding no error by the trial court in allowing the victim’s wife, as a family representative, and the chief investigator in the case to remain in the courtroom during trial, despite the fact that the investigator was going to testify stating that “[i]n Ex parte Lawhorn, 581 So.2d 1179, 1181 (Ala.1991), the Alabama Supreme Court stated that ‘Alabama appellate courts have time and again refused to hold it an abuse of discretion on the part of the trial court to allow a sheriff, police chief, or similarly situated person who will later testify to remain in the courtroom during trial.’ See also Jackson v. State, 502 So.2d 858 (Ala.Crim.App.1986); Johnson v. State, 479 So.2d 1377 (Ala.Crim.App.1985); Chesson v. State, 435 So.2d 177 (Ala.Crim.App.1983), and authorities cited in those cases.”).
XIX.
Johnson alleges that the trial court improperly admitted photographs, a videotape, and allowed highly inflammatory testimony regarding the crime scene which unduly prejudiced her and inflamed the jury. Specifically, Johnson argues that the State improperly sought to admit 40 photographs of the crime scene and she objected on the grounds that they were prejudicial and cumulative. She acknowledges that the trial court did exclude some of the photographs as cumulative, but contends that others were improperly admitted, as well as the crime scene video. She argues that this prejudice was compounded by the testimony of two witnesses: the investigator’s testimony that he gathered bone fragments and as to blood spatter at the scene, and the medical examiner’s testimony wherein he drew diagrams of the victim’s wounds in front of the jury.
In Brooks v. State, 973 So.2d 380 (Ala.Crim.App.2007), Brooks argued that a videotape of the crime scene and photographs of the victim’s body at the crime scene, as well as depictions of the crime scene were erroneously allowed into evidence as they were irrelevant and highly prejudicial. This court rejected Brooks’s argument, stating:
“ ‘Generally, photographs are admissible into evidence in a criminal prosecution “if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.”’ Bankhead v. State, 585 So.2d 97, 109 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d, 625 So.2d 1146 (Ala.1993), quoting Magwood v. State, 494 So.2d 124, 141 (Ala.Crim.App.1985), aff'd, 494 So.2d 154 (Ala.1986). ‘Photographic exhibits are admissible even though they may be cumulative, demonstrative of undisputed facts, or gruesome.’ Williams v. State, 506 So.2d 368, 371 (Ala.Crim.App.1986) (citations omitted). In addition, ‘photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.’ Ex parte Siebert, 555 So.2d 780, 784 (Ala.1989). ‘This court has held that autopsy photographs, although gruesome, are admissible to show the extent of a victim’s *1215 injuries.’ Ferguson v. State, 814 So.2d 925, 944 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001). ‘ “[A]utopsy photographs depicting the character and location of wounds on a victim’s body are admissible even if they are gruesome, cumulative, or relate to an undisputed matter.” ’ Jackson v. State, 791 So.2d 979, 1016 (Ala.Crim.App.2000), quoting Perkins v. State, 808 So.2d 1041, 1108 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), judgment vacated on other grounds, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002), on remand to, 851 So.2d 453 (Ala.2002). ‘The same rule applies for videotapes as for photographs: “The fact that a photograph is gruesome and ghastly is no reason for excluding it, if relevant, even if the photograph may tend to inflame the jury.” ’ Siebert v. State, 562 So.2d 586, 599 (Ala.Crim.App.1989), aff'd, 562 So.2d 600 (Ala.1990), quoting Walker v. State, 416 So.2d 1083, 1090 (Ala.Crim.App.1982). See also Ward v. State, 814 So.2d 899 (Ala.Crim.App.2000). Generally, ‘[a] properly authenticated video tape recording of the scene of the crime constitutes competent evidence’ and ‘is admissible over the defendant’s objections that the tape was inflammatory, prejudicial, and cumulative.’ Kuenzel v. State, 577 So.2d 474, 512-13 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.1991). ‘Provided that a proper foundation is laid, the admissibility of videotape evidence in a criminal trial is a matter within the sound discretion of the trial judge.’ Donahoo v. State, 505 So.2d 1067, 1071 (Ala.Crim.App.1986).”
973 So.2d at 393.
Here, the crime scene video was properly authenticated and constituted competent evidence. Despite the gruesome appearance of the crime scene and the victim’s body, the video and photographs of the body and crime scene were properly admitted within the trial court’s discretion.
The testimony of the investigator concerning his processing of the crime scene was also proper and necessary to identify and authenticate the evidence gathered at the scene. Moreover, the medical examiner’s use of diagrams during his testimony concerning the victim’s wounds was also properly admitted. Walters v. State, 23 Ala.App. 434, 437, 126 So. 604, 606 (1930) (holding that there was no error in admission of diagram of a human head indicating the location of the wounds on the head of the victim where the diagram was made by the two doctors who had examined the body and was illustrative of their testimony). See Sneed v. State, 1 So.3d 104, 131-32 (Ala.Crim.App.2007), cert. denied, Sneed v. Alabama, 555 U.S. 1155, 129 S.Ct. 1039, 173 L.Ed.2d 472 (2009) (no error in allowing medical examiner to illustrate his testimony concerning the nature of the victim’s wounds by using slides, Stating that “ ‘[i]t has long been the law in Alabama that “[pjhotographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.” Burton v. State, 521 So.2d 91, 92 (Ala.Cr.App.1987).’ ”).
There was no error in the present case as to the admission of the photographs, videotape, testimony of the investigator concerning the crime scene, or diagram and testimony of the medical examiner about the victim’s wounds.
XX.
Johnson argues that the State failed to present sufficient evidence to support her conviction for the capital offense pursuant to § 13A-5-40(a)(14), Ala.Code *1216 1975. She argues that the State failed to prove that the murder was due to McCul-lar’s role as a witness in the bigamy trial against her.
“ ‘ “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).’ ”
Lewis v. State, 24 So.3d 480, 511 (Ala.Crim.App.2006), opinion on return to remand, quoting, Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004), cert. denied, Gavin v. Alabama, 543 U.S. 1123, 125 S.Ct. 1054, 160 L.Ed.2d 1073 (2005).
In the present case, there was ample evidence that McCullar was murdered because of his role as a witness in the bigamy case against Johnson. Marriage records were introduced into evidence, as well as certified document concerning the bigamy charges against Johnson from Walker County District and Circuit Courts. An arrest warrant charging Johnson with bigamy was also introduced, which had been executed on November 12, 1996, and showing that Johnson was placed in jail. The arrest warrant also named the witnesses in the action, of which there were two: McCullar and the probate judge who had maintained the marriage records. The prosecutor for the bigamy case testified that the only “fact witness” or the “primary witness” would have been McCullar. (R. 437.) There was also testimony that McCullar had testified before the grand jury in the bigamy case against Johnson. The prosecutor for the bigamy case testified that because McCullar was unavailable for the trial, a plea bargain was worked out with Johnson whereby she was sentenced to three years suspended, and placed on probation for three years. (R. 454.)
There was testimony from Ronnie Webb, with whom Johnson had a relationship after McCullar, that after the bigamy charges were brought, Johnson “was constantly talking about wanting something done away with — wanting somebody to do away with Randy McCullar or something done with him.” (R. 351.) Richards also testified as to Johnson’s reasons for wanting McCullar killed that “[o]ne was because he was filing bigamy charges on her. Another one was because he was trying to take a child away from her and there was a big money settlement in between this.” (R. 468-69.) Richards also testified that Johnson told him that “on bigamy charges she could get up to one year and a day in *1217 prison. She was afraid to go to prison. She was afraid that Randy would get the kid.” (R. 500.) Moreover, Johnson’s own statement to the police indicates that her motivation was < to avoid the bigamy charge. (SR 259-273.) A similar situation and argument was addressed by this court in Whitehead v. State, 777 So.2d 781 (Ala.Crim.App.1999), affirmed, Ex parte Whitehead, 777 So.2d 854 (Ala.2000). In that case, Whitehead was being tried for theft of Hudson Foods, Inc., where he had been employed, and the victim, who had investigated these charges against him, testified at a parole revocation hearing against Whitehead as to this investigation. Although his parole was not revoked, the victim testified before a grand jury as to the theft charges and was subpoenaed to testify at trial against Whitehead. Moreover, Whitehead apparently hoped to file a large lawsuit against Hudson Foods, Inc., which would be stifled by the victim’s testimony. The victim was thereafter murdered. In addressing Whitehead’s claims of insufficient and conflicting evidence to support his conviction, specifically that he knew the victim was a witness, this Court wrote:
“Numerous witnesses testified that Whitehead stated that he thought that he could win the lawsuit against Hudson Foods if Whitten [the victim] was ‘out of the way.’ Further, and quite apart from the lawsuit, Whitehead had another motive for killing Whitten — to prevent Whitten from testifying against him at his trial on the theft charges. If Whitehead was convicted of first-degree theft, he would be sentenced as a habitual felony offender to life imprisonment. Whitehead’s testimony at Hyde’s trial showed that Whitehead was aware of the prison sentence he would be facing if convicted of theft. Several witnesses testified that Whitehead said he would ‘kill everybody’ before he went back to prison. In fact, Whitehead admitted during his testimony at Hyde’s trial that he would ‘shoot up the courtroom’ and kill ‘anybody that had my life, tried to stop me.’ (R. 1601.)”
777 So.2d at 841. This Court concluded that “[t]he fact that Whitehead knew of Whitten’s status as a witness was shown conclusively by the evidence at trial,” 777 So.2d at 843; such is true in the present case. See also McGee v. State, 594 So.2d 219, (Ala.Crim.App.1991) (by swearing out a warrant against McGee, the victim was a witness for the purpose of § 13A-5-40(a)(14), Ala.Code 1975).
Moreover, Johnson argues that the suggestion by the State that she was motivated by a desire to avoid a bigamy conviction was negated by evidence that after McCul-lar’s death she pleaded guilty to bigamy. However, the fact that she eventually entered into a plea agreement with the State after the murder of McCullar is irrelevant. Similarly in Whitehead, this Court wrote:
“Whitehead further argues that his confession to the Hudson Foods theft, which he allegedly made at his parole revocation hearing concerning the theft investigation, represented a conflict in evidence concerning his knowledge of Whitten’s status as a witness because, he says, the fact that he confessed demonstrates that the ‘probability of a successful civil suit against Hudson Foods was approximately nil and Mr. Whitehead’s motive to kill Andy Whitten vanished.’ (Whitehead’s brief to this court, p. 11.) Again, whether there would have ever been a lawsuit against Hudson Foods, or whether if there was one, it would have been unsuccessful, is irrelevant. Even assuming that it was unlikely that there would ever be a successful civil lawsuit, we do not consider this to be evidence indicating that Whitehead was unaware of Whitten’s status as a *1218 witness. As we stated previously, numerous witnesses testified that Whitehead told them that if Whitten was ‘out of the way,’ he could win a multimillion-dollar lawsuit against Hudson Foods. Also, as we previously stated, the lawsuit was not the only evidence of motive advanced by the State. Other evidence of a motive to kill Whitten existed with respect to the possible life sentence Whitehead was facing if he was convicted of theft.”
777 So.2d at 841-42.
Here, the State presented sufficient evidence to prove that McCullar was killed because he was a witness in the bigamy case against Johnson. Moreover, there was sufficient evidence to support Johnson’s conviction for capital murder pursuant to § lSA-5-40(a)(14), Ala.Code 1975.
XXI.
Johnson argues that her conviction was improperly based on Richards’s uncorroborated accomplice testimony. She submits that this is particularly egregious in this case because Richards is the admitted triggerman and received a plea bargain of a recommended sentence of life imprisonment without parole in return for his testimony.
However there was ample evidence presented to corroborate Richards’s testimony. In Johnson’s statement to the police made on March 19, 1998, she acknowledged her involvement in the offense. Although she often indicated that she was aware of Richards’s intent to kill McCullar but did not want McCullar dead, the following excerpts come from that statement:
“[Investigator]: Well a little while ago, you told me that you thought you went along with him on that because it would help you’re (sic) problem on the bigamy charge. Okay? Did you not tell me that?
“[Johnson]: Yes.”
(SR.259.)
“[Investigator]: Okay. I want to know, you were never divorced from Randy McCullar?
“[Johnson]: No.
“[Investigator]: You knew you wasn’t.
“[Johnson]: No.
“[Investigator]: You knew that you married Tim Richards and committed bigamy when you married him, is that correct?
“[Johnson]: Yes.
“[Investigator]: During this month of November discussions started happening about doing away with Randy?
“[Johnson]: Yes.
“[Investigator]: You was an active participant in those discussions. You understood what he meant by getting rid of him, by killing him, am I correct?
“[Johnson]: Yeah.
“[Investigator]: You thought to yourself, also and told Randy, I mean and told uh Tim also that with Randy out of the way you wouldn’t be going to jail, is that correct? That that would stop the case in, in Winston County, is that correct?
“[Johnson]: Yeah.
“[Investigator]: You knew that Randy was going, I mean that Tim was going to kill Randy on that night, on that Saturday night, is that correct?
“[Johnson]: Yeah.
“[Investigator]: You knew that he had bought bullets and sighted the gun to commit this murder, is that correct?
“[Johnson]: Yes.
“[Investigator]: You did nothing to stop this murder, is that correct?
“[Johnson]: Yes.
“[Investigator]: You came into this office and, and told a lie to protect your *1219 self and, and uh Tim Richards is that correct?
“[Johnson]: Yeah.
“[Investigator]: You know that you’re not legally married to Tim Richards, is that correct?
“[Johnson]: Yeah.
“[Investigator]: You know that you set an alibi and you went down there, you along with Tim, went to Tuscaloosa on the Monday, ..., after the death, after the homicide of Randy McCullar and asked her, in fact, to lie for your whereabouts to the police, if, it was questioned.
“[Johnson]: Yes.”
(SR. 267-68.)
“[Investigator]: And who had as much motive in the death of Randy McCullar? Who would had (sic) the most to gain? First of all; Tim would not be going to jail over anything that happened between you and Randy, am I right?
“[Johnson]: Right.
“[Investigator]: But you had a chance of being convicted of bigamy and going to jail, am I correct?
“[Johnson]: Yeah.
“[Investigator]: Did you know that and figure in your mind, and did you .have conversation after; say after Tim may have brought up this murder plot, that would stop you from going to jail, possibly?
“[Johnson]: Yeah.
“[Investigator]: Okay. You knew the gun was in the car?
“[Johnson]: Yeah.
“[Investigator]: You knew the gun was gonna be used to kill your husband, Randy McCullar?
“[Johnson]: Yeah.
“[Investigator]: You knew that it was gonna be done that night?
“[Johnson]: Yeah.
“[Investigator]: And you covered it up?
“[Johnson]: Yeah.
“[Investigator]: Are you telling me the truth?
“[Johnson]: Yeah.”
(SR. 269.)
Thus, Johnson’s own statement corroborated Richards’s testimony, as her statement also verified Richards’s testimony that they searched McCullar out on the night of the offense, followed him and she gave details of the shooting.
“Although the corroborative evidence need not be strong or sufficient in and of itself to support a conviction, it must establish some fact tending to prove the guilt of the defendant. Ex parte Bell, 475 So.2d at 613; Andrews, supra. In determining a defendant’s culpability,
“ ‘[t]he entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied.
“ ‘And statements made by the defendant, in connection with other testimony, may afford corroboratory proof sufficient to sustain a conviction.’ (Emphasis added.) (Citations omitted.)
“Moore v. State, 30 Ala.App. 304, 306, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942). Proof of a defendant’s motive, alone, is not sufficient to corroborate an accomplice’s testimony and to connect the defendant to the crime. Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947). However, proof of a defendant’s motive coupled with other facts connecting the defendant to the crime may be sufficient to corroborate an accomplice’s testimony. Thompson v. State, 374 So.2d 388 (Ala.1979); Slay *1220 ton v. State, 27 Ala.App. 422, 173 So. 632, rev’d on other grounds, 234 Ala. 1, 173 So. 642 (1936). ‘[T]he weakness of the corroborating evidence, in and of itself, does not preclude a finding that such evidence tends to connect the defendant with the commission of the offense. Where such a finding is made, the weakness and inconclusiveness, vel non, of the corroborating evidence is determined by the jury.’ Thompson, 374 So.2d at 390-91 (citations omitted).”
Ex parte Bullock, 770 So.2d 1062, 1067 (Ala.2000).
Moreover, in addition to Johnson’s statement, there was other evidence to corroborate Richards’s testimony and to connect Johnson to the offense. There was evidence that she had told a number of men that she wanted McCullar to be killed. Ronnie Webb testified that she was “constantly” talking about wanting him killed. (R. 351.) David Prescott also testified that she engaged in conversations with him telling him that she would like to have McCul-lar killed. (R. 383.) Richards’s sister testified that Johnson told her that she and Richards were going. She also testified that Johnson told her that McCullar had been shot, that it occurred in the church parking lot, and that the gun had been “ ‘taken care of.’ ” (R. 741.) There was also evidence that Johnson was with Richards when they sought an alibi, when Richards purchased the rifle shells on the day before the murder, and when Richards went to Hay Valley to “sight in” the gun. She was also seen by two witnesses with Richards just prior to the offense. Furthermore, an investigator testified that Johnson lead law enforcement to the Lit-tleton Bridge and Baker Creek Bridge, where the gun case was subsequently found.
“In Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), this Court discussed the level of proof sufficient for corroboration:
“ ‘When the testimony of the accomplice is subtracted, the remaining testimony does not have to be sufficient by itself to convict the accused. As we stated in Ingram v. State, 779 So.2d 1225, 1259 (Ala.Cr.App.1999):
“ ‘ “A felony conviction cannot be had on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Kuenzel v. State, [577 So.2d 474 (Ala.Cr.App.1990) ]; § 12-21-222. The corroboration evidence need not be strong, nor sufficient of itself to support a conviction, the reasoning being that it legitimately tend to connect the accused with the offense; it need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Kuenzel v. State; Andrews v. State, 370 So.2d 320 (Ala.Crim.App.1979).” ’
“820 So.2d at 869. See also Ziegler v. State, 886 So.2d 127, 143 (Ala.Crim.App.2003).”
Lewis v. State, 24 So.3d 480, 513 (Ala.Crim.App.2006), affirmed, Ex parte Lewis, 24 So.3d 540 (Ala.2009).
In the present case, there was sufficient evidence to corroborate Richards’s testimony and connect Johnson to the offense.
XXII.
Johnson argues that the State failed to provide exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). She argues that she filed a pretrial Brady motion, which was granted by the trial court, and also filed a pretrial motion pursuant to Ex parte Monk, 557 So.2d 832, 836 (Ala. *1221 1989), for discovery, which was also granted by the trial court.
The record indicates that a hearing was held as to a number of pretrial motions, and the discovery issue was discussed. Defense counsel alleged that “[w]e just feel like there’s some exculpatory evidence” that they had not been given; he alluded to “notes” from the police and “any record of their witness’s, Tim Richards’, wife [sic], who indicated that she came to the DA’s office, spoke with the DA.” (R. 39.) The trial court responded, based on the State’s earlier assertion that they had turned over everything to Johnson “down to just small notes” (R. 35), that “I have given you all they have and I can’t generate any more for you.” (R. 40.) The trial court further commented that if Johnson could make any showing that there was some evidence that had not been turned over, a mistrial would be declared. (R. 40.)
In the present case, there was no showing that any undisclosed exculpatory evidence existed.
“ ‘Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] presupposes the actual existence of evidence favorable to the accused and material either to guilt or punishment. Bailey v. State, 421 So.2d 1364, 1369 (Ala.Cr.App.1982). There must be some showing that such exculpatory and influential evidence actually exists before a constitutional violation of the Brady rule may be found. Bailey, 421 So.2d at 1368-69.’ Timmons v. State, 487 So.2d 975, 982 (Ala.Cr.App.1986). ‘To establish a Brady violation, [the defendant] must demonstrate (1) that the prosecution suppressed evidence; (2) that that evidence was favorable to him or exculpatory; and (3) that the evidence was material.’ Ex parte Kennedy, 472 So.2d 1106, 1110 (Ala.), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).”
Morgan v. State, 518 So.2d 186, 190 (Ala.Crim.App.1987).
Johnson did not prove that the notes or document concerning Richards’s sister speaking to the DA exist. Therefore, she failed to demonstrate that the State suppressed the possible evidence, that it was exculpatory or that it was material. There is no error here.
XXIII.
Johnson alleges that the trial court improperly excluded a potential juror based on the juror’s concerns about the death penalty.
The record reveals that this prospective juror was asked by the trial court whether, if he was selected to serve as a juror, he would automatically eliminate the death penalty as an option in sentencing. He responded, “Yes, sir, I don’t believe in it.” (R. 164.) He also responded that he could not impose the death penalty under any set of facts. Defense counsel then asked if he might be able to recommend the death penalty if the facts were exceedingly atrocious and terrible, and he responded that he did not know. Defense counsel continued following up on questioning the potential juror, who apparently was confused, until the trial court interrupted and the following transpired:
“THE COURT: Don’t let them put words in your mouth.
“A: No, sir, I don’t know if I could give anybody the death penalty.
“THE COURT: You are free to say what you want to say and we appreciate any convictions that you have. The question is: Could you impose the death penalty regardless of what the facts may show?
*1222 “[PROSPECTIVE JUROR] No, sir, I couldn’t impose the death penalty.
“THE COURT: Okay. Thank you, sir. Appreciate it. I’m going to excuse you right now....”
(R. 166.)
In Alabama, a juror in a capital murder trial is required to consider both life imprisonment without parole and the death penalty in arriving at their advisory verdict. § 13A-5-46(d) and (e), Ala.Code 1975. If a juror is unable to do so, it follows that he or she cannot perform the duties necessary to serve as a juror on such a case.
“‘A trial judge is in a decidedly better position than an appellate court to assess the credibility of the jurors during voir dire questioning. See Ford v. State, 628 So.2d 1068 (Ala.Crim.App.1993). For that reason, we give great deference to a trial judge’s ruling on challenges for cause. Baker v. State, 906 So.2d 210 (Ala.Crim.App.2001).’
“Turner v. State, 924 So.2d 737, 754 (Ala.Crim.App.2002).
“ ‘The “original constitutional yardstick” on this issue was described in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Under Witherspoon, before a juror could be removed for cause based on the juror’s views on the death penalty, the juror had to make it unmistakably clear that he or she would automatically vote against the death penalty and that his or her feelings on that issue would therefore prevent the juror from making an impartial decision on guilt. However, this is no longer the test. In Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court held that the proper standard for determining whether a venire-member should be excluded for cause because of opposition to the death penalty is whether the venire-member’s views would “ ‘prevent or substantially impair the performance of his duties as a juror in accord.’ ” [Quoting Adams v. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).] The Supreme Court has expressly stated that juror bias does not have to be proven with “unmistakable clarity.” Darden v. Wainwriqht, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).’
“Pressley v. State, 770 So.2d 115, 127 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.2000). See also Uttecht v. Brown, 551 U.S. 1, 9, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007) (‘[A] juror who is substantially impaired in his or her ability to impose the death penalty under the state-law framework can be excused for cause; but if the juror is not substantially impaired, removal for cause is impermissible.’).”
Saunders v. State, 10 So.3d 53, 75-76 (Ala.Crim.App.2007), cert. denied, Saunders v. Alabama, 556 U.S. 1258, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009).
Here, the potential juror made clear his feelings that he could not consider recommending a sentence of death and therefore could not perform the duties required of a juror. The trial court did not err by excusing this prospective juror from service on this case.
XXIV.
Johnson argues that the State impermissibly used its peremptory strikes to remove African-American jurors from serving on her jury. Specifically, Johnson alleges that the State struck three of the six veniremembers, as opposed to a quarter of the white veniremembers. She *1223 makes no argument concerning the specifics of these strikes, only that the trial court should have required the State to come forward with race neutral reasons for these strikes. She argues that the exclusion of even one juror on the basis of race violates the Fourteenth Amendment of the United States Constitution.
“A trial court’s ruling on a Batson objection is entitled to great deference; this Court will not reverse the trial court’s ruling unless it is clearly erroneous. See Ex parte Branch, 526 So.2d 609, 625 (Ala.1987); Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992).
“ ‘A defendant making a Batson challenge bears the burden of proving a prima facie case of purposeful or intentional discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala.1987). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the State give its reasons for its peremptory strikes. Stokes v. State, 648 So.2d 1179, 1180 (Ala.Crim.App.1994).’
“Ex parte Pressley, 770 So.2d 143, 145 (Ala.), cert. denied, 531 U.S. 931, 121 S.Ct. 313, 148 L.Ed.2d 251 (2000). In Pressley, the Alabama Supreme Court further noted that the mere fact that the State used a high percentage of its peremptory challenges to remove four of six African-Americans from the venire and used some of its peremptory strikes to remove females from the venire was insufficient, by itself, to establish a prima facie showing of racial or gender discrimination in the State’s use of its peremptory strikes, so as to require the State to offer explanations for the strikes. 770 So.2d at 146-47; see also Ex parte Trawick, 698 So.2d 162, 167-68 (Ala.), cert. denied 522 U.S. 1000, 118 S.Ct. 568, 139 L.Ed.2d 408 (1997). In Ex parte Branch, 526 So.2d 609, the Alabama Supreme Court discussed other factors to be used in establishing a prima facie case of racial discrimination. Those factors are as follows: (1) evidence that the jurors in question shared only the characteristic of race and were in all other respects as heterogenous as the community as a whole; (2) a pattern of strikes against African-American jurors on the particular venire; (3) the past conduct of the prosecutor in using peremptory challenges to strike all African-Americans from the jury venire; (4) the type and manner of the State’s questions and statements during voir dire; (5) the type and manner of questions directed to the challenged juror, including a lack of questions; (6) disparate treatment of members of the jury venire who had the same characteristics or who answered a question in the same manner or in a similar manner; and (7) separate examination of members of the venire. Additionally, the Court noted that circumstantial evidence of intent could be proven by disparate impact where all or most of the challenges were used to strike African-Americans from the jury or where the State used peremptory challenges to dismiss all or most African-American jurors. 526 So.2d at 622-23.”
Bryant v. State, 951 So.2d 732, 740-41 (Ala.Crim.App.2003), Bryant v. Alabama, 549 U.S. 1324, 127 S.Ct. 1909, 167 L.Ed.2d 569 (2007).
Here, Johnson failed to establish a prima facie case of racial discrimination due to the use of the prosecutor’s peremptory challenges. Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App.1997) (“ ‘even a showing that [a] party had struck a high percentage of strikes used against a minority was not enough alone. In Ex parte *1224 Trawick, 698 So.2d 162, 168 (Ala.1997), the Alabama Supreme Court held, “Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.” ’ ”). There was no showing by Johnson that any of the factors which indicate racial discrimination in this context were present. “[Statistics and opinion alone do not prove a prima facie case of discrimination. See Johnson v. State 823 So.2d 1 (Ala.Crim.App.2001).” Banks v. State, 919 So.2d 1223 (Ala.Crim.App.2005). Johnson referenced only to percentages and this Court has consistently held that numbers or percentages alone will not substantiate a case of racial discrimination in this context. Therefore, because Johnson did not establish a prima facie case of purposeful discrimination, the State was not required to come forward with race-neutral reasons for its strikes.
XXV.
Johnson argues that the trial court erred by allowing the jury to separate for the evening. She further argues that this error was compounded because on several occasions he failed to admonish the jury not to discuss the case.
However, a review of the record indicates that the jury was admonished numerous times as to their duty to refrain from discussing the case and to avoid news articles and television accounts of the case.
“Contrary to the appellant’s contention, a mere ‘chance’ of contamination from outside information is simply not sufficient to warrant reversal. As we have stated time and again, we will not base error on speculation and conjecture. See McNair v. State, supra. The trial court gave a detailed instruction in which the jurors were repeatedly told not to read or to watch media accounts of the case and not to attempt any independent investigation. The trial court was not obliged to give such an instruction every time the jury took a break during the trial. It is clear from the record that the members of the jury were more than aware that they were not to have any outside exposure concerning the case. In Griffin v. State, 790 So.2d 267 (Ala.Crim.App.1999), rev’d on other grounds, 790 So.2d 351 (Ala.2000), the appellant argued that the trial court should have charged the jury each time it separated; however, this Court rejected that argument, stating:
“ ‘Although the better practice would be for the trial court to admonish the jury at each break or recess, there is nothing in Rule 19.3(b), Ala. R.Crim.P., that requires it to do so.... Jurors are presumed to follow the instructions of the trial court. Taylor v. State, 666 So.2d 36 (Ala.Cr.App.), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).’
“Id. at 334.
“Additionally, the record does not indicate that any of the jurors told the trial court of having been exposed to any extraneous influences, thereby obviating the need for additional instruction from the trial court. See Minor v. State, 780 So.2d 707, 758 (Ala.Crim.App.1999), rev’d on other grounds, 780 So.2d 796 (Ala.2000). The present case indicates that the trial court acted within its discretion by allowing the jury to separate after adequately instructing the members. Id.”
Centobie v. State, 861 So.2d at 1135.
Here, there is also no indication nor does Johnson allege any reason that would require the need for additional instruction to the jury.
*1225 Furthermore, there was no error by the trial court in allowing the jury to separate for the night. Johnson acknowledges that the decision to allow the jury to separate is a matter for the trial court’s discretion. Pursuant to Rule 19.3(a)(1), Ala.R.Crim.P., “[i]n the prosecution of any felony case, the trial court, in its discretion, may permit the jury hearing the case to separate during the pendency of the trial. Such a separation of the jury shall create a prima facie presumption that the accused was not prejudiced by reason of the separation.” [11] Furthermore, according to § 12-16-9, Ala.Code 1975, “[i]n the prosecution of any felony ease the trial court in its discretion may permit the jury hearing the case to separate during the pendency of the trial.”
In the present case, there is no indication that the trial court abused his discretion in allowing the jury to separate. Broadnax v. State, 825 So.2d 134, 155 (Ala.Crim.App.2000); Snyder v. State, 893 So.2d 488, 512 (Ala.Crim.App.2003), cert. denied, Snyder v. Alabama, 544 U.S. 1062, 125 S.Ct. 2512, 161 L.Ed.2d 1113 (2005). Therefore, Johnson is not entitled to any relief on this claim.
XXVI.
Johnson argues that the trial court erred by failing to ensure that the proceedings were fully transcribed. She notes that she filed a pretrial motion requesting that all proceedings be transcribed, which was granted by the trial court. She alleges that the trial court erred by holding three conferences off the record, without the court reporter taking any notes. Johnson did not raise this objection at trial and therefore we review this issue for plain error. See Rule 45A, AIa.R.App.P.
The conferences to which Johnson refers are: one involving the striking of the jury, one wherein the photographs of the crime scene and body were apparently marked for identification and admission, and one that the trial court referred to as a charge council or conference and Johnson alleges involved the trial court’s decisions as to Johnson’s recommended jury charges.
At the time of Johnson’s trial and conviction, this matter was controlled by § 12-17-275, Ala.Code 1975, prior to the December 21, 1999, adoption of Rule 19.4, Ala.R.Crim.P.[12] According to this statute:
“The official court reporter shall attend in person, except as otherwise herein provided, the sessions of court held in the circuit for which he is appointed, and in every case, where directed by the judge or requested by a party thereto, he shall take full stenographic notes of the oral testimony and proceedings, except argument of counsel, and note the order in which all documentary evidence is introduced, all objections of counsel, the rulings of the court thereon and exceptions taken or reserved thereto.”
“[A] court reporter has never been required to transcribe bench conferences or to record the striking of the jury unless requested to do so. Ex parte Harris, 632 So.2d 543, 545 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Ex parte Land, 678 So.2d 224, 245 (Ala.1996).” Boyd v. State, 746 So.2d 364, 382 (Ala.Crim.App.1999). See Roberts v. State, 735 So.2d 1244, (Ala.Crim.App.1997) (holding that, unlike the voir dire examination, the actual striking of the jury need *1226 not be recorded). See also Burgess v. State, 827 So.2d 134, 191-92 (Ala.Crim.App.1998), affirmed, Ex parte Burgess, 827 So.2d 193 (Ala.2000) (finding no error in trial court’s denial of motion for reconstruction where sidebars dealing with striking of jurors and incidental occurrences were not transcribed). However, where defense counsel makes a motion that all proceedings be transcribed and the motion is granted, it has been held as error not to do so. Ex parte Harris, 632 So.2d 543 (Ala.1993).
Here, Johnson made a motion for the proceedings to be transcribed which was granted; however, the failure to transcribe the conferences cited by Johnson was harmless. Rule 45, Ala.R.App.P.
“[ I]n Ex parte Harris, 632 So.2d 543, 545-46 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), the Alabama Supreme Court addressed a similar situation as follows:
‘“In this case, the items or statements omitted from the record were not transcribed because they occurred out of the hearing of the court reporter. However, Harris’s trial counsel had moved the trial court to “order the official court reporter to record and transcribe all proceedings in all phases [of the case], including pretrial hearings, legal arguments, voir dire and selection of the jury, in-chambers conferences, any discussions regarding jury instructions, and all matters during the trial and in support thereof ... ”; and the court had granted the motion. After granting the motion, the court had the duty to see that the entire proceedings were transcribed; we must conclude that the failure to record and transcribe a portion of the voir dire examination of the jury and certain portions of the bench conferences, in light of the fact that Harris was represented on appeal by counsel other than the attorney at trial, constituted error. See Ex parte Godbolt, 546 So.2d 991 (Ala.1987). Thus, the question becomes whether that error constituted reversible error.
“ ‘ “ ‘When, [as in this case], a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal. The wisdom of this rule is apparent. When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. Indeed, counsel’s obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded.’ ” ’ ”
Wynn v. State, 804 So.2d 1122, 1144 (Ala.Crim.App.2000) (in a Rule 32, Ala. R.Crim. P., appeal). We note that Johnson was represented on appeal by the same attorneys who represented her at trial; therefore, because Johnson’s counsel are presumed to know what happened at these conferences, any error in the court reporter’s failure to transcribe these conferences should not have probably injuriously affected Johnson’s substantial rights. Rule 45, Ala.R.App.P. See Ex parte Godbolt, 546 So.2d 991, 996-97 (Ala.1987) (“The Fifth Circuit Court of Appeals recognized in these cases that there are times when reversible error should be presumed when a court reporter fails to comply with the Court Reporter Act, 28 U.S.C.A. § 753(b), by omitting some portion of the trial proceedings. However, that court has not *1227 chosen to adopt a per se rule requiring reversal for any and all omissions.”).
Moreover, “ ‘[d]efense counsel could have easily reminded the trial court that it had granted his motion for full recordation of the proceedings and remedied the omissions at that time. Therefore, this error was invited by the appellant.’ ” Brown v. State, 11 So.3d 866, 893 (Ala.Crim.App.2007), affirmed, Ex parte Brown, 11 So.3d 933 (Ala.2008), cert. denied, Brawn v. Alabama, 557 U.S. 938, 129 S.Ct. 2864, 174 L.Ed.2d 582 (2009).
In the present case, the striking of the jury and the marking of the photographs were ministerial and a review of the portions of the record around the charge conference reveal no indication that prejudice resulted because it was not transcribed. A review of the issues raised by Johnson concerning the trial court’s charge to the jury indicates that she was fully aware of any arguments pertaining thereto. See McGowan v. State, 990 So.2d 931, 995-96 (Ala.Crim.App.2003) (error was harmless in court reporter’s failure to record three bench conferences, including one on motion for change of venue, a Batson motion to review numerical information, and another that was unsubstantiated, despite trial court’s order that all proceedings were to be transcribed, based on review of the portions of the record surrounding the omitted parts; this review indicated that the omitted parts were not substantial and significant, and McGowan’s substantial rights were not adversely affected).
XXVII.
Johnson argues that Alabama’s method of execution constitutes cruel and unusual punishment. However, this Court has previously decided similar claims adversely to the position taken by Johnson. See Ex parte Belisle, 11 So.3d 323 (Ala.2008) (holding that § 15-18-82, Ala.Code 1975, which requires death by legal injection unless the convict chooses execution by electrocution does not constitute cruel and unusual punishment). See McGowan v. State, 990 So.2d 931 (Ala.Crim.App.2003), cert. denied, McGowan v. Alabama, 555 U.S. 861, 129 S.Ct. 136, 172 L.Ed.2d 104 (2008) (holding that McGowan’s claim that electrocution constitutes cruel and unusual punishment is moot, because statute concerning method of execution has been amended). Johnson has presented no arguments not contemplated in our previous resolution of similar claims, and we find no basis to overrule precedent.
XXVIII.
Johnson argues that the trial court erred in failing to suppress one of her statements made to law enforcement, specifically her sixth statement.[13] She argues that the admission of this statement was particularly damaging because this statement included her first assertion that she was with Richards on the night of the offense. She further alleges that she had been interrogated for hours prior to giving the statement and that this conversation or interrogation was not recorded because this was “clearly a process of breaking down Ms. Johnson and reworking her statement so that when she was recorded she told the officers what they wanted to hear.” (R. Johnson’s brief at 138.) She points out that she may have cried during this interrogation, based on the testimony of one of the investigators that he remembered Johnson crying during one of her interrogations.
*1228 “The fundamental requirements for voluntariness of confessions are that the court must conclude, in order to find a defendant’s confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capacity to do so, and that his will was not overborne by pressures and circumstances swirling around him. Jurek v. Estelle, 628 F.2d 929 (5th Cir.1980) (en banc), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); Lewis v. State. The test is whether, considering the totality of the circumstances, law enforcement officials have overborne the will of the accused. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). The factual inquiry centers on the conduct of the law enforcement officials in creating pressure and the suspect’s capacity to resist that pressure. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Martin v. Wainwright, 770 F.2d 918 (11th Cir.1985); Jurek v. Estelle. The defendant’s personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining his susceptibility to police pressures. Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953); Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Martin v. Wainwright.
“The question of whether a confession was voluntary is initially to be determined by the trial court. Ex parte Singleton, 465 So.2d 443 (Ala.1985). Thereafter, the voluntariness as affecting the credibility and weight to be given any statement that an accused has made is a determination for the jury. Id. The finding of the trial court will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence or is manifestly wrong. Lewis v. State; Magwood v. State; Marschke v. State, 450 So.2d 177 (Ala.Cr.App.1984). Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Chambers v. State, 455 So.2d 1008 (Ala.Cr.App.1984). The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. Ex parte McCary, 528 So.2d 1133 (Ala.1988); Ex parte Singleton; Lewis v. State.”
Jackson v. State, 562 So.2d 1373, 1380-81 (Ala.Crim.App.1990).
The totality of the circumstances surrounding the interrogation of Johnson and giving of her statement indicate that Johnson made her statement voluntarily. The record indicates that a suppression hearing was held pursuant to Johnson’s motion to suppress her statements. The trial court determined that each of Johnson’s statements would be evaluated under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the interrogating officers gave testimony concerning the circumstances of these statements.
Johnson’s first statement was not recorded and the officers stated that she was not the focus of any investigation. This statement was taken at her mother’s house. The following week, another statement was taken from Johnson at the Sheriffs office. This statement was taped, but Johnson was not in custody and one of the officer’s testified that she stated that she *1229 knew that she had the right to an attorney, but that she wanted to help. She stated that she was making the statement voluntarily. The officer testified that there was no inducement or coercion involved. He further acknowledged that other people were still being interviewed. Approximately a month later, another statement was taken from Johnson, which was taped. Miranda warnings were administered to Johnson prior to this statement. Johnson agreed to write out a statement of what occurred around the time of the offense. Again, the officers testified that there were no inducements, threats or any form of coercion involved. At this stage, the officers stated that they became suspicious of her due to inconsistencies in her statements. After 30 minutes to an hour, Johnson left.
Three months later, another statement was taken from Johnson. At this time, she and Richards were the main suspects. Johnson was advised of her Miranda rights, but the officers did not speak to her due to a conflict in scheduling.
The next day, Johnson gave the statement which she now alleges was involuntary. The officers testified that she was again advised of her Miranda rights and signed the form acknowledging her understanding of these rights and decision to waive them. She stated that she wanted to talk to the officers. The officers testified that they made her no promises, nor did they threaten, coerce or trick her in any way to gain her statement. An officer testified that the timing of the interview, which began at 9:40 and was not taped, involved a lunch break and Johnson was provided with a lunch. There were also appropriate bathroom breaks. Following the lunch break, Johnson was repeated her Miranda rights. Because it had become apparent to the officers, according to the testimony of one of them, that Johnson knew some of the facts of McCullar’s death, a tape-recording device was used for the ensuing questioning. An officer testified that Johnson acknowledged that she wanted to be helpful and talk to the police. He again established that there was no use of inappropriate tactics that would call into question the voluntariness of her statement.
Following the statement, Johnson took certain personnel from the Sheriffs office to the bridge where she alleged that the gun and gun case had been tossed. Another statement was taken that same night from Johnson at 8:52. She was informed of her Miranda rights again prior to this statement, and officer testimony again established that the conditions of the statement in no way affected its voluntariness. She was still not arrested following this statement. A final statement was taken approximately a week later at the Sheriffs office, which was recorded. She stated that she wanted to make the statement and signed her Miranda form after being advised of those rights. The officers testified that there was no impropriety concerning inducements, promises, threats or coercion.
There is no indication in the record of improper behavior or tactics by the officers in taking Johnson’s statement. Although Johnson alleges that she may have cried during the questioning, that would not make her statement involuntary. See Kormondy v. State, 983 So.2d 418, 430 (Fla.2007) (although Kormondy was crying, his statement was not involuntary or inadmissible).
Moreover, Johnson’s claim that the fact that the initial portion of the interview in question was not recorded calls into question its voluntariness, is not substantiated by the circumstances in this case. “ ‘ “The state is not required to prove all that the accused said when he *1230 confessed because the accused himself has the right to prove the remainder of his statement.” McEVroy, § 200.17 at 446.’” Sneed v. State, 1 So.3d 104, 126 (Ala.Crim.App.2007), cert. denied, Sneed v. Alabama, 655 U.S. 1155, 129 S.Ct. 1039, 173 L.Ed.2d 472 (2009), quoting, Barrow v. State, 494 So.2d 834, 840 (Ala.Crim.App.1986). Furthermore, the failure to record a portion of an interview is a matter to be considered as affecting the weight to be accorded the statement rather than its admissibility. See Centobie v. State, 861 So.2d 1111, 1120 (Ala.Crim.App.2001) (part of statement was not recorded because the tape was inserted in the wrong direction; however the tape was admissible). Smith v. State, 756 So.2d 892, 931 (Ala.Crim.App.1997) (where the officer failed to record a portion of the interrogation when he advised Smith of his Miranda rights would not render the statement inadmissible, but would be taken into consideration by the jury in determining the weight and credibility to assign to the officer’s testimony regarding the appellant’s confession).
In this case, Johnson’s statements were voluntarily given and there was no error in their admission.
XXIX.
Johnson argues that the trial court erred by announcing to the jury that portions of a tape of one of her statements to the police had been redacted. She alleges as error the trial court’s statement to the jury that “I determined they [the redacted portions] weren’t proper to be before the jury.” Johnson failed to object to this statement by the trial court at trial and therefore this issue is due to be analyzed pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
The record indicates that defense counsel requested prior to trial that portions of Johnson’s statements be redacted because of references to prior bad acts. Therefore, Johnson may not now claim that the tapes that were redacted pursuant to her request should not have been redacted. Cf. Ex parte Deardorff, 6 So.3d 1235, 1241-42 (Ala.2008), quoting, Franklin v. State, 644 So.2d 35, 38 (Ala.Crim.App.1994) (“ ‘ “Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.” Phillips v. State, 527 So.2d 154, 156 (Ala.1988). Although evidence that he had been convicted of a prior crime would not ordinarily have been admissible at trial, the appellant cannot claim that it was error to receive testimony concerning his arrest for a parole violation when he injected the issue into the trial.’ ”).
Moreover, there was no error, plain or otherwise, in the trial court’s informing the jury that portions of the statement had been redacted. In Smith v. State, 838 So.2d 413 (Ala.Crim.App.2002), cert. denied, Smith v. Alabama, 537 U.S. 1090, 123 S.Ct. 695, 154 L.Ed.2d 635 (2002), this Court addressed a similar situation where portions of a transcript had been redacted to remove reference to collateral bad acts. Smith argued that because of the trial court referenced the redaction to the jury, the judge improperly drew their attention to it. This Court stated:
“In Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.2000), the appellant had argued that the trial court had improperly allowed the jury to hear a portion of his audiotaped statement that referred to uncharged misconduct and that had been redacted at the defense’s request, because he argued that the gap, as well as the trial court’s instructions concerning the gap, prompted the jury to draw adverse inferences. Using the plain-error standard, this Court determined that, in light of the trial court’s statement to the jury that the skipped por *1231 tions were irrelevant and should be disregarded,
“ ‘there is no likelihood that, given the court’s instructions, the jury could have reached an adverse conclusion or guessed what the missing portion contained based on the gap in the tape. “Because the trial court’s statements, when viewed under the facts of this case, were not such as to influence the result of the case, they did not constitute plain error.” ’
“Taylor v. State, 808 So.2d at 1181, quoting Maples v. State, 758 So.2d 1 (Ala.Crim.App.1999).
“Similarly, in the present case, the omitted portions would not have suggested to the jury the prior bad acts of the appellant, based on a review of the entire conversation. Moreover, the trial court’s instructions to the jury properly informed them that the omitted portions were not pertinent and dealt with matters unrelated to the present case. There was no plain-error pursuant to this ground.”
838 So.2d at 443.
Here, the trial court’s statement to the jury concerning the redaction of Johnson’s statement was not erroneous and did not adversely affect her substantial rights.
XXX.
Johnson alleges that the Alabama statute, as amended, limiting court appointed attorneys’ fees is indefensible and unconstitutional. However, this Court has previously resolved a similar claim as follows:
“The appellant argues that the Alabama statute, § 15-12-21(d), Ala.Code 1975, which limits to $1,000 the fees of court-appointed attorneys for out-of-court work in each phase of a capital case, violates state and constitutional law. Specifically, the appellant argues that the statute is unconstitutional, because, he says, by limiting compensation to $1,000 for out-of-court work, based on a $20 hourly rate, the statute assures that an appointed attorney in a capital case receives no compensation for any time expended beyond 50 hours for out-of-court work. Therefore, the appellant argues, the statute violates the separation-of-powers doctrine, constitutes a taking without just compensation, deprives indigent defendants of the effective assistance of counsel, and violates the Equal Protection Clause. The appellant raised this issue for the first time on appeal, so it must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P. This Court has, however, rejected similar claims evaluated pursuant to the plain-error rule, and adheres to its decisions on this matter. See McWhorter v. State, 781 So.2d 257 (Ala.Crim.App.1999); Boyd v. State, 715 So.2d 825 (Ala.Crim.App.1997). This Court stated in McWhorter:
“ ‘It should be noted that the Alabama Legislature recently passed the “Investment in Justice Act of 1999,” and, in pertinent part, that Act amended § 15-12-21. Under the new Act, the rate of compensation for attorneys representing indigent criminal defendants is increased to $50 per hour for in-court time and $30 per hour for out-of-court time, with no limit on compensation for an attorney in a case involving a capital offense. Moreover, effective October 1, 2000, the hourly rate increases to $40 per hour for out-of-court time and $60 per hour for in-court time. As amended § 15-12-21(d) reads, in pertinent part:
“ ‘ “(d) Counsel appointed in cases described in subsections (a), (b), and (c), including cases tried de novo in *1232 circuit court on appeal from a juvenile proceeding, shall be entitled to receive for their services a fee to be approved by the trial court. The amount of the fee shall be based on the number of hours spent by the attorney in working on the case and shall be computed at the rate of fifty dollars ($50) per hour for time expended in court and thirty dollars ($30) per hour for time reasonably expended out of court in preparation of the case. Effective October 1, 2000, the amount of the fee shall be based on the number of hours spent by the attorney in working, on the case and shall be computed at the rate of sixty ($60) per hour for time expended in court and forty ($40) per hour for time reasonably expended out of court in preparation of the case. The total fees paid to any one attorney in any one case, from the time of appointment through the trial of the case, including motions for new trial, shall not exceed the following:
“ ‘ “(1) In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee.” ’
“781 So.2d at 306-07.”
Centobie v. State, 861 So.2d 1111, 1143 (Ala.Crim.App.2001). The Alabama statute limiting court appointed attorneys’ fees is not unconstitutional, and Johnson is entitled to no relief on this claim.
XXXI.
Johnson argues that the trial court failed to provide adequate measures to control prejudice which resulted from publicity concerning the trial and offense. Specifically, she contends that the trial court should have ordered a change of venue for the trial. She also argues that the trial court should have conducted the voir dire examination of the venire-members individually and apart from the other veniremembers.
A.
Johnson argues that the trial court should have ordered a change of venue for her trial and bases her argument only on her conclusion that the voir dire “revealed a significant amount of press coverage in Walker County.” (Johnson’s brief at 142.) Johnson, however, never made a motion for change of venue; therefore, we review this issue for plain error. See Rule 45A, Ala.R.App.P.
In the present ease, a review of the voir dire examination of the potential jurors reveals that no member of the venire expressed any indication of bias as to the parties or the case due to pretrial publicity. Thus, there is no indication that pretrial publicity might have affected any member of the venire’s ability to serve as a juror and decide the case based solely on the evidence presented.
“As this Court stated in Taylor v. State, 808 So.2d 1148, 1203-04 (Ala.Crim.App.2000):
“ ‘Taylor next argues that the trial court erred in not sua sponte moving the trial to another venue because of alleged extensive pretrial publicity. Taylor never moved for a change of venue before the trial court, nor did he present any evidence before the trial court concerning pretrial publicity. The only evidence before us now concerning pretrial publicity is the answers to voir dire questions concerning the jurors’ knowledge of the case as a result of media coverage. We will review this issue for plain error only. Rule 45A, Ala.R.App.P.
*1233 “ ‘Media publicity can prejudice prospective jurors and thereby result in a denial of a defendant’s right to an impartial jury. Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). In order to get a change of venue based on pretrial publicity, the defendant must prove that there existed actual prejudice against the defendant as a result of the publicity or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Newspaper articles or widespread publicity, without more, is insufficient to grant a motion for a change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Cr.App.1978).
“ ‘Our review of the voir dire examination concerning pretrial publicity indicates that, while many venire members had heard something about the case from the media, there were no grounds to warrant a change of venue. See, Stewart v. State, 730 So.2d 1203, 1241 (Ala.Cr.App.1996). No plain error occurred in the trial court’s failure to sua sponte order a change of venue.’ ”
Belisle v. State, 11 So.3d 256, 277-78 (Ala.Crim.App.2007), affirmed, Ex parte Belisle, 11 So.3d 323 (Ala.2008), cert. denied, Belisle v. Alabama, 557 U.S. 939, 129 S.Ct. 2865, 174 L.Ed.2d 582 (2009) (holding that “[t]he record shows that the circuit court did not err in not sua sponte ordering that Belisle’s trial be moved to another venue. There were no grounds to warrant a change of venue in this case.”).
In this case, fifteen potential jurors responded to the following question: “Does anybody know anything about this case or heard anything or read anything in the press or know anything about the general facts of the case?” (R. 151.) Each of these potential jurors was questioned individually. (R. 153, 189-242.) The record reveals as to the individual questioning of these potential jurors that their pretrial knowledge was very limited and innocuous. Their testimony concerning their knowledge included: someone told the juror that it might be this case (R. 239); read an article that the trial was upcoming (R. 234-35); seven responses of a newspaper article stating that the murder happened at a church parking lot (R. 232, 228-29, 211-12, 207-08, 209-10, 192-93, 189-90); husband indicated that she may serve on a murder trial (R. 221-22); gets the newspaper but recalled no facts of this case (R.217); recalled only that the victim was shot while changing a tire (R. 195); offense occurred close to potential juror’s workplace and coworker brought in a news article (R. 219); recalled an article about offense and two articles about trial upcoming, but only memorable specific was location of church parking lot (R. 214-15); and, although potential juror stated that he “heard about it pretty good” (R. 197), the only specific fact he recalled was that the victim was found in the trunk of a truck in a churchyard, and he responded to this information’s lack of affect on his ability as a juror, stating, “I don’t see what that would affect.” (R. 198.)
In the present case, it is clear that Johnson suffered no prejudice due to any pretrial publicity which would have required the trial court to change the venue of this trial.
B.
Johnson alleges that the potential jurors should have been questioned individually and separately. However, the record indicates that when the trial court discussed the upcoming voir dire examina *1234 tion of the venire with the parties, the following transpired:
“[DEFENSE COUNSEL]: Yes, sir. I was curious, do you intend for us to question the entire venire tomorrow as well as today based on the questionnaire or will we go individually?
“THE COURT: I think with the questionnaire we don’t have to go individually. I think you’ll have your answers, all the answers that could be asked are right there before you. And then if there are individual questions that come up from the questionnaire you can ask those questions to the panel.
“[DEFENSE COUNSEL]: Thank you, Judge.
“THE COURT: We go through 37 or 47 jurors individually that’s a little — and have a questionnaire it will take two days and I’m not ready to get into that.
“[DEFENSE COUNSEL]: Yes, sir, I was just curious. Thank you.”
(R. 61-62.)
Thus, because it is clear that Johnson did not object on this ground at trial, we review this issue for plain error. See Rule 45A, Ala.R.App.P.
There was no error in the trail court’s decision to question the venire together as to certain subject matters and separately to follow up on some of their responses where appropriate. This was especially true where these potential jurors had already filled out a questionnaire concerning pertinent opinions, knowledge and backgrounds. Hooks v. State, 21 So.3d 772, 778 (Ala.Crim.App.2008).
“ ‘In Ex parte Land, 678 So.2d 224 (Ala.1996), the Alabama Supreme Court held that the method of voir dire examination is within the discretion of the trial court and a trial court’s refusal to allow the use of [a] juror questionnaire is not an abuse of that discretion.’ Hodges v. State, 856 So.2d 875, 913 (Ala.Crim.App.2001), aff'd, 856 So.2d 936 (Ala.2003). Also, ‘there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court.’ Coral v. State, 628 So.2d 954, 968 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993).”
Sneed v. State, 1 So.3d 104, 135 (Ala.Crim.App.2007), cert. denied, Sneed v. Alabama, 555 U.S. 1155, 129 S.Ct. 1039, 173 L.Ed.2d 472 (2009).
There was no error in the trial court’s conducting and organization of the voir dire of the venire.
XXXII.
Pursuant to § 13A-5-53, Ala. Code 1975, we are required to address the propriety of Johnson’s conviction and sentence of death. Johnson was indicted for and convicted of capital murder because she killed Randy McCullar when he had testified before the grand jury and was subpoenaed to testify at trial in the bigamy case against Johnson. See § 13A-5-40 (14), Ala.Code 1975.
The record does not reflect that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5 — 53(b)(1), Ala.Code 1975.
The trial court found beyond a reasonable doubt that the State proved the existence of “only one” aggravating circumstance (C. 183): that the capital offense was committed to disrupt or hinder the lawful exercise of any government function or the enforcement of laws. § 13A-5-49(7), Ala.Code 1975. As to this aggravating circumstance, the trial court found that McCullar had testified before a Grand *1235 Jury in a case that he had instituted against Johnson for bigamy. The trial court stated as to this aggravating circumstance:
“In the testimony of Timothy Richards, the codefendant in the case, and the ‘husband’ of the defendant, the unre-futed evidence shows that the defendant feared that Randy McCullar would attempt to gain custody of Chad, the child of the deceased. Randy McCullar, and the defendant, Shonda Johnson; and, that he would do so by bringing a bigamy case against the defendant. Randy McCullar filed a bigamy charge against the defendant, and appeared before the April 1997 Grand Jury in Winston County, Alabama; and the defendant was indicted by the June 1997 Term of the Grand Jury in the 25th Judicial Circuit.
“From that point on, the defendant, Shonda Johnson, started talking about getting rid of McCullar. There is no question from the evidence but that this was the factor that started the talk by the defendant, Shonda Johnson, about killing the deceased. The defendant, Shonda Johnson, talked every day about the fact that Randy McCullar had to be out of the picture and that he had to be killed and that the co-defendant, Richards, should do it (and which he did) to prove that he loved her.
“It should be noted that the only connection that Richards had was Shonda Johnson; and that Richards did not know the deceased before he shot him.
“Therefore, the Court is convinced beyond a reasonable doubt that the aggravating circumstance set out in Title 13A-5-49(7) of the Code of Alabama to-wit: the capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.”
(C. 183-84.) The trial court found “no other aggravating circumstance as set out in Title 13A-5-49 of the Code of Alabama.” (C. 184.)
The trial court found the existence of one statutory mitigating circumstance: that Johnson had no significant history of prior criminal activity. § 13A-5-51Q), Ala.Code 1975. With regard to the non-statutory mitigating circumstances, the trial court found (1) that Johnson was a good mother; (2) that Johnson was a good citizen growing up; and (3) that Johnson was a good prisoner at the Walker County jail. The sentencing order shows that the trial court weighed the aggravating and mitigating circumstances and determined that the aggravating circumstances outweighed the mitigating circumstances. The trial court then correctly sentenced Johnson to death. The record supports this decision, and we agree with the trial court’s findings.
We have independently weighed the aggravating and mitigating circumstances to determine the propriety of Johnson’s sentence of death. § 13A-5-53(b)(3), Ala. Code 1975. After doing so, we find that the death sentence is appropriate.
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether Johnson’s sentence was disproportionate or excessive when compared to the sentences imposed in similar cases. Similar cases have been punished by death throughout this State. See Whitehead v. State, 777 So.2d 781 (Ala.Crim.App.1999), affirmed, Ex parte Whitehead, 777 So.2d 854 (Ala.2000), cert. denied, Whitehead v. Alabama, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001). Therefore, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that might have adversely affected Johnson’s substantial rights, *1236 and have found none. Rule 45A, Ala. R.App.P.
Accordingly, we affirm Johnson’s conviction and sentence of death.
AFFIRMED.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur in the result.

. The trial court rejected the jury's original advisory verdict as the vote was nine in favor of death and three in favor of life without parole (C. 152, 154). Alabama law requires that a jury’s verdict of life imprisonment without parole be based on a vote of the majority, while a jury verdict of death must be based on at least 10 votes. § 13A-5-46(f), Ala.Code 1975.

. Although the transcript reflects that this statement was made by defense counsel, it appears, from the content that Richards made this statement. Therefore there appears to have been a typographical error.

. Section 12 — 21—162(b) specifically stated, “[A] witness may be examined touching his conviction for a crime involving moral turpitude, and his answers may be contradicted by other evidence.”

. It should be noted that during the direct examination of Richards, he admitted that several statements he made to the police concerning his involvement in the present offense were false. (R. 560). Thus, evidence of his dishonesty was presented before the jury.

. Section 13A-5-45(e) states that "[a]t the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances. Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing."

. The record reveals that defense counsel objected to some, but not all, of these cited instances.

. The issue of the sufficiency of the corroborating evidence is also raised by Johnson as Issue XXI and will be discussed more thoroughly infra.

"FN2. The State linked Thomas to his victim with DNA evidence; the Court of Criminal Appeals did not decide the issue whether DNA evidence is direct evidence or circumstantial evidence."

. Although Johnson lists this as an argument, she does not address it here and this issue has been previously decided in this opinion. See Issues II and V(E).

. The pattern jury instructions state, "If you find beyond a reasonable doubt that (the) (one or more of the) aggravating circumstance(s) on which I instructed you does exist in this case, then you must proceed to consider and determine the mitigating circumstances.” In the present case, there were two aggravating circumstances for the jury to consider.

. According to the bigamy charge, she was still married to McCullar.

. Rule 19.3 was amended effective December 1, 1997, prior to Johnson’s trial in October 1999.

. Johnson was convicted on October 21, 1999.

. Although Johnson cites the complained-of statement as her sixth, the testimony indicates that this statement was her fifth.